**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALEXANDER CAMERON<br>3441 Oakwood Terrace, N.W.,<br>Apartment BSMT<br>Washington, D.C. 20010,<br><br>BENJAMIN TAN<br>8975 Kephart Lane<br>Berrien Springs, Mich. 49103,<br><br>DESTINY ROBINSON<br>16545 Trotters Glen Place<br>Hughesville, Md. 20637,<br><br>JONAH ANGELES<br>9036 Arlington Boulevard<br>Fairfax, Va. 22031,<br><br>JAKE OSTER<br>507 Nicholson Street, N.W.,<br>Washington, D.C. 20011,<br><br>on behalf of themselves and all others<br>similarly situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>DISTRICT OF COLUMBIA<br>441 Fourth Street, N.W.<br>Washington, D.C. 20001<br><br>          Defendant. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     Defendant District of Columbia's Metropolitan Police Department ("MPD")
routinely and unlawfully holds cell phones seized from individuals who have been arrested—
many of whom are never charged with a crime—for months or even years past the point where

the government might have any continuing legitimate interest in retaining the cell phones, while providing no process to challenge that retention.  This policy, pattern, practice, or custom engaged in by Defendant violates the Fourth and Fifth Amendments of the United States Constitution and constitutes an unlawful conversion of property.  Plaintiffs Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, and Jake Oster (collectively, the "Named Plaintiffs") bring this action to remedy the harms that they, and the proposed classes that they seek to represent, have suffered as a result of Defendant's unlawful conduct.

2.      On the evening of August 13, 2020, Named Plaintiffs Alexander Cameron and Destiny Robinson, along with dozens of other people, participated in a march calling for police reform and racial justice, as part of the movement involving millions of their fellow Americans following the killings of George Floyd and Breonna Taylor.  Named Plaintiffs Benjamin Tan, Jonah Angeles, and Jake Oster, in their capacity as medics, walked alongside the demonstrators, journalists, and other medics that night.

3.      The march passed through parts of northwest Washington D.C., including the Adams Morgan neighborhood.  While in Adams Morgan, MPD officers charged toward the demonstration and corralled more than 40 people into a confined area, using a tactic known as "kettling."  MPD detained and arrested the Named Plaintiffs and the other kettled individuals. At the time of the arrests, MPD officers seized personal property belonging to the arrestees. Named Plaintiffs and the other arrestees were held by MPD for as long as 36 hours before they were released, without charges, after the U.S. Attorney's Office for the District of Columbia (the "USAO") declined to charge them (in local parlance, they were "no-papered").  As a result, Named Plaintiffs and the other arrestees were not assigned criminal case docket numbers.

2

4.      When Named Plaintiffs and the other arrestees subsequently tried to retrieve the property that had been seized from them, MPD refused to return cell phones to all but three arrestees.  In some cases, MPD also refused to return other property, including personal protective equipment and medical supplies.

5.      To date, no one at the demonstration who was kettled and arrested in the late night hours of August 13, 2020, and early morning hours of August 14, 2020, and subsequently "no-papered" has been charged with a crime.  Yet, since their release over fourteen months ago, MPD has released only three additional individuals' cell phones—and, in two of the cases, only after holding them for nine months or longer.

6.      MPD still refuses to release the vast majority of cell phones seized from individuals who were kettled and arrested at the demonstration, including cell phones belonging to three of the Named Plaintiffs.

7.      The improper retention of cell phones belonging to Named Plaintiffs and members of the putative classes is part of the District of Columbia's policy, pattern, practice, or custom of retaining cell phones seized from arrestees longer than necessary for officers to pursue any legitimate law enforcement purposes where officers have no basis for suspecting the cell phones constitute physical evidence of a crime, or contain contraband.  That policy, pattern, practice, or custom violates the Fourth Amendment rights of Named Plaintiffs and of the members of the putative classes.

8.      Defendant does not provide an effective procedure whereby individuals lacking a docket number can obtain the return of their cell phones once any legitimate government interest in retaining the cell phones has expired.  By failing to provide such a process, Defendant has

violated the Fifth Amendment due process rights of Named Plaintiffs and of the members of the putative classes.

9.      In addition to holding the cell phones, MPD has unlawfully retained other items belonging to Named Plaintiffs and members of the putative classes, including personal protective equipment, such as goggles and gloves; medical supplies, including medicines and respirators; home and car keys; and other property.

10.     Named Plaintiffs bring this civil rights action on behalf of themselves and on behalf of two classes of individuals who were kettled and arrested in the late night hours of August 13, 2020, and early morning hours of August 14, 2020, who were subsequently released without charge, and whose property was retained by MPD beyond the point reasonably necessary to serve any law enforcement interest.  This action seeks redress for the violation of Named Plaintiffs' and the class members' rights under the Fourth and Fifth Amendments of the United States Constitution, as well as the common law of the District of Columbia.

## JURISDICTION AND VENUE

11.     This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fifth Amendments to the United States Constitution.  This Court has subject matter jurisdiction over all federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## PARTIES

13.     Named Plaintiff Alexander Cameron is a resident of the District of Columbia. Mr. Cameron attended the demonstration on August 13, 2020.  Mr. Cameron was kettled,

arrested, and "no-papered."  MPD seized Mr. Cameron's cell phone at the time of his arrest, and Defendant retained it until May 26, 2021.

