## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDER CAMERON, et al.,<br>on behalf of themselves and all others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Case No. 1:21-cv-2908 |

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
### AND APPOINTMENT OF CLASS COUNSEL

Plaintiffs Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, and

Jake Oster (the "Named Plaintiffs"), pursuant to Federal Rule of Civil Procedure 23 and Local

Rule 23.1, hereby move this Court to certify this case as a class action.  Pursuant to Federal Rule

of Civil Procedure 23(a), (b)(2), (b)(3), and (g), Plaintiffs seek to certify two classes.  Named

Plaintiffs Destiny Robinson, Jonah Angeles, and Jake Oster seek to represent the **Injunctive**

**Class**, defined as:

> All individuals who were kettled and arrested at or near the intersection of 18th
> and Willard Streets, N.W., during the late night hours of August 13, 2020, and
> early morning hours of August 14, 2020, who were subsequently released without
> being charged with a crime, and whose cell phones and other property the
> Metropolitan Police Department continues to hold.

Named Plaintiffs Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles,

and Jake Oster seek to represent the **Damages Class**, defined as:

> All individuals who were kettled and arrested at or near the intersection of 18th
> and Willard Streets, N.W., during the late night hours of August 13, 2020, and
> early morning hours of August 14, 2020, and who were subsequently released

without being charged with a crime but had their cell phones and other property seized by the Metropolitan Police Department and held beyond the time reasonably necessary to secure a warrant and potentially retrieve evidence.

Plaintiffs further move for the Court to appoint the undersigned counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).  While counsel has not yet appeared for Defendant, Plaintiffs assume that this motion is opposed.

## INTRODUCTION

Defendant District of Columbia's Metropolitan Police Department ("MPD") routinely and unlawfully holds cell phones seized from individuals who have been arrested—many of whom are never charged with a crime—for months or even years past the point when the government might have any continuing legitimate interest in retaining the cell phones, while providing no process to challenge that retention.  This policy, pattern, practice, or custom engaged in by Defendant violates the Fourth and Fifth Amendments of the United States Constitution and constitutes an unlawful conversion of property.  The Named Plaintiffs bring this action to remedy the harms that they, and the proposed classes that they seek to represent, have suffered as a result of Defendant's unlawful conduct.

The Named Plaintiffs were among dozens of people who were "kettled" (corralled into a confined area), detained, and arrested at a march calling for police reform and racial justice in the Adams Morgan neighborhood of Washington, D.C., in the late night hours of August 13, 2020, and early morning hours of August 14, 2020.  At the time of the arrests, MPD officers seized personal property belonging to the arrestees, including cell phones.  Each of the Named Plaintiffs and members of the proposed classes were subsequently released without charges, after the U.S. Attorney's Office for the District of Columbia (the "USAO") declined to charge them (in local parlance, they were "no-papered").  MPD has, however, refused to return the vast majority of the

2

arrestees' cell phones, and in some cases, miscellaneous other property, post-release.  Over a year later, MPD has returned only three additional cell phones, in each case many months after any legitimate government interest in continued retention of the device had expired.

To remedy Defendant's violation of the Fourth and Fifth Amendment rights of the proposed class members, Injunctive Class Named Plaintiffs Robinson, Angeles, and Oster seek an injunctive order directing Defendant District of Columbia to return the as-yet-unreturned cell phones and other property to the members of the proposed class and to halt its unconstitutional policy, pattern, practice, or custom.  Damages Class Named Plaintiffs Cameron, Tan, Robinson, Angeles, and Oster seek monetary relief flowing from the violation of the proposed class's Fourth and Fifth Amendment rights and the conversion of their property.

As detailed further below, both the proposed Injunctive Class and the proposed Damages Class meet the certification requirements of Rule 23.  With respect to the requirements of Rule 23(a), the proposed classes satisfy Rule 23(a)'s requirement that the classes be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. Rule 23(a)(1).  The members of both proposed classes face common questions of fact and law under the Fourth and Fifth Amendments and regarding the conversion of their property.  The proposed class representatives were subject to the same deprivation of property as all class members and therefore assert claims typical of those asserted by the classes they seek to represent.  Finally, the proposed class representatives and their experienced counsel will fairly and adequately protect the interests of both classes and will vigorously prosecute the action on behalf of the classes.

