**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALEXANDER CAMERON, *et al.*,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 21-2908 (APM)** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**</u>

**INTRODUCTION**

Plaintiffs Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, and Jake Oster were arrested on August 13, 2020 for felony rioting. Pursuant to standard Metropolitan Police Department (MPD) policy, after plaintiffs were arrested, their personal property, including their cellphones, was seized as evidence. Plaintiffs do not dispute that MPD had probable cause to arrest them, nor do they dispute that the initial seizure of their phones as evidence was justified. Instead, plaintiffs allege that MPD's seizure of their phones became unreasonable at a certain (unidentified) point in time in violation of their Fourth Amendment rights. Plaintiffs also allege that the District does not provide individuals like plaintiffs—those who are arrested but not charged with a crime, *i.e.*, "no papered"—with a procedure through which they can seek the return of their property before a neutral decisionmaker, in violation of their Fifth Amendment rights. Plaintiffs contend that the District is liable for those alleged constitutional violations because they are the result of a policy, practice, or custom of which the District had notice. Plaintiffs also allege that MPD's continued seizure of their phones constituted common law conversion. Plaintiffs' claims are based on a misunderstanding of the facts and the law.

First, plaintiffs fail to allege a violation of their Fourth Amendment rights. The reasonableness of a seizure is assessed at the time of the seizure. Here, plaintiffs do not dispute that MPD had probable cause to arrest them and seize their property. Plaintiffs' contention that a reasonable seizure can evolve into an unreasonable seizure over time is without merit.

Second, plaintiffs fail to allege a violation of their Fifth Amendment rights. Plaintiffs' allegation that the District does not provide no-papered arrestees with a procedure to seek the return of their property before a neutral decisionmaker is incorrect. As many courts have held, the plain language of D.C. Superior Court Rule of Criminal Procedure 41(g) provides no-papered arrestees with a constitutionally adequate process to seek the return of their property. To the extent plaintiffs are demanding additional protections, their claim should be dismissed because Rule 41(g) satisfies the standard set out in *Medina v. California*, 505 U.S. 437 (1992) for assessing whether state criminal procedural rules provide due process. Rule 41(g) also satisfies the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), although that test is inapplicable here.

Third, even if plaintiffs have alleged a violation of their constitutional rights, their claims still fail because they have not alleged facts that support municipal liability under 42 U.S.C. § 1983. Plaintiffs allege only a handful of other examples of MPD purportedly retaining the property of no-papered arrestees longer than necessary, which does not meet the high standard for alleging custom or practice, and plaintiffs have failed to identify any District policy, practice, or custom that prevents them from seeking the return of their property before a neutral decisionmaker—to the contrary, District policy expressly provides plaintiffs with the exact process they are seeking, and three plaintiffs took advantage of that process.

Finally, plaintiffs fail to state a claim for conversion because the District's seizure of their property was lawful. Plaintiffs' claims should be dismissed with prejudice.

## BACKGROUND

### I. MPD Policies and Procedures Concerning Handling of Evidence

MPD has detailed policies and procedures concerning the handling of property seized from arrestees. *See* General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department (Apr. 30, 1992) (GO-SPT-601.1) (attached as Ex. A). MPD also has policies directly addressing situations when a cell phone is seized incident to an arrest. *See* Special Order 15-08, Cell Phone Recovery Process (Apr. 14, 2015) (SO-15-08) (attached as Ex. B). SO-15-08 cross-references GO-SPT-601.1.

GO-SPT-601.1 requires MPD officers to complete a PD Form 81 for property seized from arrestees. GO-SPT-601.1, Part I.A.2. "Detailed instructions for the preparation of PD Form 81 are contained in Report Writing Instructions Series 91 Number 1." *Id*., Part I.C.5. Property seized is generally classified in one of 13 categories, including "Evidence." *Id*., Part I.A.6. "When the decision is made not to paper a case, the member shall have the reviewing attorney sign the PD Form 81-C releasing the property." *Id*., Part I.I.9. Similarly, "[i]f a disposition is available in the case, or the property is no longer needed for prosecution, the member shall submit a completed PD Form 81-C containing the signature of the appropriate prosecuting attorney." *Id*., Part I.I.8.b. "After 60 days, if there is no defendant or suspect in a case, and it is evident that the property will not be needed in court, the member who initially handled the property shall prepare and submit a properly signed PD Form 81-C to their element's property officer." *Id*., Part I.I.11.

