# EXHIBIT D



# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## POLICE COMPLAINTS BOARD
## OFFICE OF POLICE COMPLAINTS

**Office of Police Complaints**
**Michael G. Tobin, Executive Director**

**POLICE COMPLAINTS BOARD**
**Paul Ashton, Chair**
**Commander Morgan Kane**
**Bobbi Strang**
**Jeffrey Tignor**
**Kurt Vorndran**

### PCB POLICY REPORT #19-4:
### Handling Property

## Summary of the Issue

Metropolitan Police Department (MPD) officers come into contact with the personal property of community members on a daily basis and these community members must be able to trust that their property is secure in MPD custody.  As such, it is important that there are proper procedures and training in place, as well as oversight, to ensure that personal property is handled appropriately while executing searches, effecting arrests, or conducting traffic or pedestrian stops. MPD General Order 601.1: Recording, Handling, and Disposition of Property Coming into the Custody of the Department, outlines the procedures for officers dealing with property.  The majority of the general order is from April 30, 1992, although it appears that a few pages were inserted on July 9, 2013.   As new technologies have come into use for MPD, and have become widely available to departments generally, the PCB determined that a review of MPD's handling property procedures is warranted at this time.[1]

## Current MPD Policies

General Order 601.1 outlines in detail the proper procedures by which members of the department are to handle, record, secure, and dispose of property that finds its way into police custody during the course of police activity. The General Order requires that all property be recorded in several places to ensure that the chain of custody of the item is chronicled and monitored, including the appropriate element's Property Book, which is a comprehensive record of all items that have come into that element's custody.[2] The general order further requires that every item be given its own paper trail, in the form of a PD Form 81, to describe the item, the owner of the item, and the chain of custody that the item travels through during its time in police custody.[3] If the item was taken from the owner incident to an arrest, the prisoner must be provided with an itemized receipt indicating each of the items taken.[4] The general order also requires that any time the property changes hands within custody, or before the item can be

---

[1] The Police Complaints Board (PCB) is issuing this report pursuant to D.C. Code § 5-1104(d), which authorizes the Board to recommend to the District of Columbia Mayor, Council, MPD Police Chief,  and the Director of District of Columbia Housing Authority reforms that have the potential to improve the complaint process or reduce the incidence of police misconduct.
[2] General Order 601.1, Part B.
[3] General Order  601.1 Part C
[4] General Order 601.1 Part II (A)(2)(e).

released from police custody, the officer, clerk, or civilian that takes custody of the property must sign relevant forms to ensure that the chain of custody is fully recorded at all times.[5]

Moreover, the general order anticipates that a significant amount of the property that comes into police custody will require special handling, and specifies procedures for ensuring the safe and controlled management of dangerous, bulky, unique, and valuable items particularly. The general order anticipates the vast array of items that may come into police custody and provides members of the department with instructions for proper handling of these items. Moreover, the general order establishes ten classifications of property, and outlines a different method of handling the property for each classification.[6] For example, the procedures by which an officer should secure abandoned property differs substantially from the procedures for securing property that is part of the estate of a deceased person and unclaimed by family members.[7]

The flexible and extensive nature of general order 601.1, when it is followed properly, ensures that MPD members have comprehensive guidelines to appropriately manage property that comes into MPD custody. It is further supplemented by Special Order 00-17, which establishes extensive procedures for handling money seized by officers. This special order places restrictions on the ways that money is handled, recorded, and disposed of, placing additional restrictions on officers who are in charge of counting, documenting, and depositing the money.[8] The Special Order is intended to ensure that the money that comes into police custody is handled "in a manner that is lawful, timely, and maintains the integrity of the property."[9]

Further, the Body-Worn Camera (BWC) Program General Order, 302.13, includes additional guidance for members on activating their BWCs in situations involving property. Members are instructed to activate their BWC for any search of a person or property, and "during the initial inventorying of seized money or any high value property."[10] This provides increased accountability for the officer and an additional record of the property. This has already proven to be beneficial to the MPD and officers, as OPC has seen fewer complaints related to missing money since officers began recording the inventory of cash with their BWCs. However, OPC investigators have also noted incidents where officers fail to record the inventory of property as required, and the logging of property at the station is not currently required.