14.     Named Plaintiff Benjamin Tan was a resident of Virginia.  Mr. Tan attended the demonstration on August 13, 2020, as a medic to provide first aid assistance to demonstrators if needed.  Mr. Tan was kettled, arrested, and "no-papered."  MPD seized Mr. Tan's cell phone and personal protective equipment at the time of his arrest.  Defendant retained Mr. Tan's cell phone until June 24, 2021.  Defendant continues to retain Mr. Tan's personal protective equipment.

15.     Named Plaintiff Destiny Robinson is a resident of Maryland.  Ms. Robinson attended the demonstration on August 13, 2020.  Ms. Robinson was kettled, arrested, and "no-papered."  MPD seized Ms. Robinson's cell phone in connection with the arrests.  Defendant continues to retain Ms. Robinson's cell phone.

16.     Named Plaintiff Jonah Angeles is a resident of Virginia.  Mr. Angeles attended the demonstration on August 13, 2020, as a medic.  Mr. Angeles was kettled, arrested, and "no-papered."  MPD seized Mr. Angeles' cell phone, personal protective equipment, and medical equipment at the time of his arrest.  Defendant continues to retain Mr. Angeles' cell phone and other property.

17.     Named Plaintiff Jake Oster is a resident of the District of Columbia.  Mr. Oster attended the demonstration on August 13, 2020, as a medic.  Mr. Oster was kettled, arrested, and "no-papered."  MPD seized Mr. Oster's cell phone, personal protective equipment, and medical equipment at the time of his arrest.  Defendant continues to retain Mr. Oster's cell phone and other property.

18.     Defendant District of Columbia is a municipal corporation, the local government of Washington, D.C., and operates and governs MPD pursuant to the laws of the District of

5

Columbia.  In this case, the District of Columbia acted through its agents, employees, and servants, including MPD and its officials and agents.

## FACTS

### A.   MPD's Seizure and Unlawful Retention of Plaintiffs' Property

19.     On August 13, 2020, at around 8:00 p.m., the Named Plaintiffs and other class members assembled in Malcolm X Park at 16th and W Streets, N.W., for a demonstration to call for police reform and racial justice.  More than 60 demonstrators participated.

20.     Between 8:30 p.m. and 10:45 p.m., Named Plaintiffs were part of a group of demonstrators, medics, journalists, and attorney observers that marched through the Adams Morgan neighborhood of Washington, D.C.  At around 10:45 p.m., MPD officers charged at the demonstrators, rapidly and forcibly kettling approximately 40 of them in a small, confined area near the intersection of 18th Street, N.W., and Willard Street, N.W.

21.     Over the next several hours, MPD officers detained the kettled Named Plaintiffs and other class members, arrested them, seized their cell phones and other property, and transported them in small groups to police stations and, ultimately, to the Central Cell Block. The Named Plaintiffs and other class members were held for up to 36 hours.

22.     The USAO declined to charge any of the approximately 40 individuals who had been kettled and arrested (in local parlance, all of them were "no-papered").

23.     MPD officers returned some property to Named Plaintiffs and other class members upon their release, but refused to return all but three individuals' cell phones.

24.     MPD also retained other non-evidentiary property belonging to Named Plaintiffs and proposed class members, including, but not limited to, personal protective gear and medical

equipment belonging to Named Plaintiffs Oster and Angeles, a respirator belonging to proposed

class member Evan Roscello, and keys belonging to proposed class member Gavin Laughland.

25.    Four days after the arrests, on August 17, 2020, Thomas Healy, Esq., on behalf of

Named Plaintiffs and the putative class members, sent emails to personnel in the USAO seeking

return of the property.

26.    An Assistant United States Attorney ("AUSA") responded to Mr. Healy the same

day, writing that the USAO did not handle the release of property seized by MPD during a "no-

papered" arrest.  The AUSA indicated that Mr. Healy must contact MPD.  The AUSA copied

MPD employee Vera Worsley and identified her to Mr. Healy as someone who could provide

assistance in identifying the status of the cell phones.

27.    Over the next several weeks, Mr. Healy had contact with multiple different MPD

employees in an attempt to secure the return of the property.  Finally, MPD Detective Nicole

Copeland responded on the afternoon of August 27, 2020—13 days after the arrests—writing in

an email that "[m]embers of the Criminal Investigations Division are actively investigating this

incident.  Evidence recovered from this incident, which may or may not include cell phones, are

[*sic*] being reviewed and as such Search Warrants may be presented to the United States

Attorney's Office."

28.    If MPD officers felt they had probable cause to believe that the cell phones

contained evidence of a crime, however, Special Order 15-08 required them to apply for a search

warrant no later than 48 hours after their recovery.  Metro. Police Dep't, Special Order 15-08,

*Cell Phone Recovery Process* § III.C. (Apr. 14, 2015), https://go.mpdconline.com/GO/

SO_15_08.pdf.  Detective Copeland's email indicated that MPD had not applied for warrants for

any of the phones more than eleven days after they were required to do so.