Certification of the proposed classes is further warranted because separate actions by class members would risk creating inconsistent outcomes and incompatible standards of conduct for Defendant.  Certification of the Injunctive Class pursuant to Rule 23(b)(2) is warranted

because Defendant has acted and is acting in the same matter with respect to the class, such that a declaration with respect to the whole class is appropriate.  Injunctive Class members' claims are not dependent on any underlying individualized factual determinations.  The central questions facing the Injunctive Class in common include (a) whether the District of Columbia has a policy, pattern, practice, or custom of retaining cell phones seized from arrestees, where officers have no basis to believe the cell phones constitute physical evidence of a crime or contain contraband, for longer than is reasonably necessary for any legitimate law enforcement purpose; (b) whether the District of Columbia's policy, pattern, practice, or custom violates the Fourth Amendment; (c) whether the District of Columbia has failed to provide a process to seek the return of property seized from "no-papered" arrestees; (d) whether the District of Columbia's lack of a process to seek the return of property seized from "no-papered" arrestees violates the Fifth Amendment; (e) whether the District of Columbia intentionally and unlawfully retained Named Plaintiffs' and Injunctive Class Members' property; and (f) whether equitable and injunctive relief for Injunctive Class Members is warranted.

Certification of the Damages Class pursuant to Rule 23(b)(3) is warranted because common questions of law and fact predominate over questions only affecting individuals and a class action is superior to and more manageable and efficient than dozens of individual lawsuits. The central questions facing the Damages Class in common include (a) whether the District of Columbia has a policy, pattern, practice, or custom of retaining cell phones seized from arrestees, where officers have no basis to believe the cell phones constitute physical evidence of a crime or contain contraband, for longer than is reasonably necessary for any legitimate law enforcement purpose; (b) whether the District of Columbia's policy, pattern, practice, or custom violates the Fourth Amendment; (c) whether the District of Columbia has failed to provide a process to seek

the return of property seized from "no-papered" arrestees; (d) whether the District of Columbia's lack of a process to seek the return of property seized from "no-papered" arrestees violates the Fifth Amendment; (e) whether the District of Columbia intentionally and unlawfully retained the Named Plaintiffs' and Damages Class Members' property; and (f) whether Damages Class Members are entitled to monetary damages based on the violation of their Fourth and Fifth Amendment rights and the conversion of their property.

Named Plaintiffs therefore respectfully submit that the Court should certify the proposed classes, appoint Named Plaintiffs as representatives of the respective classes, and appoint the undersigned as class counsel.

## FACTUAL BACKGROUND

The relevant facts are set out in Named Plaintiffs' complaint and in the supporting declaration submitted with this motion.  As recounted in greater detail therein, on August 13, 2020, the Named Plaintiffs and other class members assembled for a demonstration to call for police reform and racial justice, which included a march through the Adams Morgan neighborhood of Washington, D.C.  At around 10:45 p.m., MPD officers charged at the demonstrators, rapidly and forcibly kettling approximately 40 individuals in a small, confined area near the intersection of 18th Street, N.W., and Willard Street, N.W.  Over the next several hours, MPD officers detained the Named Plaintiffs and other class members, arrested them, seized their cell phones and other property, and transported them in small groups to police stations and, ultimately, to the Central Cell Block.  The United States Attorney's Office for the District of Columbia (the "USAO"), however, declined to charge any of the approximately 40 individuals who had been kettled and arrested, and they were released having been "no papered."

After they were released, MPD officers returned some property to Named Plaintiffs and proposed class members, but refused to return all but three individuals' cell phones, despite multiple efforts to secure their return.  MPD also retained other non-evidentiary property belonging to Named Plaintiffs and proposed class members, including, but not limited to, personal protective gear and medical equipment belonging to Named Plaintiffs Angeles and Oster, a respirator belonging to proposed class member Evan Roscello, and keys belonging to proposed class member Gavin Laughland.

MPD's retention of Named Plaintiffs' and class members' cell phones long after MPD had any legitimate interest in the retention of the devices violates Named Plaintiffs' and class members' Fourth Amendment rights against unreasonable seizures.

As a direct result of MPD's prolonged retention of their cell phones, Named Plaintiffs and members of the putative Injunctive and Damages Classes were forced to replace their phones, and some class members incurred contract and data charges even though they did not have the use of their phones.  Some lost access to important data, including photographs, passwords, message histories, and contact information for friends and family.