With regard to seized cell phones, Special Order 15-08 provides for three different procedures depending on how the cell phone has been classified. First, if the cell phone has been classified as "Found" property, then "absent any circumstances or evidence indicating the cell

phone is linked to a criminal offense, [MPD members] shall handle the cell phones in accordance with GO-SPT-601.1." SO-15-08, Part III.A. Second, "when members recover cell phones from arrestees, and there is no reason to believe the phone has any evidentiary value or is stolen, members shall handle the cell phones as 'Prisoner's Property' in accordance with GO-SPT-601.1." *Id.*, Part III.B.[1] Third, "when members recover cell phones from arrestees who are charged with any felony offenses, theft-related offenses, or any offenses in which there is reason to believe the device has evidentiary value," several steps follow, including "Complete a PD Form 81 and list the phone as 'Evidence' on the Property Book." *Id.*, Part III.C. Once those steps are completed, "the assigned detective shall turn the cell phone over to the District property clerk for handling according to the appropriate category (*e.g.*, 'Found Property,' 'Evidence')." *Id.*, Part III.C.6.

General Order 601.02 is also relevant to MPD's handling of property. *See* General Order 601.02, Preservation of Potentially Discoverable Material (Feb. 3, 2004) (GO-SPT-601.02) (attached as Ex. C). GO-SPT-601.02 provides that:

> To ensure the integrity of any criminal investigation, all potentially discoverable material that comes into the possession of the Metropolitan Police Department (MPD) must be properly maintained and preserved, so that the prosecuting authority may disclose such material in a criminal judicial proceeding. D.C. Superior Court Criminal Rule 16 (SCR-Crim. Rule 16) states that the Government must disclose certain material to a defendant in a criminal judicial proceeding upon request.

Relatedly, plaintiffs allege that PCB Policy Report #19-4: Handling Property (Sept. 30, 2019) (PCB Policy Report) (attached as Ex. D) placed the District on notice of whether there were

---

[1]      As to "Prisoner's Property," GO-SPT-601.1 provides that "[w]hen a prisoner is being released from custody and all personal property is returned, the prisoner shall affix his/her signature in the appropriate block on the Property Book." GO-SPT-601.1, Part II.A.4. "Personal property that is not returned shall be retained at the element where the prisoner was booked. The station clerk shall advise the prisoner that he/she or a person designated by him/her must claim the remaining property within 90 days. After 90 days, the property shall be forwarded, with PD Form 81, to the Property Control Branch for disposition." *Id.*, Part II.A.6.

problems with MPD's handling of evidence.[2] Compl. ¶ 54. In that report, the Police Complaints Board (PCB) explained that "the flexible and extensive nature of general order 601.1, when it is followed properly, ensures that MPD members have comprehensive guidelines to appropriately manage property." PCB Policy Report at 2. The PCB also observed that "these policies adequately set forth effective procedures for handling all varieties of property as it may come into the custody of MPD during the course of official police activities." *Id*. The PCB concluded that "MPD policies currently in place for the handling of property generally conform to best practices standards." *Id*. at 5. Although the PCB did note that it receives "approximately 50 complaints per year categorized as mishandling property," those complaints generally involved either "mistakes made during the course of custody that caused the loss or damage of property" or "property seized or stolen from community members." *Id*. at 3. The PCB did not raise any concerns about MPD officers holding property of no-papered arrestees (or any other individuals) longer than necessary or a lack of available procedures for seeking the return of seized property.[3]

Finally, D.C. Superior Court Rule of Criminal Procedure 41(g) (Rule 41(g)) expressly provides a mechanism for individuals, including no-papered arrestees, to seek the return of property seized by MPD:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may

---

[2]    The PCB Policy Report was issued by the Police Complaints Board pursuant to D.C. Code § 5-1104(d).

[3]    Plaintiffs also reference D.C. Code § 5–119.06(d). *See* Compl. ¶ 59. However, plaintiffs' quotation of that subsection omits key limiting language. *See id*. Section 119.06(d) only applies to "property or money in the possession of the Property Clerk alleged to have been feloniously obtained or to be the proceeds of crime … ." Here, plaintiffs do not allege that MPD classified any of their property as feloniously obtained or as the proceeds of a crime. Therefore, on its face, Section 119.06(d) is inapplicable.

impose reasonable conditions to protect access to the property and its use in later proceedings.