Together, these policies adequately set forth effective procedures for handling all varieties of property as it may come into the custody of MPD during the course of official police activities. However, it is essential to recognize that the practicalities and realistic requirements of police activities invites a human element into the process of handling, recording, and disposing of property that leaves room for error, corruption, and accident. The procedures established by MPD make best efforts to anticipate and prevent these eventualities. General Order 601.1 indicates that members "shall ensure all property, which comes into their possession is properly

---

[5] General Order  601.1 Part I (B)(3); Part I (C) (1); Part I(E)(6); Part I (I)(2)(a),(c); Part I(I)(7)-(11); Part I (J)(5), Part II (A)(2)(c); Part II (A)(4), (5)(c); Part III (A)(4)(d); Part III (D)(7)(c); Part III (F)(3); Part IV (A)(6); Part IV (B)(2); Part IV (C)(1).
[6] General Order  601.1  Part III.
[7] *Compare* General Order  601.1 Part III (B) *with* Part III (D).
[8] Special Order 00-17 (III) Procedural Guidelines.
[9] Special Order 00-17 (II) Policy.
[10] General Order 302.13 Part V.

safeguarded until relieved of that responsibility."[11] However, the general order also recognizes that in reality property comes into possession of MPD, most often, through the actions of one member of the department. The only practical method of ensuring that the property is processed properly is to place responsibility for securing the property on the shoulders of "the member who first handles the property."[12] The policies place checks on the member that first handles the property, by requiring approval from supervisors, and subjecting the paper work to double checks by property clerks and station clerks, but virtually all responsibility rests with the first member to handle the property.[13] Though not ideal, this does seem to be a realistic method by which property can be secured, considering the realities and complexity of police work. As such, the procedures in place for handling property require a high level of police accountability, and extensive training for all members who handle property, as the procedures can only work when officers follow the policy and are held accountable when violations occur.

## Complaints Filed with OPC

From fiscal year 2015 through fiscal year 2018, OPC has received approximately 50 complaints per year categorized as mishandling property.[14] These complaints can generally be divided into two main categories: (1) mistakes made during the course of custody that cause the loss or damage of property; and (2) property improperly seized or stolen from community members.

The first category of complaints generally consists of allegations that the officers failed to follow the appropriate policy regarding the handling of property, and that the deviation from the policy caused the community member's property to be lost or damaged. For example, several complainants allege that they had property with them at the time of their arrest that was not properly logged in the arresting element's Property Book, or not properly recorded on their Prisoner's Property Receipt, pursuant to General Order 601.1 Part I, and as a result their property was not returned to them upon their release.

In the second category of cases, complainants allege that MPD officers have stolen property during the course of their work. Though often these complaints also include allegations of officers failing to follow the protocols established for handling property, the main concern in these complaints is the corruption that complainants allege against MPD officers. The addition of BWCs and the requirement that searches be recorded has aided officers greatly in these types of allegations, as what property exists, or how much money was recovered should be captured on the BWC.  However, just like other guidance, these rules are not always followed by officers and that can lead to questioning their conduct.

Two recent examples illustrate the nature of these complaints.[15]  In one case, the complainant was wearing a silver ring when she was arrested and officers removed it and placed it in a property bag.  The property bag was given to one of the officers for processing.  Upon her release, the complainant went to claim her property, but the ring was not included.  During the

---

[11] General Order  601.1 Part I(A)(5).
[12] General Order  601.1 PartI(A)(3).
[13] *See e.g.,* General Order  601.1  Part II (A)(1); Part II (A)(2)(c); Part IV (A)(9-10); Part IV (C)(1).
[14] Office of Police Complaints, Annual Report 2018, Appendix A.  Available at:
https://policecomplaints.dc.gov/node/1366436.
[15] These cases are currently pending.

3

course of OPC's investigation into the complaint, the officer learned that the ring was missing and searched his locker for it, and located the property bag with the ring.  The officer explained that he may have mistakenly thought the property bag was empty and saved it for future purposes or he may have been in a rush to finish his shift.  While the complainant was then able to claim her ring, it had been missing for seven months at that point.

In another incident, when the complainant was arrested he was wearing a gold chain necklace.  BWC footage showed the necklace being removed from the complainant and handed by one officer to another officer who was collecting all of the complainant's property.  The complainant's property was transported to the police station and logged, but the gold necklace was not inventoried on the property receipt.  Since the time of the arrest MPD has not been able to locate the complainant's gold necklace.

These cases highlight the deficiencies of using a paper property log book at the station, since information is not documented immediately.  In addition, while BWC did capture the initial seizure of the property, the logging of the property at the station was not recorded.  In both cases, additional BWC footage of the property at the station could have provided valuable insight into the location of the property in question.

## Legal and Policy Concerns

The policies in place for the proper handling of property exist, at least in part, to shield MPD and individual officers from civil and criminal liability that follows the improper handling of property. But the policies have a broader purpose as well, which is to ensure MPD maintains an image and reputation of integrity, and effectiveness that garners a strong relationship between the community and the force. It is essential to consider how both of these purposes can be undermined when members mishandle property.