29.     Further, once a warrant for a cell phone is obtained, MPD has access to technology known as "Cellebrite Kiosks," which generally can extract data from a cell phone in about 30 minutes without damaging the phone or requiring the cell phone's continued retention for authentication purposes.

30.     Thus, if MPD officers obtained search warrants for the Named Plaintiffs' and class members' cell phones, they had no lawful reason to continue to retain the cell phones after the warrants were executed.  If MPD officers applied for search warrants for the Named Plaintiffs' and class members' cell phones and the applications were denied, they had no lawful reason to continue to retain the cell phones for many months thereafter.

31.     In the many months since they were "no-papered," Named Plaintiffs and class members have made numerous calls to MPD's Evidence Control Division and to MPD property clerks at the Second, Third, Fifth, and Seventh Precincts seeking release of their phones, to no avail.

32.     Given their inability to get the property returned from MPD directly, on February 25, 2021, Named Plaintiffs Tan, Cameron, and Robinson filed motions in D.C. Superior Court under D.C. Rule of Criminal Procedure 41(g), seeking the return of their property.

33.     As there was no active case against any of the putative class members, Named Plaintiffs Tan, Cameron, and Robinson filed the Rule 41(g) motions in the only two criminal cases relating to the demonstration on August 13, 2020, *United States v. Powell*, No. 2020 CMD 006862 (D.C. Super. Ct. filed Sept. 7, 2020), and *United States v. Ketchem*, No. 2020 CMD 006386 (D.C. Super. Ct. filed Aug. 14, 2020), both of which were pending before Judge Jonathan Pittman.

34.     A week later, however, undersigned counsel was informed by D.C. Superior Court Deputy Clerk Grace Jimenez that Judge Pittman had determined the motions for return of property did not belong on the *Powell* or *Ketchem* dockets.  Instead, Deputy Clerk Jimenez informed counsel that the motions would need to be re-submitted under a different caption, and would each be considered as a sealed, standalone noncriminal case for administrative purposes.

35.     The steps described by Deputy Clerk Jimenez were apparently an ad hoc effort by the D.C. Superior Court's Criminal Division to address a situation where, as here, an individual is seeking the return of seized property, but has been no-papered, has not been charged with a crime, and has no connection to an ongoing criminal case.  Undersigned counsel have been unable to identify any publicly available rule or authority that sets out the steps described by Deputy Clerk Jimenez in the D.C. Code, the D.C. Superior Court Rules of Criminal or Civil Procedure, or other applicable court rules.

36.     Regardless, on March 18, 2021, amended motions for the return of property were filed pursuant to Deputy Clerk Jimenez's instructions on behalf of Named Plaintiffs Cameron, Robinson, and Tan.  On May 4, 2021, in response to inquiries from Plaintiff's counsel as to the status of the government's response to those motions, AUSA Barbara Chesser informed counsel that she had filed the necessary forms for release of the property over seven weeks prior.

37.     Despite that fact, it was not until May 26, 2021, two-and-a-half months after the amended motions were filed through the court's ad hoc process, and 285 days after MPD seized Named Plaintiff Cameron's cell phone, that MPD finally returned his cell phone to him.

38.     On June 21, 2021, over three months after the amended motions were filed through the court's ad hoc process, and 312 days after MPD seized Named Plaintiff Tan's cell phone, MPD finally returned Named Plaintiff Tan's cell phone to him.

39.     One other arrested demonstrator had his phone returned after he filed a lawsuit in federal court.

40.     MPD still has not returned Named Plaintiff Robinson's cell phone.

41.     Named Plaintiffs Angeles and Oster and other putative Injunctive Class members have made several attempts to retrieve their cell phones since March 2021, including contacting MPD's Evidence Control Branch and the MPD property clerks at the relevant precincts, without success.

42.     MPD's retention of Named Plaintiffs' and class members' cell phones for more than a year after MPD had any legitimate interest in the retention of the devices violates Named Plaintiffs' and class members' Fourth Amendment rights against unreasonable seizures.

43.     As a direct result of MPD's prolonged retention of their cell phones, Named Plaintiffs and members of the putative Injunctive and Damages Classes were forced to replace their phones, and some class members incurred contract and data charges even though they did not have the use of their phones.  Some lost access to various data, including photographs, passwords, message histories, and contact information for friends and family.

44.     As a result of the prolonged retention of his cell phone, Named Plaintiff Alexander Cameron was forced to purchase a new device, and experienced fear and anxiety, in particular that private messages and photos therein were being reviewed by police attempting to monitor protest activity.

45.     As a result of the prolonged retention of his cell phone, Named Plaintiff Benjamin Tan was forced to purchase a new device, and experienced fear and anxiety, in particular that information therein may be used to collect information about Black Lives Matter activists and monitor their activities.

46.     Named Plaintiff Tan also lost access to his primary email account, which was protected by two-factor authentication using an app-based token on the cell phone.  Without access to his primary email account, he was unable to receive important email messages and had to make adjustments to receive his bills and communicate with family and friends.  He further lost access to his WhatsApp account, which he used to communicate with members of his family and various business contacts overseas.