Plaintiffs allege that Defendant's prolonged retention of cell phones seized from Named Plaintiffs and from the members of the putative classes reflects the District of Columbia's policy, pattern, practice, or custom of retaining cell phones seized from arrestees, where officers have no basis to believe the cell phones constitute physical evidence of a crime or contain contraband, for longer than is reasonably necessary for any legitimate law enforcement purpose (this policy, pattern, practice, or custom is hereinafter referred to as the "Custom").  Despite its administrative and technological capabilities, MPD has, pursuant to the Custom, retained cell phones for months or years in many cases where it did not need to retain the phone for more than days or a

few weeks to achieve its law enforcement purposes.  Plaintiffs have alleged examples of the

Custom in detail in their Complaint.  Class Action Complaint for Damages and Injunctive Relief,

*Cameron v. District of Columbia*, No. 1:21-cv-2908 (D.D.C. Nov. 4, 2021), ECF No. 1.

The Custom is, further, documented by both official D.C. government and journalistic

reports.  The D.C. Office of Police Complaints issued a report in 2019 outlining MPD's failures

to return property.[1]  A 2016 article in *The Atlantic* also noted that "phones are nearly always

categorized as evidence in D.C.," and that MPD officers routinely categorized smartphones as

evidence despite prosecutors declining to seek warrants in what one attorney described as "legal

robbery, like a shake down."[2]  Pursuant to the Custom, MPD retained the cell phones of Named

Plaintiffs and proposed class members beyond the time that would be reasonable for a legitimate

law enforcement interest.

The District of Columbia also fails to provide any meaningful process by which

individuals who are no-papered and released without a criminal case docket number can seek the

return of their property.  The District of Columbia provides no mechanism by which no-papered

individuals whose cell phones have been retained pursuant to the Custom, or whose property has

otherwise been unlawfully retained, can challenge that retention before a neutral decisionmaker

having the authority to order release of the cell phones or other property.

Further, D.C. Code § 5–119.06 bars the return of arrestees' property (other than

"prisoner's property," such as clothing and personal effects that are returned when an arrestee is

---

[1]   *See* Gov't of the Dist. of Columbia, Office of Police Complaints, *PBC Policy Report #19-4: Handling Property*
(Sept. 30, 2019), https://policecomplaints.dc.gov/sites/default/files/dc/sites/office%20of%
20police%20complaints/publication/attachments/HandlingProperty.FINAL_.pdf.

[2]   Kaveh Wendell, *Police Can Use a Legal Gray Area to Rob Anyone of Their Belongings*, The Atlantic (Aug. 15,
2016), https://www.theatlantic.com/technology/archive/2016/08/how-police-use-a-legal-gray-area-to-rob-
suspects-of-their-belongings/495740/.

released) "unless the United States Attorney in and for the District of Columbia shall certify that such property . . . is not needed as evidence in the prosecution of a crime."  D.C. Code § 5–119.06(d).  That certification is accomplished through the use of a PD Form 81-C, which is initiated by an MPD officer and sent to the USAO for completion.  However, MPD officers are not required to initiate the Form 81-C release process when property is no longer needed as evidence, and frequently they do not do so.  With regard to cell phones specifically, MPD Special Order 15-08 requires officers to seek a warrant for a seized phone within 48 hours of its seizure if they wish to search the phone.[3]  If no search warrant is sought within 48 hours, or if a warrant is denied, or if a warrant is granted and the cell phone is searched, MPD's legitimate investigatory interest has expired.

However, neither Special Order 15-08 nor any other order requires officers to initiate the PD Form 81-C release process once MPD's legitimate investigatory interest has expired.  Even if an MPD officer chose to initiate the PD Form 81-C release process with regard to property seized from a no-papered arrestee, PD Form 81-C explicitly instructs officers that the form is "NOT TO BE ACCEPTED WITHOUT CRIMINAL DOCKET NUMBER." *See* Metro. Police Dep't, P.D. 81-C (Nov. 1982).  Since no-papered individuals are never given a criminal case docket number, the PD Form 81-C is therefore useless.

Despite the multiple attempts made by Named Plaintiffs and class members and their counsel to secure their property, MPD officers never identified any process through which a no-papered individual could obtain the release of his or her property.  Thus, there is no policy or process through which no-papered individuals can seek the return of their property.

---

[3]    Metro. Police Dep't, Special Order 15-08, *Cell Phone Recovery Process*, § III.C(4)(c) (Apr. 14, 2015), https://go.mpdconline.com/GO/SO_15_08.pdf.