## II.    Plaintiffs' Allegations

Plaintiffs allege that they were marching on August 13, 2020, in the Adams Morgan neighborhood of Washington, D.C for police reform and racial justice. Compl. ¶¶ 19–20. Plaintiffs further allege that during the march MPD officers arrested them, seized their cell phones and other property, and transported them to police stations. *Id*. ¶ 21. Plaintiffs offer no details concerning the actions that led to their arrests and do not challenge the validity of their arrests or the seizure of their property incident to arrest. *See generally* Compl. Plaintiffs were ultimately not charged with any crimes and were released. *Id*. ¶¶ 21–22. Although some personal property was returned to plaintiffs upon their release, they allege that other property, including their cell phones, was not returned. *Id*. ¶ 23.

Plaintiffs contend that over the next several weeks their attorney made unsuccessful attempts to secure the return of their cell phones. *Id*. ¶¶ 25–27. Their attorney was purportedly told that MPD was actively investigating the events of August 13, 2020, and that evidence recovered from those events was being reviewed. *Id*. ¶ 27. On February 25, 2021, plaintiffs Cameron, Tan, and Robinson allegedly filed motions in D.C. Superior Court under Rule 41(g), seeking a return of their property ("Rule 41(g) plaintiffs"). *Id*. ¶ 32. The 41(g) plaintiffs filed their motions in active criminal cases involving different individuals. *Id*. ¶ 33. The D.C. Superior Court Deputy Clerk purportedly informed the 41(g) plaintiffs that their motions should not be filed in criminal cases involving other individuals and that instead plaintiffs' motions should be re-captioned so that they could be considered in the context of a sealed, standalone noncriminal case for administrative purposes. *Id*. ¶ 34. The 41(g) plaintiffs refiled their motions using that procedure on March 18, 2021. *Id*. ¶ 36. On May 4, 2021, the 41(g) plaintiffs were informed that the paperwork necessary

for the release of their property had been filed. *Id*. Plaintiff Cameron retrieved his property on May 26, 2021, *id*. ¶ 37, and plaintiff Tan retrieved his property on June 21, 2021, *id*. ¶ 38. Plaintiffs Robinson, Angeles, and Oster allege that they have not yet retrieved their property. *Id*. ¶¶ 15–17.

On November 4, 2021, plaintiffs filed this putative class action against the District. In Count 1, plaintiffs allege that the District violated the Fourth Amendment because it has a "policy, pattern, practice, or custom of retaining cell phones seized from arrestees, where officers have no basis to believe the cell phones constitute physical evidence of a crime or contain contraband, for longer than is reasonably necessary for any legitimate law enforcement purpose." Compl. ¶¶ 51, 79–82. In Count 2, plaintiffs allege that the District violated the Fifth Amendment because the District has a policy "permitting officers to seize individuals' property and retain that property indefinitely without providing any procedure by which a 'no-papered' individual can contest the deprivation before a neutral third party." *Id*. ¶ 88. In Count 3, plaintiffs allege that the District effected a conversion of their property because "months after any law enforcement interest in the property expired, despite repeated requests for the items' return, the District of Columbia, through its agents, intentionally and unlawfully exercised dominion and control over the property." *Id*. ¶ 93.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. "[A] complaint [does

not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

"Courts may consider documents 'incorporated in the complaint' when considering a 12(b)(6) motion[,]" *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), along with "matters such as records from other court proceedings over which a Court may take judicial notice," without converting the motion to dismiss into a motion for summary judgment. *Banks v. Inspired Teaching Sch.*, 243 F. Supp. 3d 1, 3 (D.D.C. 2017) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)). This includes a plaintiff's previous court proceedings; "[their] outcomes, and the dockets therein are matters of public record of which the Court [can] simply [take] judicial notice." *Glenn v. Fay*, 281 F. Supp. 3d 130, 143 (D.D.C. 2017) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

## ARGUMENT

### I.  Plaintiffs Fail To Allege a Violation of Their Fourth Amendment Rights (Count 1).

In Count 1, plaintiffs allege that MPD's retention of their property violated their Fourth Amendment right to be free from unreasonable seizures. Compl. ¶¶ 79–86. Because plaintiffs seek to hold the District liable for the alleged constitutional violations, they must allege both an underlying violation and "a custom or policy of the municipality [that] caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 124 (1992); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Plaintiffs' Fourth Amendment claim fails on both counts.