The complaints of damaged or lost property that OPC has received that alleged officers deviated from proper procedures when handling property, seemingly by mistake, implicate several forms of legal liability for MPD and individual officers. When officers fail to properly record the property that comes into police custody, resulting in the loss of that property the officer or the department can be held liable for conversion.[16] The conversion claim arises when the officers have unlawfully exercised dominion or control over the property in a way that denies the owner of the property their right to the property.[17] Indeed, conversion most often occurs by the unauthorized transfer of the property to one who is not entitled to them.[18] Therefore, when officers deposit property improperly with the property clerk in a manner that denies the owner access to the property, as alleged in several OPC complaints, officers open themselves and MPD to lawsuits based on conversion. Moreover, when officers retain property that is not being used for evidentiary purposes and fail to return it to its proper owner the officer or the department may be held liable as a bailor of that property.[19] This can result in claims to the Office of Risk Management, and a monetary loss for the District. The complaints received by OPC that allege

---

[16] *Smith v. Whitehead*, 436 A.2d 339 (D.C. Cir. 1981).

[17] *Id.* at 344 (citing *Blanken v. Harris, Upham & Co.,* 359 A.2d 281 (D.C. 1976)).

[18] *DeKine v. District of Columbia*, 422 A.2d 981 (D.C. Cir. 1980).

[19] *See e.g., Yeager v. Hurt,* 433 So.2d 1176 (Ala. 1983); *Jordon v. City of Baton Rouge*, 529 So. 2d 412 (La. Ct. App. 1988; *State v. Lloyd*, 552 A.2d 498 (Del. Super. Ct. 1988); *Escamilla v. Dep't of Corrects. & Rehab*., 141 Cal. App. 4th 498 (2006).

officers improperly refuse to return property because there is no record of the property, or the property cannot be found may implicate MPD for liability under a theory of negligence by a bailor.

The second category of cases, which present allegations of theft, implicates a separate set of legal and policy concerns. First and foremost, officers may face criminal charges for theft in the District when they exercise improper control over property with the intent of depriving the rightful owner of the property.[20] In the District, officers could face up to a ten year prison sentence if convicted of theft.[21] In addition to criminal charges, potential corruption within the police department has a serious negative effect on the community perception of police integrity and effectiveness. MPD cannot function without cooperation from the community, which can only come when the community has confidence in officers and trusts officers to act with integrity, and in accordance with the law.

## Best Practices

The MPD policies currently in place for the handling of property generally conform to best practices standards. They indicate in detail the proper methods for handling, securing, recording, and disposing of property, while providing special instructions for a wide variety of property that MPD members may encounter, and also clearly dividing duties among MPD members so each person who handles the property can be certain that they are satisfying what is required of them. However, having adequate policies in place is not sufficient if the policies are not being adhered to. The Standards Manual of the Law Enforcement Accreditation Program indicates clearly that in addition to developing policies that determine proper handling of property, "[t]he agency should establish specific controls and ensure strict adherence to all of its policies and procedures governing in-custody and evidentiary property."[22]

This is especially necessary when handling allegations of theft and corruption. While mistakes in the process can be addressed by improving training and educating officers, it takes significant oversight to detect, control, and prevent corruption. The Los Angeles Police Department has implemented a tracking system that records all allegations leveled against every officer, and periodically conducts audits of the system to track patterns of alleged misconduct.[23] The audit is an essential step because it enables leadership of the department to establish with ease where the problems may be arising, "and thus be in a position to detect emerging patterns of problems or successes before an alarm sounds or calls for change come from outside agencies."[24] Even allegations that are ultimately unfounded can provide useful information on deficiencies in the property process, and what steps in the system are causing issues for community members. Taking this department wide approach to the audit also allows for greater analysis, which can highlight issues that do not stand out at the district level.  These findings lead to changes in policy to protect the community member, the department, and the officers.

---

[20] D.C. Code § 22-3211 Theft.

[21] D.C. Code § 22-3212 Penalties for Theft.

[22] The Standards Manual of the Law Enforcement Agency Accreditation Program, Commission on Accreditation for Law Enforcement Agencies, Inc., July 2006 at 84-1.

[23] Bernard C. Parks, *Board of Inquiry into Rampart Area Corruption Incident Public Report,* at 347 Los Angeles Police Department, March 1 2000 *available at* http://assets.lapdonline.org/assets/pdf/boi_pub.pdf .