47.     As a result of the prolonged retention of her cell phone, Named Plaintiff Destiny Robinson was forced to purchase a new device.  She also lost access to personal photos, documents, passwords and work material stored on the cell phone held by MPD.  She has experienced fear and anxiety as a result of MPD continuing to hold her cell phone, in particular that information therein may be used to collect information about Black Lives Matter activists and monitor their activities.

48.     As a result of the prolonged retention of his cell phone, Named Plaintiff Jonah Angeles was forced to purchase a new device, and has experienced fear and anxiety as a result of MPD continuing to hold his cell phone, in particular that information therein may be used to collect information about Black Lives Matter activists and monitor their activities.

49.     As a result of the prolonged retention of his cell phone, Named Plaintiff Jake Oster was forced to purchase a new device, and has experienced fear and anxiety, in particular that information therein may be used to collect information about Black Lives Matter activists and monitor their activities.

50.     On February 11, 2021, on behalf of Plaintiffs Tan, Cameron, and Robinson and all individuals kettled and arrested in the late night hours of August 13, 2020, and early morning hours of August 14, 2020, who had their phones seized—a group that includes Plaintiffs Angeles

and Oster as well as all members of the putative classes that counsel seeks to represent—counsel sent a Notice of Potential Claim, pursuant to D.C. Code § 12-309, via overnight mail to the Office of Risk Management describing the approximate time, place, cause, and circumstances of the seizure and retention of the cell phones.

**B.      The District of Columbia's Custom of Unconstitutionally Retaining Arrestees' Cell Phones**

51.     Defendant's prolonged retention of cell phones seized from Named Plaintiffs and from the members of the putative classes as described above reflects the District of Columbia's policy, pattern, practice, or custom of retaining cell phones seized from arrestees, where officers have no basis to believe the cell phones constitute physical evidence of a crime or contain contraband, for longer than is reasonably necessary for any legitimate law enforcement purpose (this policy, pattern, practice, or custom is hereinafter referred to as the "Custom").

52.     Despite its administrative and technological capabilities, MPD has, pursuant to the Custom, retained cell phones for months or years in many cases where it did not need to retain the phone for more than days or a few weeks to achieve its law enforcement purposes.

53.     The District of Columbia's Custom is widespread and has existed for years. Other examples of prolonged retentions pursuant to the District of Columbia's Custom include:

(a)     The District of Columbia's prolonged retention of the cell phones seized from all or nearly all of the individuals, numbering more than 200, arrested in downtown Washington, D.C., during the January 20, 2017, protests against the inauguration of President Donald Trump; even though many of the arrested individuals demanded the return of their phones and even though any material relevant to the criminal charges arising out of that protest (most of which were ultimately dropped) could have been downloaded by the government expeditiously as alleged above, the government did not

12

return the phones for at least eight months (and in some cases much longer) after their seizure. Of the many individuals affected by these prolonged retentions of their property, two had experiences that further underscore the pervasiveness of the District of Columbia's policy, pattern, practice, or custom:

      (i)    Michael Basillas, a putative class member, was among those arrested at the January 20, 2017, protests and continues to be unable to secure the release of their property. Following the conclusion of legal action pertaining to them, they attempted to retrieve their cell phone at MPD's Evidence Control Branch, only to learn that their property had been lost. MPD allowed them to look through a large plastic bin full of seized cell phones to try and find their device; however, they were unable to locate their property within the bin.

      (ii)    Nicole Ambruster, another demonstrator arrested at the January 20, 2017, protests, accompanied Michael Basillas in an attempt to retrieve her property at MPD's Evidence Control Branch. Her cell phone was likewise lost, and she was also permitted to look in the large bin of seized phones. She did not find the cell phone seized from her in January 2017, but within the large bin she found a cell phone that appeared to be one seized from her at another demonstration several years prior. Ms. Ambruster was not allowed to retrieve that phone.

(b)    Putative class member Michael Basillas was also arrested and had their cell phone and iPad seized in 2018 while working for a progressive organizing campaign posting fliers in downtown Washington, D.C. Basillas was released without charges; however, despite the cell phone and iPad having no evidentiary value in connection with

any crime, MPD refused to return the property at the time of Basillas' release.  To date, Basillas has yet to secure the return of the seized property.

(c)      As detailed in the Amended Complaint filed in *Asinor v. District of Columbia*, No. 1:21-cv-02158-APM (D.D.C. Aug. 28, 2021), ECF No. 10, MPD seized and retained for over 11 months a cell phone and miscellaneous other property from Oyama Asinor, a photojournalist arrested while covering a racial justice protest near the White House in the summer of 2020, despite no criminal charges ever being filed against Mr. Asinor and notwithstanding his repeated requests for their release.

(d)      The District of Columbia's prolonged retention of a cell phone (as well as clothing) seized from a robbery suspect in February 2020; although the cell phone had no evidentiary value and the defendant pleaded guilty within a month, the cell phone and clothing were retained, despite requests for their return, for an additional 15 months (as reported to undersigned counsel by the owner's criminal defense counsel).