## LEGAL STANDARD

To be certified, a proposed class must satisfy Federal Rule of Civil Procedure 23(a) and at least one Rule 23(b) prerequisite. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013). Under Rule 23(a), certification is appropriate where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Provided that the requirements of Rule 23(a) have been satisfied, certification pursuant to Rule 23(b)(2) is proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Certification pursuant to Rule 23(b)(3) is proper where common questions of law or fact predominate over individual issues, and the class representative has demonstrated that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

## ARGUMENT

Each of the proposed classes satisfies each of the four the requirements of Rule 23(a), and at least one of the prerequisites of Rule 23(b).

### I.    The Proposed Classes Satisfy Rule 23(a)

#### A.    The Proposed Classes Satisfy the Numerosity Requirement

Here, the proposed classes satisfy the requirement that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement "imposes no absolute limitations" and is determined on a case-by-case basis. *Radosti v. Envision EMI,*

*LLC*, 717 F. Supp. 2d 37, 51 (D.D.C. 2010) (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446

U.S. 318, 330 (1980)); *see also Disability Rts. Council of Greater Wash. v. Wash. Metro. Area*

*Transit Auth.*, 239 F.R.D. 9, 25 (D.D.C. 2006) ("There is no specific threshold that must be

surpassed in order to satisfy the numerosity requirement; rather, each decision turns on the

particularized circumstances of the case."). "[T]he numerosity requirement is [generally found

to be] satisfied . . . where a proposed class has at least forty members." *Radosti*, 717 F. Supp. 2d

at 51 (citing *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003); *see also Thomas*

*v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996), *aff'd in part and rev'd in part*, 139 F.3d 227

(D.C. Cir. 1998)). However, forty individuals is not a requirement but merely a guide, and this

Court has granted certification in cases with fewer class members. *See Coleman ex rel. Bunn v.*

*District of Columbia*, 306 F.R.D. 68, 76-79 (D.D.C. 2015) (granting class certification to

putative class of 34 individuals). Here, MPD kettled and arrested 41 individuals in connection

with the demonstration on August 13, 2020, and seized as evidence all, or virtually all, of their

phones, and retained them for months. To date, undersigned counsel are aware of only six

individuals who were kettled and arrested in connection with the demonstration on August 13,

2020, whose cell phones have been returned—three whose phones were returned at the time of

their release, and three who secured the release of their phones after initiating legal action. Thus,

at 35 members in the Injunctive Class and 37 in the Damages Class, the proposed classes come

close to presumptively satisfying the numerosity requirement. As shown below, other factors

provide additional strong support for class treatment.

The nature of the class claims additionally supports a finding that joinder is

impracticable. The additional factors that courts consider in assessing the practicability of

joinder include: (1) "judicial economy arising from avoidance of a multiplicity of actions"; (2)

"geographic dispersion of class members"; (3) "size of individual claims"; (4) "financial resources of class members"; and (5) "the ability of claimants to institute individual suits." *Coleman ex rel. Bunn*, 306 F.R.D. at 80 (quoting Newberg on Class Actions § 3:12 (5th ed. 2014)).  Here, the proposed class members bring this action to address the extended seizure of their property.  Given the nature of the claims, the size of the individual damages is not likely large enough to support an attorney taking individual cases on contingency.  Further, class members are scatted over a broad geographic area—for example, Caitlyn Nigro, a member of both the proposed Injunctive and Damages Classes, currently resides in New York State; Wesley Gifford, also a member of both proposed classes, currently resides in Washington State; and Justin Daniels-Dawes, also a member of both proposed classes, currently attends law school in Ohio.  Accordingly, the only practical means for the vindication of the rights of the proposed class members lies in class adjudication.

The proposed class satisfies the numerosity requirement of Rule 23(a)(1).

### B.   The Proposed Classes Satisfy the Commonality Requirement

Rule 23(a)(2), which requires that there be "questions of law or fact common to the class," is likewise satisfied here.  The key to commonality is that class members' claims "must depend upon a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350. "Even a single common question" will support a commonality finding, *id.* at 359 (alterations omitted), so long as its resolution will "generate common answers for the entire class." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 146-47 (D.D.C. 2014).