### A.  Plaintiffs Fail To Allege That the District's Retention of Their Property Constitutes an Unreasonable Seizure.

Plaintiffs do not challenge MPD's initial seizure of their cell phones and acknowledge that the District "has a legitimate interest in preventing arrestees from using their cell phones while in

custody, and in preserving potential evidence for use at trial." Compl. ¶ 81. Plaintiffs only challenge the retention of their cell phones after the initial seizure, an alleged harm that cannot give rise to a Fourth Amendment claim.

"'Where an initial seizure of property was reasonable,' the government's 'failure to return the items does not state a separate Fourth Amendment claim of unreasonable seizure.'" *Bennett v. Dutchess Cty.*, 832 Fed. App'x 58, 60 (2d Cir. 2020) (quoting *Shaul v. Cherry-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2002) (alterations omitted)); *see also Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999) ("Once the act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies."). Challenges to the retention and return of lawfully seized property are properly analyzed under other constitutional provisions. *See Bennett*, 832 Fed. App'x at 187 ("To the extent the Constitution affords [plaintiff] any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process.").[4] "The purpose of the Fourth Amendment is to prevent unreasonable governmental intrusions into the privacy of one's person, house, papers, or effect." *United States v. Calandra*, 414 U.S. 338, 354 (1974). Any intrusion into plaintiffs' privacy would have occurred at the time of an initial search or seizure: the allegedly unreasonable retention of their cell phones does not infringe on plaintiffs' privacy and, therefore, does not sound in the Fourth Amendment.[5]

---

[4]     *See also Dehault v. Ahern*, 857 F.3d 76, 83 (1st Cir. 2017) (observing that "where property is concerned, it would seem that the Fifth Amendment's express protections for property provide the appropriate framework"); *Lee v City of Chicago*, 330 F.3d 456, 466 & n.5 (7th Cir. 2003) (noting that retention of evidence might be appropriately analyzed as a taking without just compensation).

[5]     In *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019) and *Avila v. Dailey*, 246 F. Supp. 3d 347 (D.D.C. 2017), the Court analyzed claims concerning the retention of property by the District under the Fourth Amendment but did not specifically discuss if the Fourth Amendment was the correct constitutional provision for these claims. To the extent those cases suggest that a reasonable seizure can become an unreasonable seizure, they are against the weight

As plaintiffs have only challenged the retention of lawfully seized property, they have alleged no plausible violation of the Fourth Amendment. Claim 1 should therefore be dismissed with prejudice.

### B. Plaintiffs Fail To Allege That the District Has a Custom or Practice of Retaining the Property of No-Papered Arrestees Longer Than Reasonably Necessary.

"Under 42 U.S.C. § 1983, municipalities can be held liable for constitutional violations committed by their employees only if a plaintiff shows that the municipality is the 'moving force' behind the constitutional violation, meaning that an 'official municipal policy of some nature caused a constitutional tort.'" *Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021) (quoting *Monell*, 436 U.S. at 691). The D.C. Circuit has identified four ways official municipal policy can be shown:  (1) express municipal policy; (2) actions of a final municipal "policymaker"; (3) persistent conduct by non-policymakers (*i.e.*, "custom" with force of law); and (4) "deliberate indifference" to a risk of constitutional injury. *Baker*, 326 F.3d at 1306–07 (citations omitted). Each theory has its own "elements," which a Section 1983 plaintiff bears the burden of pleading in accordance with *Iqbal*. *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015). Additionally, under any theory, a municipal liability claim separately requires proof of causation—

---

of authority. The appropriate basis for challenging the retention of lawfully seized property is a due process challenge under the Fifth Amendment.

Similarly, in *United States v. Wilkins*, the court ordered the suppression of the results of the search of a cell phone 15 months after the cell phone was seized incident to an unrelated arrest and considered the length of the detention of the property as part of that analysis. Civil Action No. 19-390, 2021 WL 189499, at **23–27 (D.D.C. May 11, 2021). *Wilkins* applies a line of cases analyzing the length of time between the warrantless seizure of property and a subsequent search and does not address the Circuit Court cases discussed above holding that there is no freestanding Fourth Amendment claim related to the prolonged retention of property. *Id*. Furthermore, as the Seventh Circuit held in *United States v. Burgard*, there is no conflict between the requirement that law enforcement obtain a warrant within a reasonable time to effectuate a search of seized property and their holding in *Lee* that a challenge to the retention of lawfully seized property cannot be brought under the Fourth Amendment. 675 F.3d 1029, 1032 (7th Cir. 2012).

specifically, an "affirmative link" between the alleged municipal policy and the alleged constitutional violation, "such that [the former] was the moving force behind the [latter]." *Baker*, 326 F.3d at 1306.