[24] Christopher Stone et al., *Policing Los Angeles Under a Consent Decree: The Dynamics of Change at the LAPD*, Program in Criminal Justice and Policy Management at the Harvard Kennedy School, May 2009 at 39,64.

Numerous police departments have adopted electronic systems for tracking property, unlike MPD which still uses a paper log book at each district station to track property.  While the paper system requires officers to log the property at the station, through a mobile application, an electronic system can allow for logging to start on scene and reduce the instances of errors.  There are two main electronic systems: standalone and integrated. The standalone systems allow for "fully customizable home screen, real-time tracking of all items, ability to set retention status on all items for improved review of evidence, generating reports and forms that were created manually, and easy queries."[25]  While an integrated system "performs numerous tasks: unique descriptions/categorizations of evidence and why it is in an agency's possession; digital photos of evidence; maintenance of item status and physical tracking to ensure proper chain of custody; barcoding/generating of labels… [and the] ability to cross-reference evidence with cases."[26]  Using electronic property management enables department personnel to know where property is and why it is being held, from any location within the department, giving greater access to information and increased accountability and control, as well as great responsiveness to community members.  In addition, departments have seen the benefits of using technology in greater efficiency and cost savings.  The Chico, CA Police Department's "property room saves more than 30 hours a week with its software, which means personnel now have more time to focus on purging evidence."[27]  The Hamilton, IL Police Department reports the "integrated solution is so cost effective that [the department] no longer has to pay overtime for managing evidence in [the] property room."[28]  The Tucson, AZ Police Department says the "merged standalone/RMS[29] system requires just 12 technicians instead of 18."[30]  Other police departments who've switched to electronic evidence systems include: Charleston, SC; Chicago, IL; Greenville, NC; Milwaukee, WI; Madison, WI; Montgomery County, MD; Newport News, VA; and Rochester, NY.[31]  These departments have elected to convert to an electronic system that leads to more accountability when the department takes custody of personal property, as well as time and cost savings for the department.

## Recommendations

Considering that the current policies and procedures in place for the handling of property that comes into MPD custody are generally adequate and in conformity to best practices, OPC recommends that MPD direct its efforts at proper implementation of the current policies and oversight of officers responsible for the proper handling of property. To meet these goals and to help improve and facilitate better relations and increase trust between MPD officers and community members, the PCB recommends that:

---

[25] Bob Galvin, *Electronic Evidence Management*, Police: The Law Enforcement Magazine, February 2013. Available at: https://www.policemag.com/340909/electronic-evidence-management.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] Records Management System
[30] Galvin, *Supra* note 25.
[31] According to each department's published guidance on property management.

1. **MPD should adopt new technology and establish an electronic system for logging and tracking property, and update General Order 601.1 to reflect the new system.**

    The outdated use of a paper property log book is ripe for errors and carelessness, and can be cumbersome to use.  MPD has already seen the benefits of using technology to increase accountability for officers handling property, by requiring officers to use their BWC to record their interactions with property. By adopting technology to streamline the entire property process, MPD can prevent errors and save time and money.  An integrated department wide electronic system allows anyone in the department to view property contained in an electronic record within the software, but the person viewing it cannot change or delete the item, leading to increased access to information and accountability.

2. **The requirements for recording interactions with property in General Order 302.13 should also be expanded to include all interactions with property.**

    MPD can protect the integrity of the property process and procedure by expanding the requirements for recording interactions with property in General Order 302.13.  This should be updated to require that any officer interacting with property record that interaction.  This will encompass what is currently required- the initial inventory- and expand it to include the transportation and logging of property.

3. **MPD should retrain officers on General Order 601.1 and other related guidance to ensure that officers understand the procedures by which property is to be secured, recorded, and disposed.**

    By the nature of General Order 601.1, Special Order 00-17, and the relevant section of General Order 302.13, MPD must rely on the integrity of the individual members of the department to implement the procedures properly. As such, it is essential that each member of the department be extremely well versed in the proper methods of handling, securing, recording and disposing of property. To address the inevitable human element that impacts the proper implementation of these policies, all MPD members should be retrained to ensure they understand the proper procedures already in place.

4. **MPD should conduct an audit to examine mishandling property allegations, and attempt to identify patterns surrounding the misconduct to better cultivate a culture of integrity and transparency.**

    Allegations of theft and corruption within MPD pose a serious threat to police credibility, and community confidences in the police force. OPC recommends that MPD conduct a thorough audit of the complaints and allegations and determine where there may be patterns within MPD practice. A properly conducted audit will enable MPD to identify where the problems occur, how the problems can be addressed, and establish best methods for preventing potential corruption. The Los Angeles Police Department provides a model for this type of audit.