(e)      The District of Columbia's prolonged retention of a cell phone seized from a robbery suspect in June 2020; the cell phone was retained, despite requests for its return, even after a trial, at which the cell phone was not introduced as evidence, and the cell phone remains in the District of Columbia's custody (as reported to undersigned counsel by the owner's criminal defense counsel).

(f)      The District of Columbia's prolonged retention of two cell phones seized from a theft suspect in November 2019; the cell phones were retained for approximately eight months, despite requests for their return and despite the fact that the cell phones were unrelated to the theft charge (as reported to undersigned counsel by the owner's criminal defense counsel).

(g)     The District of Columbia's prolonged retention of a cell phone belonging to a suspect charged in November 2020 with unauthorized use of a vehicle; the government has agreed that the cell phone should be released but has nonetheless refused to do so (as reported to undersigned counsel by the owner's criminal defense counsel).

(h)     The District of Columbia's prolonged retention of two cell phones seized in May 2021 from an individual who was "no-papered"; the owner has requested their return, but the cell phones have not been returned for over four months after the owner was released with no charges (as reported to undersigned counsel by the owner's criminal defense counsel).

(i)     The District of Columbia's prolonged retention of a cell phone seized in October 2015; even after the charges against the owner were dismissed in March 2018 and the owner requested the cell phone back, the District of Columbia did not return it until October 2019—four years after the cell phone was originally seized and over a year and a half after the charges were dismissed (as reported to undersigned counsel by the owner's criminal defense counsel).

54.     Defendant has been repeatedly put on notice as to the existence of this unconstitutional Custom.  The Office of Police Complaints issued a report in 2019 outlining MPD's failures to return property.  *See* Gov't of Dist. of Columbia, Off. of Police Complaints, *PBC Policy Report #19-4: Handling Property* (Sept. 30, 2019), https://policecomplaints.dc.gov/ sites/default/files/dc/sites/office%20of%20police%20complaints/publication/attachments/Handli ngProperty.FINAL_.pdf.  A 2016 article in *The Atlantic* also noted that "phones are nearly always categorized as evidence in D.C.," and that MPD officers routinely categorized smartphones as evidence despite prosecutors declining to seek warrants in what one attorney

described as "legal robbery, like a shake down."  Kaveh Wendell, *Police Can Use a Legal Gray Area to Rob Anyone of Their Belongings*, The Atlantic (Aug. 15, 2016), https://www.theatlantic.com/technology/archive/2016/08/how-police-use-a-legal-gray-area-to-rob-suspects-of-their-belongings/495740/.

55.     As reflected by the widespread and longstanding nature of the Custom, and despite repeated complaints, MPD leadership has tolerated this custom, and the District of Columbia has failed to take any meaningful action to prevent the unlawful retention of arrestees' cell phones.

56.     Pursuant to the Custom, MPD retained the cell phones of Named Plaintiffs and Proposed Class members beyond the time for which it had any legitimate law enforcement interest.

### C.     The District of Columbia's Failure to Provide a Constitutionally Sufficient Process for No-Papered Arrestees To Reacquire Seized Property

57.     The District of Columbia also fails to provide any meaningful process to contest the continued retention of property of individuals who are no-papered and released without a criminal case docket number.

58.     The District of Columbia provides no mechanism by which no-papered individuals whose cell phones have been retained pursuant to the Custom, or whose property has otherwise been unlawfully retained, can challenge that retention before a neutral decisionmaker having the authority to order release of the cell phones or other property.

59.     Further, D.C. Code § 5–119.06 bars the return of arrestees' property (other than "prisoner's property," such as clothing and personal effects that are returned when an arrestee is released) "unless the United States Attorney in and for the District of Columbia shall certify that such property . . . is not needed as evidence in the prosecution of a crime."  That certification is

16

accomplished through the use of a PD Form 81-C, which is initiated by an MPD officer and sent to the USAO for completion.

60.     However, MPD officers are not required to initiate the Form 81-C release process when property is no longer needed as evidence, and frequently they do not do so.

61.     With regard to cell phones specifically, Special Order 15-08 requires officers to seek a warrant for a seized phone within 48 hours of its seizure if they wish to search the phone. Metro. Police Dep't, Special Order 15-08, *Cell Phone Recovery Process* § III.C. (Apr. 14, 2015), https://go.mpdconline.com/GO/SO_15_08.pdf.  Thus, MPD's own policy makes clear it has no legitimate basis for holding cell phones beyond the 48 hours necessary to apply for a warrant plus the limited additional time necessary for the court to rule on the warrant and for MPD to retrieve the information if a warrant is granted.

62.     If no search warrant is sought within 48 hours, or if a warrant is denied, or if a warrant is granted and the cell phone is searched, MPD's legitimate investigatory interest in retaining the cell phone has expired.  However, neither Special Order 15-08 nor any other order requires officers to initiate the PD Form 81-C release process once MPD's legitimate investigatory interest has expired.