The proposed classes here meet this standard.  All of the Injunctive Class and Damages Class members' claims arise out of the same event and are directed against the same defendant. Their claims all flow from the same apparent "uniform policy or practice."  *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (explaining that commonality is established where there is a "uniform policy or practice that affects all class members").  Those claims are also brought under the same constitutional provisions and common law rules, and turn on the same fundamental questions of law.  For both classes, the common questions of law or fact include:

(a)     Whether the District of Columbia has a policy, pattern, practice, or custom of retaining cell phones seized from arrestees, where officers have no basis to believe the cell phones constitute physical evidence of a crime or contain contraband, for longer than is reasonably necessary for any legitimate law enforcement purpose.

(b)     Whether the District of Columbia's Custom violates the Fourth Amendment.

(c)     Whether the District of Columbia has failed to provide a process to seek the return of property seized from "no-papered" arrestees.

(d)     Whether the District of Columbia's lack of a process to seek the return of property seized from "no-papered" arrestees violates the Fifth Amendment.

(e)     Whether the District of Columbia intentionally and unlawfully retained Named Plaintiffs' and Damages and Injunctive Class Members' property.

(f)     Whether the District of Columbia is therefore liable to Named Plaintiffs and Damages and Injunctive Class Members for the tort of conversion.

For the Damages Class, an additional common question is:

(g)      Whether Damages Class Members are entitled to monetary damages based on the violation of their Fourth and Fifth Amendment rights and the conversion of their property.

For the Injunctive Class, an additional common question is:

(h)      Whether equitable and injunctive relief for Injunctive Class Members is warranted.

### C.      The Named Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  Typicality exists where "each class member's claim arises from the same course of events that led to the claims of the representative parties" and that "each class member makes similar legal arguments to prove the defendant's liability." *Greenberg v. Colvin*, 63 F. Supp. 3d 37, 44 (D.D.C. 2014) (quoting *Vista Healthplan, Inc. v. Warner*, 246 F.R.D. 349, 358 (D.D.C. 2007)); *see also, e.g.*, *Disability Rts. Council of Greater Wash.*, 239 F.R.D. at 28 (citing *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)) (supporting the position that "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories"); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013) ("[C]ourts have found the typicality requirement satisfied when class representatives suffered injuries in the same general fashion as absent class members." (citation omitted)).  The representative class members are not required to have endured exactly "the same injuries that may have been sustained by other class members." *Johnson v. District of Columbia*, 248 F.R.D. 46, 53 (D.D.C. 2008).  Rather, Rule 23 requires "only that the harm complained of be common to the class, and that the named plaintiffs

demonstrate a personal interest or threat of injury that is real and immediate, not conjectural or hypothetical." *Id.*

Here, the claims of all Class Members flow from the prolonged retention of their cell phones and other property as a result of being arrested at the same incident, and all implicate the same Custom. Injunctive Class Named Plaintiffs' claims arise from the ongoing retention of their phones and the lack of meaningful post-deprivation process—an injury that all members of proposed Injunctive Class are suffering alike. The Damages Class Named Plaintiffs' claims are likewise typical of those of the Damages Class—their claims arise from MPD's prolonged and unreasonable seizure of their cell phones long past the time necessary to secure a warrant and any evidence the devices may have contained, as well as from the lack of meaningful post-deprivation process. Moreover, MPD continues to hold other property belonging to at least one Injunctive Class Named Plaintiff and at least one Damages Class Named Plaintiff.

Therefore, the common questions of fact and common legal arguments are typical of the class as a whole, and the typicality requirement of Rule 23(a)(3) is satisfied.

### D. The Proposed Named Plaintiffs and Class Counsel Are Adequate

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met as long as the named representatives have no "antagonistic or conflicting interests with the unnamed members of the class, and… appear able to vigorously prosecute the interests of the class through qualified counsel." *Moore v. Napolitano*, 926 F. Supp. 2d 8, 31 (D.D.C. 2013) (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575-76 (D.C. Cir. 1997)). The Named Plaintiffs here fairly and adequately represent the interests of their respective classes. They possess a strong personal interest in the subject matter of the lawsuit and are represented by experienced counsel

with expertise in class action litigation in federal court.  Moreover, the claims of these

individuals mirror the claims of the classes.  Therefore, the proposed class representatives'

interests are not antagonistic to the interests of absent class members.