Plaintiffs do not allege that the District had an express policy that caused the retention of no-papered arrestees' property for an unreasonable length of time, nor do they allege that their injuries were caused by the actions of a final municipal policymaker or by a final policymaker's deliberate indifference. *See generally* Compl. Plaintiffs rely only on the custom theory of municipal liability.

To state a claim for liability based on an alleged custom, plaintiffs must allege "concentrated, fully packed, precisely delineated scenarios" to support their allegations that such a policy or custom exists, *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988)), and that the custom is "pervasive," *Tabb v. District of Columbia*, 605 F. Supp. 89, 96 (D.D.C. 2009). *See also Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 41 (D.D.C. 2014) (explaining that to show custom, Section 1983 plaintiffs must allege "that the municipality's employees engaged in a persistent or regular pattern of conduct that gave rise to the alleged constitutional violations"). The past events purportedly establishing a custom must be identical to the alleged wrongdoing underlying plaintiffs' claim. *Egudu*, 72 F. Supp. 3d at 41 (holding that report "analyz[ing] data related to disorderly conduct arrests [but] tailored toward exposing racial disparities" could not show policy or custom of "violat[ing] an individual's free speech right or the right to be free from an unlawful seizure"); *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133–34 (D.D.C. 2011) (holding report could not evidence municipal custom when "plaintiff was not arrested for the offense examined in the report"). Plaintiffs have failed to allege facts supporting their claim that the

retention of property of no-papered arrestees for an unreasonable length of time was "widespread" or "pervasive." Plaintiffs' purported examples of prolonged retention fall into three categories.

First, plaintiffs allege that the District unreasonably retained the cell phones of individuals arrested during the 2017 presidential inauguration. Compl. ¶ 53(a). The 2017 presidential inauguration involved unprecedented rioting and civil disturbance, including mass arrests. The unique nature of that single event does not support plaintiffs' claim that it evidences a broader, longstanding municipal policy. Further, plaintiffs' conclusory allegation does not provide sufficient detail to assess similarities to plaintiffs' alleged injuries. For example, plaintiffs acknowledge that some of those individuals were charged with crimes, and the experiences of two individuals can hardly be extrapolated to all other individuals. *See id.*

Second, plaintiffs allege eight examples of prolonged retention from October 2015 to May 2021. *Id.* ¶ 53(b)–(i). While plaintiffs provide a modicum of details concerning two of those examples, the remainder are based on conversations plaintiffs' counsel purportedly had with unidentified attorneys involving the unidentified attorneys' unidentified clients. The complete lack of details surrounding these "examples" renders them useless for assessing policy or custom. *Cf. Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 93-94 (D.D.C. 2011) (finding plaintiff did not state a claim for municipal liability when plaintiff offered only three examples and did not allege that "some, most, or all" individuals in similar circumstances experienced the alleged constitutional violation). MPD made more than 19,000 arrests in 2020 alone.[6] If a custom of retaining property longer than reasonably necessary actually existed, it is reasonable to expect to find more than a handful of alleged occurrences over a six-year period.

---

[6]    MPD    2020    Annual    Report    at    28.    Available    at: https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR2020_lowres_a. pdf.

Third, plaintiffs allege that the PCB Policy Report evidences the alleged custom. Compl. ¶ 54. But, as explained above, the PCB Policy Report does the exact opposite and contradicts plaintiffs' argument that there is a custom of unreasonably retaining property of no-papered arrestees. The PCB Policy Report identified no issues surrounding the unreasonable retention of property. PCB Policy Report at 3–4.

Because plaintiffs fail to allege facts showing a "persistent or regular pattern" of MPD officers unreasonably retaining property of no-papered arrestees, Count 1 should be dismissed for that reason as well. *See Egudu*, 72 F. Supp. 3d at 41.