63.     Even if an MPD officer chose to initiate the PD Form 81-C release process with regard to property seized from a no-papered arrestee, PD Form 81-C explicitly instructs officers that the form is "NOT TO BE ACCEPTED WITHOUT CRIMINAL DOCKET NUMBER." *See* Metro. Police Dep't, P.D. 81-C (Nov. 1982).  Since no-papered individuals are never given a criminal case docket number, the PD Form 81-C is therefore useless.

64.     Despite the multiple attempts made by Named Plaintiffs and class members and their counsel to secure their property, MPD officers never identified any process through which no-papered individuals could obtain the release of their property.

65.     Thus, there is no process through which no-papered individuals can contest the continued retention of their property, let alone obtain its return.  Instead, whether such property is ever returned relies entirely on the good will of Defendant.

## CLASS ACTION ALLEGATIONS

66.     Named Plaintiffs Cameron, Tan, Robinson, Angeles, and Oster bring this action on behalf of themselves and two classes of similarly situated individuals under Federal Rule of Civil Procedure 23.

67.     The **Injunctive Class**, represented by Named Plaintiffs Robinson, Angeles, and Oster, is defined as:

> All individuals who were kettled and arrested at or near the intersection of 18th and Willard Streets, N.W., during the late night hours of August 13, 2020, and early morning hours of August 14, 2020, who were subsequently released without being charged with a crime, and whose cell phones and other property the Metropolitan Police Department continues to hold.

68.     The **Damages Class**, represented by Named Plaintiffs Cameron, Tan, Robinson, Angeles, and Oster is defined as:

> All individuals who were kettled and arrested at or near the intersection of 18th and Willard Streets, N.W., during the late night hours of August 13, 2020, and early morning hours of August 14, 2020, and who were subsequently released without being charged with a crime but had their cell phones and other property seized by the Metropolitan Police Department and held beyond the time reasonably necessary to secure a warrant and retrieve potential evidence.

69.     This action is brought, and may properly be maintained, as a class action.  Each proposed class satisfies the numerosity, commonality, typicality, and adequacy requirements for

maintaining a class action under Rule 23(a) of the Federal Rules of Civil Procedure, and at least one of the prerequisites of Rule 23(b).

70.     <u>Numerosity</u>: The proposed classes satisfy the requirements of Rule 23(a)(1) because the members of the classes are so numerous that joinder is impracticable.  There are 35 members in the Injunctive Class and 37 members in the Damages Class.

71.     Class members are also geographically dispersed—for example, Caitlyn Nigro, a member of both the proposed Injunctive and Damages Classes, currently resides in New York State; Wesley Gifford, also a member of both proposed classes, currently resides in Washington State; and Justin Daniels-Dawes, also a member of both proposed classes, currently attends law school in Ohio.

72.     <u>Commonality</u>: The classes meet the commonality requirements of Rule 23(a)(2). For both classes, the common questions of law or fact include:

(a)     Whether the District of Columbia has a policy, pattern, practice, or custom of retaining cell phones seized from arrestees, where officers have no basis to believe the cell phones constitute physical evidence of a crime or contain contraband, for longer than is reasonably necessary for any legitimate law enforcement purpose.

(b)     Whether the District of Columbia's Custom violates the Fourth Amendment.

(c)     Whether the District of Columbia has failed to provide a process to seek the return of property seized from "no-papered" arrestees.

(d)     Whether the District of Columbia's lack of a process to seek the return of property seized from "no-papered" arrestees violates the Fifth Amendment.

(e)      Whether the District of Columbia intentionally and unlawfully retained Named Plaintiffs' and Damages and Injunctive Class Members' property.

(f)      Whether the District of Columbia is therefore liable to Named Plaintiffs and Damages and Injunctive Class Members for the tort of conversion.

For the Damages Class, an additional common question is:

(g)      Whether Damages Class Members are entitled to monetary damages based on the violation of their Fourth and Fifth Amendment rights and the conversion of their property.

For the Injunctive Class, an additional common question is:

(h)      Whether equitable and injunctive relief for Injunctive Class Members is warranted.

73.      <u>Typicality</u>: The proposed classes meet the typicality requirements of Rule 23(a)(3) because the Named Plaintiffs' claims are typical of the claims of all class members. The claims of all of the class members arise from the prolonged retention of their cell phones and other property as a result of being arrested at the same incident and implicate the same District of Columbia Custom and failure to provide a process for retrieving the cell phones.  The Injunctive Class Named Plaintiffs' claims arise from the ongoing retention of their property—an injury that all members of proposed Injunctive Class are suffering alike.  The Damages Class Named Plaintiffs' claims are likewise typical of those of the Damages Class: their claims arise from MPD's prolonged and unreasonable seizure of their property long past the time necessary to secure a warrant and any evidence the devices may have contained and failure to provide a process for retrieving the cell phones.

74.     Adequacy: The proposed classes meet the adequacy requirements of Rule 23(a)(4) because Named Plaintiffs will fairly and adequately protect and represent the interests of the classes.  The Named Plaintiffs have no interests adverse to or in conflict with the class members whom they propose to represent.  In addition, Named Plaintiffs are represented by counsel who are experienced and competent in the prosecution of civil rights litigation and have particular expertise with respect to class actions based on civil rights violations.