In addition, Named Plaintiffs' proposed class counsel—the American Civil Liberties

Union Foundation of the District of Columbia ("ACLU-DC"), Washington Lawyers' Committee

for Civil Rights and Urban Affairs ("WLC"), a team of pro bono attorneys from a large private

law firm, and Jeffrey Light—can fairly and adequately represent the class.  The ACLU-DC and

WLC have been appointed as class counsel in numerous matters, and Mr. Light has served as

class counsel in *Schultz v. District of Columbia*, No. 1:18-cv-00120 (D.D.C. filed Jan. 19, 2018).

Moreover, the organizations and attorneys involved have committed and will continue to commit

substantial resources to prosecuting this case.  Accordingly, Rule 23(a)(4)'s adequacy

requirement in the instant action is satisfied.

## II.     Injunctive Class Certification is Appropriate Under Rule 23(b)(2)

Rule 23(b)(2) permits class certification where "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."  Fed R. Civ. P.

23(b)(2).  The Supreme Court has explained that:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory
> remedy warranted—the notion that the conduct is such that it can be enjoined or
> declared unlawful only as to all of the class members or as to none of them.  In
> other words, Rule 23(b)(2) applies only when a single injunction or declaratory
> judgment would provide relief to each member of the class.

*Wal-Mart*, 564 U.S. at 360 (citation omitted).  Courts in this District have interpreted Rule

23(b)(2) as imposing two requirements: "(1) the defendant's action or refusal to act must be

generally applicable to the class, and (2) plaintiff must seek final injunctive relief or

15

corresponding declaratory relief on behalf of the class." *Steele v. United States*, 159 F. Supp. 3d 73, 81 (D.D.C. 2016) (citations omitted); *see also Bynum v. District of Columbia*, 214 F.R.D. 27, 37 (D.D.C. 2003).  To satisfy Rule 23(b)(2), "it is enough to show that a defendant has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity." *Bynum*, 214 F.R.D at 37 (citation omitted).

The two prongs of the *Steele* test are clearly satisfied here in light of Defendant's behavior towards the members of the Injunctive Class and the injunctive relief requested on behalf of the proposed class.  MPD's unreasonably prolonged retention of the proposed class members' property has been uniform across the class and stems from a widespread policy, pattern, practice, or custom.  In response to repeated inquiries regarding return of class members' property, Defendant has merely asserted the phones are being held as evidence and has offered no rationale for why any necessary warrants were not obtained, and why any data whose seizure was authorized by a warrant have not been retrieved, and the phones returned, over a year after the initial seizure.  Defendant has continued to hold Named Plaintiffs' and proposed class members' property without meaningful post-deprivation process.  In response, Named Plaintiffs seek uniform injunctive and declaratory relief.

### III.    Damages Class Certification is Appropriate Under Rule 23(b)(3)

Certification of the Damages Class is justified under Rule 23(b)(3).  Rule 23(b)(3) requires a showing that common questions of law or fact predominate over facts affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  Predominance requires a court to determine whether a common question—a question as to which the same evidence can sufficiently establish a prima facie case for the members—is more prevalent and important than the individual facts or questions presented.  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Predominance is therefore satisfied when "common questions represent a significant aspect of the case and they can be resolved for all members in a single adjudication."  Wright & Miller, *Federal Practice & Procedure* § 1778 (3d ed. 2011).  To determine predominance, courts analyze the nature of the evidence to be presented at trial, compare the relative importance of the contested issues, and make "some prediction as to how specific issues will play out."  *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 22 (D.D.C. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).  Here, the claims of the Damages Class members arise from the same incident and challenge the same MPD policy, pattern, practice, or custom.  A finding of liability will turn on the same findings of law and fact regarding whether the class members' Fourth and Fifth Amendment rights have been violated, and whether MPD has engaged in conversion of the class members' property.  While damages determinations will require individualized review, the existence of such individualized damages claims does not bar a finding of predominance.  *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (collecting cases finding that individualized damages claims do not defeat a predominance finding).

Rule 23(b)(3) also requires that a class action must be "superior" to other methods of adjudicating individual rights.  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) includes a range of non-exhaustive factors for courts to consider including:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  As the Supreme Court has recognized, the core guiding principle of Rule 23(b)(3) and class certification generally is to "overcome the problem that small recoveries

do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)).  This is just such a case. If liability is established, it is likely that class members' damages claims can be settled, and even if they are not settled, the burden of proving each person's damages will be light, as the relevant facts will be simple: what phone and other property was seized and retained; what expense did a class member incur in replacing the property; what other damage (loss of important data; anxiety and distress) did a class member suffer?  The economies of scale achieved via class certification and the efficiencies of a single adjudication on liability make a class action far superior to individualized cases.