## II.  <u>Plaintiffs Fail To Allege a Violation of Their Fifth Amendment Rights (Count 2).</u>

In Count 2, plaintiffs allege that their procedural due process rights were violated because District policy purportedly does not provide them with a procedure through which they can challenge the seizure of their property before a neutral decisionmaker. Compl. ¶ 88. "[T]o make out a violation of [procedural] due process, plaintiff must show the Government deprived [him] of a 'liberty or property interest' to which plaintiff had a 'legitimate claim of entitlement,' and that 'the procedures attendant upon that deprivation were constitutionally [in]sufficient.'" *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). It is well-established that "a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *Chavis v. Garrett*, 419 F. Supp. 3d 24, 38 (D.D.C. 2019) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Plaintiffs have failed to allege that any District policy deprived them of constitutionally sufficient due process.

**A.** **Plaintiffs Incorrectly Allege That the District Does Not Provide No-Papered Arrestees with a Process for Seeking the Return of Seized Property.**

Plaintiffs' due process claim is premised entirely on the allegation that their counsel has been "unable to identify any publicly available rule or authority" that addresses situations "where, as here, an individual is seeking the return of seized property, but has been no-papered, has not been charged with a crime, and has no connection to an ongoing criminal case." Compl. ¶ 35.[7] However, implicit in that allegation is plaintiffs' apparent conclusion that Rule 41(g) does not provide them with the exact process they demand in Count 2. Plaintiffs are wrong, as clearly demonstrated by the plain language of Rule 41(g) and the many cases applying it.

Rule 41(g) states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Despite its brevity, "Rule 41(g) is a comprehensive scheme that provides a straightforward and adequate remedy—and one which avoids any constitutional deprivation." *Leyland v. Edwards*, 797 F. Supp. 2d 7, 10 (D.D.C. 2011). And, while plaintiffs suggest that Rule 41(g) is somehow inapplicable in the case of no-papered arrestees, *see* Compl. ¶ 35, nothing on the face of Rule 41(g) limits its applicability, and a conclusory assertion to the contrary cannot defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678.[8]

---

[7]    To the extent plaintiffs are suggesting that the District had an affirmative duty to notify them of post-deprivation procedures, plaintiffs are wrong. *See Dukore v. District of Columbia*, 970 F. Supp. 2d 23, 32 n.7 (D.D.C. 2013) ("The Fifth Amendment does not require the defendants to notify the plaintiffs of these [post-deprivation] procedures.") (citing *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999)).

[8]    In *Brown v. District of Columbia*, the Court stated that "[a] Rule 41(g) motion, however, is available only 'in the context of an ongoing criminal proceeding.'" 115 F. Supp. 3d 56, 65 (D.D.C. 2015) (quoting *United States v. Price*, 914 F.2d 1507, 1511 (D.C. Cir. 1990)). The *Brown* court also cited *District of Columbia v. Dunmore*, 749 A.2d 740, 744 (D.C. 2000) for the proposition that Rule 41(g) may be unavailable after the associated criminal case is closed. 115 F. Supp. 3d at 56. Those cases have no applicability here because they concerned civil forfeiture

The broad scope of Rule 41(g) has been repeatedly addressed in caselaw. For example, in *Cousart v. Metro Transit Police Chief*, the Court held that "[u]nder D.C. Superior Court Rule of Criminal Procedure 41(g), [plaintiff] can move in the Superior Court for the return of property seized as part of a criminal action," including civil actions "for the return of property seized in a case that was 'disposed of by *nolle prosequi.*'" 101 F. Supp. 3d 27, 28 (D.D.C. 2015) (citing *Alleyne*, 455 A.2d at 888–89); *accord Alleyne*, 455 A.2d at 888–89 (finding that trial court had jurisdiction to entertain the plaintiffs' motion for return of property after the government "no papered" their criminal cases; *Wilson v. United States*, 424 A.2d 130, 132 (D.C. 1980) (holding that "the Superior Court has jurisdiction after a criminal trial to rule on a motion to return property which had been seized in connection with the prosecution").[9]

Because Rule 41(g) provides plaintiffs with the procedural protections they seek in Count 2, regardless of whether plaintiffs took advantage of those protections, Count 2 should be dismissed. *See Dukore*, 970 F. Supp. 2d at 32 (noting the well-established principle that "[w]here

---

proceedings and what amounted to competing claims for the same property. Under those circumstances, courts have held that an individual cannot subvert the forfeiture proceedings by simultaneously seeking the return of the property under Rule 41(g)—as the D.C. Circuit concluded, "we now hold that once the Government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction to resolve the issue of return of property." *Price*, 914 F.2d at 1511. But nothing in *Brown* or *Price* suggests that an individual's ability to seek the return of property turns solely on whether there is a pending criminal proceeding. *See Alleyne v. United States*, 455 A.2d 887, 888–89 (D.C. 1983).