75.     The proposed Injunctive Class satisfies Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the class.  MPD's unreasonably prolonged seizure of the proposed Injunctive Class members' property has been uniform across the class and arises from a widespread Custom.  Defendant has also continued to hold Injunctive Class Named Plaintiffs' and proposed class members' property without any process, and Defendant's failure to provide a process is the common source of the Fifth Amendment claims of all members of the Injunctive Class.  Injunctive and declaratory relief is therefore appropriate with respect to the Injunctive Class as a whole.

76.     The proposed Damages Class also satisfies Rule 23(b)(3).  Questions of law and fact common to members of the class will predominate over any questions that may affect only individual class members because Defendant has acted on grounds generally applicable to members of the class.  The claims of the Damages Class members arise from the same incident and challenge the same District of Columbia Custom, and a finding of liability will turn on the same findings of law and fact regarding whether the class members' Fourth and Fifth Amendment rights have been violated, and whether MPD has engaged in conversion of the class members' property.

77.     In addition, class treatment for the Damages Class members' claims is a superior method for the fair and efficient adjudication of the controversy because, among other things, class treatment will permit a large number of similarly situated persons to prosecute their common claims in the same forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense.  The benefits of proceeding through the class mechanism, including providing injured persons with a means of obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

78.     Class treatment for the Damages Class members' claims is also manageable, and there are no management difficulties that would preclude class certification in this case.

**CLAIM I**
**Fourth Amendment Claim on Behalf of All Named Plaintiffs and**
**Members of the Proposed Injunctive and Damages Classes (via 42 U.S.C. § 1983)**

79.     The Fourth Amendment guarantees the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., Amend. IV.  Even if reasonable at its inception, a seizure may become unreasonable if prolonged.

80.     The District of Columbia initially seized Named Plaintiffs' cell phones and the cell phones of the members of the proposed Injunctive and Damages classes at the time of their arrests.  Despite the subsequent decision to "no-paper" the cases, and despite repeated requests for the return of the cell phones, the District of Columbia has, pursuant to the Custom, unreasonably retained the phones for longer than necessary to serve a legitimate governmental purpose.

81.     While the District of Columbia has a legitimate interest in preventing arrestees from using their cell phones while in custody, and in preserving potential evidence for use at trial, once Named Plaintiffs and members of the proposed Injunctive and Damages classes had been released without charges and the government either failed to secure warrants to search their cell phones, or obtained and executed such warrants, the District of Columbia had no further legitimate interest in the continued retention of the cell phones.

82.     In contrast, Named Plaintiffs and members of the proposed Injunctive and Damages classes had, and continue to have, a strong possessory and privacy interest in their cell phones.

83.     The interest of Named Plaintiffs and the members of the proposed Injunctive and Damages classes in the recovery of their cell phones outweighs any interest the government may have in retaining the cell phones many months after they were initially seized.

84.     The District of Columbia's prolonged retention of the cell phones of the Named Plaintiffs and the members of the proposed Injunctive and Damages Classes (a retention that is ongoing as to Named Plaintiffs Angeles, Oster, and Robinson, as well as the members of the proposed Injunctive Class), pursuant to the Custom, is unreasonable and violates their Fourth Amendment rights.

85.     As a direct and proximate result of the foregoing, Named Plaintiffs and the members of the proposed Injunctive and Damages Classes have suffered injury and damage, including:

>    (a)     Actual damages accrued replacing the cell phones;

>    (b)     Psychological and emotional injury, past and future;

(c)     Loss of access to valuable data and other digital property located on the

cell phones; and

(d)     Consequential damages arising from the failure to return the cell phones.

86.     Defendant District of Columbia is liable for these injuries under the Fourth

Amendment (via 42 U.S.C. § 1983) because it is aware of the Custom and has failed to address

the officers' actions, thereby adopting the Custom from which the prolonged seizure of the

Named Plaintiffs' and proposed Injunctive and Damages Classes' property arose.

**CLAIM II**
**Fifth Amendment Claim on Behalf of All Named Plaintiffs and**
**Members of the Proposed Injunctive and Damages Classes (via 42 U.S.C. § 1983)**

87.     When the government deprives an individual of property, the Due Process Clause

of the Fifth Amendment requires, at minimum, that the government provide the individual with

notice and an opportunity to contest the deprivation before a neutral decisionmaker.

88.     The District of Columbia violates that mandate by permitting officers to seize

individuals' property and retain that property indefinitely without providing any procedure by

which a "no-papered" individual can contest the deprivation before a neutral third party.

89.     As a result, Named Plaintiffs and members of the proposed Injunctive and

Damages Classes have been (and, in the case of the Injunctive Class, continue to be) deprived of

their property without due process of law in violation of the Fifth Amendment.

90.     As a direct and proximate result of the foregoing, Named Plaintiffs and the

members of the proposed Injunctive and Damages Classes have suffered injury and damage,

including:

(a)     Actual damages accrued replacing the cell phones;

(b)     Psychological and emotional injury, past and future;

(c)     Loss of access to valuable data and other digital property located on the cell phones; and

(d)     Consequential damages arising from the failure to return the cell phones.