## IV.    The Court Should Designate Named Plaintiffs' Counsel as Class Counsel

Upon certifying the class, the Court must also appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B), 23(g).  Rule 23(g) requires the Court to consider the following four factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  *Id.* at 23(g)(1)(A)(i)–(iv).  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  *Id.* at 23(g)(1)(B).

Named Plaintiffs' counsel satisfy all four criteria.  The ACLU-DC, the WLC, the team of pro bono attorneys, and Mr. Light have extensive experience and robust resources to represent the class.  The team includes many experienced federal litigators including attorneys at

the ACLU-DC and the WLC with experience representing classes in § 1983 civil rights cases. As reflected in the complaint filed in this matter, Named Plaintiffs' counsel have also already devoted substantial time investigating the factual and legal issues in this case, and will continue to do so throughout the pendency of the litigation. *See, e.g.*, *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010) ("The plaintiffs have shown that they will adequately represent the class. . . . Counsel have already committed substantial time and resources to identifying and investigating potential claims in the action.").

Accordingly, the Court should appoint Named Plaintiffs' counsel as class counsel in this case.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion should be granted.  Plaintiffs respectfully request that the Court:

1.      Grant Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

2.      Certify the proposed Injunctive Class, defined as all individuals who were kettled and arrested at or near the intersection of 18th and Willard Streets, N.W., during the late night hours of August 13, 2020, and early morning hours of August 14, 2020, who were subsequently released without being charged with a crime, and whose cell phones and other property the Metropolitan Police Department continues to hold, and appoint Destiny Robinson, Jonah Angeles, and Jake Oster as representatives of the Injunctive Class.

3.      Certify the proposed Damages Class, defined as all individuals who were kettled and arrested at or near the intersection of 18th and Willard Streets, N.W., during the late

night hours of August 13, 2020, and early morning hours of August 14, 2020, and who were subsequently released without being charged with a crime but had their cell phones and other property seized by the Metropolitan Police Department and held beyond the time reasonably necessary to secure a warrant and retrieve potential evidence, and appoint Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, and Jake Oster as representatives of the Damages Class.

4.      Appoint the undersigned counsel to represent this class.

Respectfully submitted,

/s/ Tara L. Reinhart

Tara L. Reinhart (D.C. Bar No. 462106)
Julia K. York (D.C. Bar No. 478001)
Joseph M. Sandman (D.C. Bar No. 1030820)
Daniel R. Blauser (D.C. Bar No. 1620060)
Annamaria Kimball (D.C. Bar No. 1737945)
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7630
tara.reinhart@probonolaw.com

Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Michael Perloff (D.C. Bar No. 1601047)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, N.W., Second Floor
Washington, D.C. 20005
(202) 601-4267
smichelman@acludc.org

Jacqueline Kutnik-Bauder*
Carlos Andino*
Washington Lawyers' Committee for
Civil Rights & Urban Affairs
700 14th Street, N.W., Suite 400
Washington, D.C. 20005
(202) 319-1000
jacqueline_kutnik-bauder@washlaw.org

Jeffrey L. Light (D.C. Bar No. 485360)
Law Office of Jeffrey L. Light
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
(202) 277-6213
jeffrey@lawofficeofjeffreylight.com

*Counsel for Plaintiffs*

\*   Not a member of the D.C. Bar; practicing
pursuant to D.C. Ct. App. R. 49(c)(9)(B).
Application to appear pro hac vice forthcoming.

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 5, 2021, I served a copy of the foregoing Plaintiffs' Motion for Class Certification and Appointment of Class Counsel on Defendant by emailing it to chad.copeland@dc.gov, stephanie.litos@dc.gov, and tonia.robinson@dc.gov, in accordance with D.C. Office of the Attorney General Office Order No. 2020-10 (April 1, 2020), https://oag.dc.gov/sites/default/files/2020-04/2020-10-OAG-OFFICE-ORDER-Temp-ServiceProcess.pdf. That Order provides that, during the pandemic, the District will not accept in-person delivery but will accept service when the required documents are emailed to the three individuals named above.

/s/ Tara L. Reinhart
Tara L. Reinhart