[9]     *See also Jenkins v. District of Columbia*, Civil Action No. 16-118, 2017 WL 6211103, at *4 (D.D.C. Mar. 28, 2017) ("Superior Court Rule of Criminal Procedure 41(g) enables property owners to challenge the seizure and retention of their belongings as evidence."); *Baird v. Holton*, 806 F. Supp. 2d 53, 58 (D.D.C. 2011) ("Plaintiff's contention that 'without a damages remedy under Bivens, he has no remedy for being deprived of his property,' is simply incorrect. The plaintiff may seek return of the property taken from him by filing a motion pursuant to Rule 41(g).").

adequate post-deprivation state remedies are available, no cognizable constitutional claim for procedural due process can be stated") (citation omitted).

**B.  Rule 41(g) Satisfies the Requirements of the Due Process Clause.**

Rule 41(g) provides plaintiffs with an opportunity to have their claim heard before a neutral decisionmaker, which is all the process they seek in Count 2. To the extent plaintiffs are alleging that the protections of Rule 41(g) are insufficient, that claim is without merit as well. Although procedural due process claims are often analyzed under the familiar three-part *Mathews* balancing test, the U.S. Supreme Court has held that *Mathews* does not control a procedural due process challenge when it involves "assessing the validity of state procedural rules which … are part of the criminal process." *Medina v. California*, 505 U.S. 437, 443 (1992). Because Rule 41(g) is a state rule of criminal procedure, *Medina* provides the proper framework for assessing the constitutionality of the process afforded by Rule 41(g), and Rule 41(g) satisfies that standard. Even if the Court were to not apply *Medina*, Rule 41(g) survives scrutiny under *Mathews*.

**1.      Rule 41(g) Satisfies the Requirements of *Medina*.**

Under *Medina*, "[a] rule of criminal procedure usually does not violate the Due Process Clause unless it (i) 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or (ii) 'transgresses any recognized principle of 'fundamental fairness' in operation.'" *Kincaid v. District of Columbia*, 854 F.3d 721, 726 (D.C. Cir. 2017) (quoting *Medina*, 505 U.S. at 445, 448) (applying *Medina* and holding that post-and-forfeit policy did not violate due process).

Similar to *Kincaid* and *Fox v. District of Columbia*, 851 F. Supp. 2d 20, 33 (D.D.C. 2012), seizing evidence for possible use in a criminal prosecution is a traditional function performed by MPD when dealing with certain people arrested on criminal charges. Indeed, the seizure of evidence needed for criminal prosecution is inextricably intertwined with the criminal process, so

much so that protections for unreasonable seizures are embodied in the Fourth Amendment. The basis for the government's interference with plaintiffs' alleged property is premised on probable cause that a crime was committed, which plaintiffs here do not contest.

Plaintiffs' challenge in this case necessarily bears upon the constitutional adequacy of Rule 41(g), a local rule of criminal procedure governing hearings for the return of seized evidence. To apply the *Mathews* test would upset the traditional role of state and local legislatures to prescribe criminal process and the local criminal court's authority to determine whether and when to grant relief. *See Medina*, 505 U.S. at 445–46 ("[B]ecause the States have considerable expertise in matters of criminal procedure and the criminal process is grounded in centuries of common-law tradition, it is appropriate to exercise substantial deference to legislative judgments in this area.").

Plaintiffs' due process challenge also implicates local criminal procedure laws designed to protect the criminal defendant's constitutional right to a fair trial. As explained above, the District's criminal procedure imposes an obligation on the prosecutor to preserve evidence for the criminal defendant to inspect. Super Ct. Crim. R. 16(a)(1)(C); *In re Q.D.G.*, 706 A.2d 36, 37 (D.C. 1998) (Super Ct. Juv. R. 16(a)(1)(C) required retention of vehicle for criminal defendant's trial preparation). Thus, a criminal defendant's rights are protected by the government's preservation of evidence, including the defendant's right to a fair trial under the Sixth Amendment to the U.S. Constitution. Plaintiffs' challenge thus should be evaluated by the test set out in *Medina*. Plaintiffs cannot meet this showing.