91.     For this failure, Defendant District of Columbia is liable to Named Plaintiffs and to the members of the proposed classes under the Fifth Amendment (via 42 U.S.C. § 1983).

**CLAIM III**
**Conversion on Behalf of Named Plaintiffs**
**and Members of the Proposed Injunctive and Damages Classes**

92.     A conversion is an unlawful exercise of ownership, dominion, and control over the personal property of another in denial or repudiation of their right to such property.  A conversion claim will lie against the District of Columbia when its police, after lawfully coming into possession of a person's property, thereafter wrongfully refuse to return it.

93.     By retaining the cell phones and property of Named Plaintiffs and the members of the proposed classes months after any law enforcement interest in the property expired, despite repeated requests for the items' return, the District of Columbia, through its agents, intentionally and unlawfully exercised dominion and control over the property in denial of the rights of the Named Plaintiffs and the members of both proposed classes.

94.     The MPD officers who unlawfully exercised ownership, dominion, and control over the personal property of Named Plaintiffs and the members of the proposed classes in denial or repudiation of their right to such property were acting within the scope of their employment as MPD officers and on behalf of the interests of their employer, the District of Columbia.

95.     As a direct and proximate result of the foregoing, Named Plaintiffs and members of the proposed Injunctive and Damages Class have suffered injury and damage, including:

(a)     Actual damages accrued replacing the cell phones;

(b)     Psychological and emotional injury, past and future;

(c)     Loss of access to valuable data and other digital property located on the cell phones; and

(d)     Consequential damages arising from the failure to return the cell phones.

96.     The District of Columbia is liable for the conversion of the property of Named Plaintiffs and the members of the proposed classes under the doctrine of respondeat superior.

**PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiffs request that this Court:

(a)     CERTIFY the case as a class action on behalf of the proposed Injunctive and Damages Classes;

(b)     APPOINT the undersigned counsel as Class Counsel;

(c)     DESIGNATE Plaintiffs Robinson, Angeles, and Oster as representatives of the Injunctive Class;

(d)     DESIGNATE Plaintiffs Cameron, Tan, Robinson, Angeles, and Oster as representatives of the Damages Class;

(e)     RULE that Defendant District of Columbia's actions violated the rights of all Named Plaintiffs and of all members of the Injunctive and Damages Classes under the Fourth and Fifth Amendments to the United States Constitution and the common law of the District of Columbia;

(f)     DECLARE that Defendant District of Columbia's Custom violates the Fourth Amendment to the United States Constitution;

(g)     ORDER Defendant District of Columbia to cease its unconstitutional Custom;

(h)     DECLARE that Defendant District of Columbia's failure to provide any procedure by which a "no-papered" individual can challenge the retention of the individual's property violates the Fifth Amendment to the United States Constitution;

(i)     ORDER Defendant District of Columbia to establish and follow a constitutionally adequate and effective process whereby a "no-papered" individual can request a neutral adjudicator to compel the return of the person's property;

(j)     ORDER Defendant District of Columbia to return, within three days of entry of the order, cell phones and any other property in its possession that belongs to Named Plaintiffs Robinson, Angeles, and Oster and to members of the Injunctive Class, and that was seized from them upon their kettling and arrest in the late night hours of August 13, 2020, and early morning hours of August 14, 2020;

(k)      ENTER JUDGMENT awarding Named Plaintiffs Cameron, Tan, Robinson, Angeles, and Oster and members of the Damages Class compensatory damages against Defendant District of Columbia in an amount appropriate to the evidence adduced at trial;

(l)     ENTER JUDGMENT awarding Named Plaintiffs their costs and reasonable attorneys' fees in this action as provided in 42 U.S.C. § 1988(b); and

(m)     GRANT Plaintiffs such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims so triable.

Respectfully submitted,

/s/ Tara L. Reinhart

Tara L. Reinhart (D.C. Bar No. 462106)
Julia K. York (D.C. Bar No. 478001)
Joseph M. Sandman (D.C. Bar No. 1030820)
Daniel R. Blauser (D.C. Bar No. 1620060)
Annamaria Kimball (D.C. Bar No. 1737945)
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7630
tara.reinhart@probonolaw.com

Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Michael Perloff (D.C. Bar No. 1601047)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, N.W., Second Floor
Washington, D.C. 20005
(202) 601-4267
smichelman@acludc.org

Jacqueline Kutnik-Bauder*
Carlos Andino*
Washington Lawyers' Committee for
Civil Rights & Urban Affairs
700 14th Street, N.W., Suite 400
Washington, D.C. 20005
(202) 319-1000
jacqueline_kutnik-bauder@washlaw.org

Jeffrey L. Light (D.C. Bar No. 485360)
Law Office of Jeffrey L. Light
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
(202) 277-6213
jeffrey@lawofficeofjeffreylight.com

*Counsel for Plaintiffs*

\*    Not a member of the D.C. Bar; practicing
pursuant to D.C. Ct. App. R. 49(c)(9)(B).
Application to appear pro hac vice forthcoming.

28