Rule 41(g) expressly provides plaintiffs with the opportunity to challenge the deprivation of their property in D.C. Superior Court. Because the ability to challenge the deprivation of one's property in state court does not offend any traditional principle of justice or fundamental fairness, Count 2 should be dismissed. *See Kincaid*, 854 F.3d at 726.

17

###### 2.    Even if the Court Applies *Mathews*, Plaintiffs Are Not Entitled to Any Additional Procedural Protections.

Count 2 should be dismissed even if the Court applies *Mathews*. Under that framework, courts weigh three factors to determine what process is sufficient to meet the requirements of the Fifth Amendment: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The District acknowledges that the first *Mathews* factor—the owner's interest in the property—tips in favor of plaintiffs given the role that cell phones play in society today. However, the remaining factors tip decidedly in favor of the District.

A key consideration under the second *Mathews* factor is "the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. As discussed above, given the availability of a hearing under Rule 41(g), plaintiffs would not benefit from additional, post-seizure procedures to challenge the retention of their property. In addition, as with all types of property seized for evidence, the likelihood of erroneous deprivation is limited by independent actors making probable cause determinations—"an erroneous deprivation will be detected either by the Court or a jury at or immediately after the criminal trial in an adversary proceeding." *Sunrise Acad. v. United States*, 791 F. Supp. 2d 200, 206 (D.D.C. 2011) (determining due process did not require a pretrial hearing to determine whether a third party's vehicles and currency had been validly seized). Thus, given the low risk of erroneous deprivation of plaintiffs' cell phones, and the minimal value of additional safeguards where plaintiffs could have challenged the seizure of

their property by filing a motion under Rule 41(g), the second *Mathews* factor weighs in favor of the District.

The third *Mathews* factor concerns the District's interest in not providing additional procedures. Given plaintiffs' failure to identify what procedural protections they are seeking beyond a hearing before a neutral decision-maker, it is impossible for the District to address the proposed additional burden but given the robust procedural protections already available to plaintiffs, any additional protections would impose an undue and unnecessary burden on the District. Therefore, the third factor weighs heavily in favor of the District.

Even if the Court applies *Mathews* instead of *Medina* (it should apply *Medina*), Count 2 still must be dismissed because the retention of property seized from arrested individuals implicates important government interests and plaintiffs fail to identify what procedures they are seeking beyond what is available under Rule 41(g).

### III.   Plaintiffs' Claim for Conversion Should be Dismissed Because Plaintiffs Fail To Allege that the District Seized Their Property Unlawfully (Count 3).

In Count 3, plaintiffs bring a claim of conversion against the District. Plaintiffs allege that, by retaining their cell phones and property, the District unlawfully exercised dominion and control over the property in violation of plaintiffs' rights. Compl. ¶¶ 92–96.

"Conversion is a tort based on the theory that the defendant 'has in some way treated the goods as if they were his own, so that plaintiff can properly ask the court to decree a forced sale of the property.'" *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1064 (D.C. 2014) (quoting *Pearson v. Dodd*, 410 F.2d 701, 706 (D.C. Cir. 1969)). "To state a claim for conversion under District of Columbia law, a plaintiff must allege '(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto.'" *Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 196 (D.D.C.

2017) (quoting *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 258 (D.D.C. 2015)). Plaintiffs have failed to allege a claim of conversion against the District.

"A conversion may be said to relate to the moment of taking." *Dennis v. Edwards*, 831 A.2d 1006, 1013 (D.C. 2003). Plaintiffs' conversion claim therefore requires plaintiffs to allege that the initial taking of their property was unlawful. Because plaintiffs have not alleged that the initial exercise over their property was unlawful, Count 3 should be dismissed. *See Baltimore v. District of Columbia*, 10 A.3d 1141, 1156 (D.C. 2011) (finding no valid claim for conversion relating to abandoned property because the District took possession of it lawfully).

## CONCLUSION

For the foregoing reasons, the Court should grant the District's motion and dismiss plaintiffs' Complaint with prejudice.

Dated:  December 17, 2021.                Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Richard P. Sobiecki*
RICHARD P. SOBIECKI [500163]
HELEN M. RAVE[*]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001

---

[*]    Admitted to practice only in the State of New York. Practicing in the District of Columbia under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to LCvR83.2(f).

(202) 805-7512
richard.sobiecki@dc.gov
helen.rave@dc.gov

*Counsel for Defendant*