**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALEXANDER CAMERON, et al.,<br>on behalf of themselves and all others similarly<br>situated,<br><br>Plaintiffs,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | 1:21-cv-02908 (APM) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ..............................................................................................1

SUMMARY OF ARGUMENT ...........................................................................2

FACTS ...............................................................................................................3

LEGAL STANDARD .........................................................................................6

ARGUMENT ......................................................................................................7

I.     Plaintiffs Plausibly Alleged a Fourth Amendment Claim Against the District ......7

    A.  The Fourth Amendment Requires That Seizures of Property Be Reasonable Not Only at Their Inception But Also in Their Duration...................................7

       1.  Unreasonably prolonged seizures violate the Fourth Amendment ........7

       2.  The District's contrary arguments rest on outlier cases and untenable distinctions that cannot be squared with Supreme Court or this Court's precedent ...........................................................................................11

    B.  The District Bears Responsibility for Its Prolonged Retention of Plaintiffs' Phones ...........................................................................................................17

II.    Plaintiffs Have Stated a Procedural Due Process Claim Under the Fifth Amendment.............................................................................................................23

    A.  Superior Court Rule of Criminal Procedure 41(g) Does Not Provide a Meaningful Way For Individuals to Contest Prolonged Seizures of Their Cell Phones When No Charges Were Filed Against Them and When There Is No Criminal Case in Which The Phones Could Serve as Evidence .....................24

    B.  The *Mathews v. Eldridge* Balancing Test Governs Plaintiffs' Due Process Claim and Under It, D.C. Failed To Provide Plaintiffs With Constitutionally Adequate Process ...............................................................................................29

III.    Plaintiffs Have Plausibly Alleged a Conversion Claim .........................................33

CONCLUSION .................................................................................................34

# TABLE OF AUTHORITIES

*Authorities on which we chiefly rely are marked with asterisks.*

### Cases

*Alexander v. Government of the District of Columbia*, 2020 WL 3573462 (D.D.C. July 1, 2020) ............................................................................................................ 22

*Alleyne v. United States*, 455 A.2d 887 (D.C. 1983) .................................................. 25

*Alvarez v. Smith*, 558 U.S. 87 (2009) ......................................................................... 32

*Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672 (D.C. Cir. 2009) ........................... 23

*\*Avila v. Dailey*, 246 F. Supp. 3d 347 (D.D.C. 2017) ......................................... 10, 13, 24, 25, 26

*Baird v. Holton*, 806 F. Supp. 2d 53 (D.D.C. 2011) ................................................... 24

*Baker v. District of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003) ............................. 7, 17

*Baltimore v. District of Columbia*, 10 A.3d 1141 (D.C. 2011) ................................... 33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 7

*Bennett v. Duchess Cty.*, 2019 WL 2918051 (S.D.N.Y Jul. 8, 2019) .......................... 15

*Bennett v. Dutchess Cty.*, 832 F. App'x 58 (2d Cir. 2020) ......................................... 11

*Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017) .............................................. 9, 13, 14

*Brown v. District of Columbia*, 115 F. Supp. 3d 56 (D.D.C. 2015) ...................... 17, 32

*California v. Hodari D.*, 499 U.S. 621 (1991) .............................................................. 9

*Carter v. District of Columbia*, 795 F.2d 116 (D.C. Cir. 1986) ................................. 22

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ............................................ 17, 28

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ..................................... 33

*Coleman v. Watt*, 40 F.3d 255 (8th Cir. 1994) ........................................................... 28

*Coley v. Bowser*, 2021 WL 1578295 (D.D.C. Apr. 22, 2021) .................................... 26

*Corrigan v. District of Columbia*, 841 F.3d 1022 (D.C. Cir. 2016) ........................... 13

*Cousart v. Metro Transit Police Chief*, 101 F. Supp. 3d 27 (D.D.C. 2015) ............... 25

*Denault v. Ahern*, 857 F.3d 76 (1st Cir. 2017) ..................................................... 12, 15

*District of Columbia v. Dunmore*, 749 A.2d 740 (D.C. 2000) ................................................. 24, 25

*Egudu v. District of Columbia*, 72 F. Supp. 3d 34 (D.D.C. 2014) ........................................... 19, 20

*Evangelou v. District of Columbia*, 901 F. Supp. 2d 159 (D.D.C. 2012) ...................................... 7

*Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir. 1999) ............................................................ 12, 15

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ................................................................................... 28

*Gates v. City of Chicago*, 623 F.3d 389 (7th Cir. 2010) ............................................................ 28

*Gerstein v. Pugh*, 420 U.S. 103 (1975) .................................................................................... 9

*Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) ...................................................... 22

*Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006) ............................................................ 19

*Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011) ................................................................ 23

*Holt v. Walsh Grp.*, 316 F. Supp. 3d 274 (D.D.C. 2018) ............................................................ 7

*Hudson v. Palmer*, 468 U.S. 517 (1984) ................................................................................ 28

*Hunter v. District of Columbia*, 824 F. Supp. 2d 125 (D.D.C. 2011) ........................................ 20

*Hurd v. District of Columbia*, 864 F.3d 671 (D.C. Cir. 2017) ................................................. 6, 7

*Illinois v. Caballes*, 543 U.S. 405 (2005) ................................................................................. 9

*Illinois v. Lafayette*, 462 U.S. 640 (1983) ............................................................................... 30

*In re Grand Jury, Proc.*, 115 F.3d 1240 (5th Cir. 1997) ........................................................... 27

*In re Search of S & S Custom Cycle Shop*, 372 F. Supp. 2d 1048 (S.D. Ohio 2003) .................. 27

*In re Singh*, 892 F. Supp. 1 (D.D.C. 1995) ....................................................................... 26, 27

*In re Smith*, 888 F.2d 167 (D.C. Cir. 1989) ...................................................................... 28, 31

*Jenkins v. District of Columbia*, 2017 WL 6211103 (D.D.C. Mar. 28, 2017) ........................ 24, 25

*Jones v. District of Columbia*, 2019 WL 5690341 (D.D.C. June 13, 2019) ............................... 10

*Kaley v. United States*, 571 U.S. 320 (2014) ........................................................................... 29

*Kelleher v. Dream Catcher, L.L.C.*, 263 F. Supp. 3d 322 (D.D.C. 2017) .................................... 22

*King v. Holder*, 950 F. Supp. 2d 164 (D.D.C. 2013) ................................................................ 22

*Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) ............................................................ 11, 32

*Krimstock v. Kelly*, 464 F.3d 246 (2d Cir. 2006) .......................................................... 11, 14

*LaChance v. Erickson*, 522 U.S. 262 (1998) ....................................................................... 28

*Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003) .......................................... 12, 13, 15

*Leyland v. Edwards*, 797 F. Supp. 2d 7 (D.D.C. 2011) .................................................... 24

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ..................................................... 27

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) .................................................................. 9

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ......................................................... 28, 29, 31

*Medina v. California*, 505 U.S. 437 (1992) ........................................................................ 29

*Mom's Inc. v. Willman*, 109 F. App'x 629 (4th Cir. 2004) ........................................... 9, 14

*Moya v. United States*, 761 F.2d 322 (7th Cir. 1984) ................................................... 9, 13

*Nelson v. Colorado*, 137 S. Ct. 1249 (2017) ..................................................................... 29

*O'Callaghan v. District of Columbia*, 741 F. Supp. 273 (D.D.C. 1990) ..................... 33, 34

*Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014) .............. 19, 22

*Panzella v. Sposato*, 863 F.3d 210 (2d Cir. 2017) ........................................................... 27

*Parratt v. Taylor*, 451 U.S. 527 (1981) .............................................................................. 28

*Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981) ............................................... 18, 21

*Ramsden v. United States*, 2 F.3d 322 (9th Cir. 1993) ................................................. 26, 27

*Riley v. California*, 573 U.S. 373 (2014) ............................................................................ 30

*Robinson v. District of Columbia*, 130 F. Supp. 3d 180 (D.D.C. 2015) ...................... 18, 22

*\*Rodriguez v. United States*, 575 U.S. 348 (2015) ........................................................ 8, 14

*Sandvig v. Sessions*, 315 F. Supp. 3d 1 (D.D.C. 2018) ....................................................... 6

*Savoy Const. Co. v. Atchison & Keller, Inc.*, 388 A.2d 1221 (D.C. 1978) ........................ 33

*\*Segura v. United States*, 468 U.S. 796 (1984) ............................................................. 8, 12

*Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177 (2d Cir. 2004) ...... 11, 15

*Simms v. District of Columbia*, 872 F. Supp. 2d 90 (D.D.C. 2012)...............................................32

*Singh v. District of Columbia*, 881 F. Supp. 2d 76 (D.D.C. 2012) .................................................18

*Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008) ................................................................32

*\*Smith v. District of Columbia*, 387 F. Supp. 3d 8 (D.D.C. 2019) ................ 10, 13, 14, 20, 30, 31

*Soldal v. Cook Cty.*, 506 U.S. 56 (1992).........................................................................................16

*Tate v. District of Columbia*, 627 F.3d 904 (D.C. Cir. 2010) ..........................................................9

*United States v. Bumphus*, 227 A.3d 559 (D.C. 2020) ...................................................................10

*United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012).................................................15, 16, 21

*United States v. Christie*, 717 F.3d 1156 (10th Cir. 2013) ......................................................10, 14

*United States v. Howard*, 991 F.2d 195 (5th Cir. 1993) ...................................................................9

*\*United States v. Jacobsen*, 466 U.S. 109 (1984)...................................................8, 9, 11, 12, 13

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) .........................................17

*United States v. Jones*, 565 U.S. 400 (2012) ................................................................................16

*United States v. Martin*, 157 F.3d 46 (2d Cir. 1998) ................................................................9, 11

*United States v. Mays*, 993 F.3d 607 (8th Cir. 2021).......................................................................9

*United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009)............................................................10

*United States v. Ortega*, 450 F. Supp. 211 (S.D.N.Y. 1978) .........................................................25

*\*United States v. Place*, 462 U.S. 696 (1983) .........................................................................8, 11

*United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) ....................................................................21

*United States v. Respress*, 9 F.3d 483 (6th Cir. 1993) ...............................................................9, 13

*United States v. Smith*, 967 F.3d 198 (2d Cir. 2020) ................................................................11, 21

*United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011) .....................................................................9

*United States v. Veillette*, 778 F.2d 899 (1st Cir. 1985) .......................................................9, 12, 21

*United States v. Wilkins*, 538 F. Supp. 3d 49 (D.D.C. 2021).........................................................11

*Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011)........................................................................27, 28

*Wilson v. United States*, 424 A.2d 130, 132 (D.C. 1980) ............................................................ 25

*Zinermon v. Burch*, 494 U.S. 113 (1990) ............................................................................ 28

### Statutes, Regulations, Rules and Legislative Materials

42 U.S.C. § 1983 ............................................................................................ 13, 17

D.C. Ct. App. R. 49(c)(9)(B) ...................................................................... 35

D.C. Superior Court Rule of Criminal Procedure 41(g) ............................... 4, 5

Fed. R. Civ. P. 8(a) ...................................................................................... 20

Fed. R. Civ. P. 8(a)(2) ................................................................................. 6

Fed. R. Crim. P. 41(e) ..................................................................... 25, 26, 31

Fed. R. Crim. P. 41(g) ................................................. 25, 26, 27, 28, 30, 31, 33

MPD Special Order 15-08, *Cell Phone Recovery Process* § III.C.4.c (Apr. 14, 2015)... 3, 4, 5, 10, 21, 30, 32

Superior Court Rule of Criminal Procedure 41(g) ...................................... 23, 24

### Other Authorities

Gov't of Dist. of Columbia, Off. Of Police Complaints, *PCB Policy Report # 19-4: Handling Property* (Sept. 30, 2019) ................................................ 6, 18, 19

Restatement (Second) of Torts § 240 .......................................................... 34

## INTRODUCTION

On August 13, 2020, demonstrators marched through the District's Adams Morgan neighborhood to protest racism and brutality in policing. Forty of the individuals present at the event were surrounded by D.C. Metropolitan Police Department (MPD) officers, arrested, and, pursuant to the arrest, had their cell phones seized (along with other property). None of these individuals was charged with a crime. MPD had no basis for considering their phones to be stolen or contraband. And to the extent officers thought the phones contained evidence of a crime, MPD had the administrative and technological capacity to obtain and execute search warrants within days. Yet MPD retained 37 individuals' phones for months, and 34 phones to this day, nearly a year and a half after the initial seizure. Named Plaintiffs Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, and Jake Oster bring this case on behalf of themselves and two classes (one seeking damages, the other injunctive relief) which are composed of the other individuals whose phones were seized that night and protractedly retained (collectively, "Plaintiffs").

In seeking dismissal, the District relies on a legal shell game. It contends that the Fourth Amendment provides no relief because the proper remedy for a prolonged seizure of property lies in the Fifth Amendment. But the Fifth Amendment, the District continues, offers no refuge because Plaintiffs could seek relief under D.C. Superior Court Criminal Rule 41(g)—a remedy that, contrary to the District's arguments, is not available in the circumstances here. The District further asserts that the common law provides no relief either. The upshot of its arguments is that the government can take valuable property from people it arrests, release the people without charges, and retain their possessions for as long as it likes. That cannot be the law—and it is not.

## SUMMARY OF ARGUMENT

The Supreme Court has held that seizures lawful at their inception can violate the Fourth Amendment due to their duration. Although the D.C. Circuit has not addressed this issue, this Court and every other circuit has recognized as much. The District attempts to refute this principle by relying on outlier decisions from other circuits; however, those decisions, which fail to follow Supreme Court precedent and conflict with other decisions in their own circuits, are not persuasive. The District is equally wrong to assert that it cannot be held liable for the prolonged seizures in this case. A municipality can face liability if it acts pursuant to a custom, and here Plaintiffs have plausibly alleged hundreds of instances where officers retained arrestees' cell phones for an unreasonably long time—on top of the 37 unreasonably long retentions challenged here.

As for the Fifth Amendment, the District errs in asserting that Rule 41(g) provides Plaintiffs with all the process they were due. Rule 41(g) exists to promote judicial efficiency by allowing claimants to seek their property in a related criminal case. When, as here, charges have never been filed against the property's owners, and the property could not serve as evidence in a pending criminal case, the Superior Court has no jurisdiction to hear motions under the rule. The cases the District cites do not hold otherwise.

Finally, regarding the common law, the District's only argument—that a conversion claim cannot lie when property was lawfully obtained but is unreasonably retained—is flatly contrary to the decisions of the D.C. Court of Appeals and this Court.

That unreasonably prolonged seizures of property violate multiple constitutional amendments and the common law is unsurprising given the country's historic commitment to protecting property rights from unreasonable government interference. In this case, Plaintiffs have plausibly alleged sufficient facts to proceed on each of their claims.

## FACTS

On August 13, 2020, Plaintiffs gathered with others for a demonstration against police racism and injustice. ECF 1 (Compl.) ¶ 19 (hereinafter "Compl."). They marched through the District's Adams Morgan neighborhood until a group of MPD officers charged them, surrounded them, and eventually arrested and transported them to various MPD precincts and eventually the Central Cell Block, where they were held for up to 36 hours. *Id.* ¶¶ 20, 21. They were released without charges when the United States Attorney's Office for the District of Columbia (USAO) declined to initiate charges for any crimes. *Id.* ¶ 22.

Before transporting the arrestees to the MPD precincts, MPD confiscated each individual's cell phone and other property. *Id.* ¶ 21. When MPD released the individuals, it returned three individuals' cell phones but kept the remainder. *Id.* ¶ 23. Four days later, attorney Thomas Healy emailed the USAO requesting the return of the remaining 37 phones. *Id.* ¶ 25. After several rounds of communication, Mr. Healy was referred to a detective who, on August 27, thirteen days after the arrest, emailed that MPD had decided to retain the phones and was still deciding whether to seek search warrants for them. *Id.* ¶¶ 26, 27.

MPD policy requires officers to work much faster than that, directing officers intending to apply for a warrant to search a cell phone to do so within 48 hours of the seizure. *Id.* ¶ 28 (citing MPD Special Order 15-08, *Cell Phone Recovery Process* § III.C.4.c (Apr. 14, 2015), https://go.mpdconline.com/GO/SO_15_08.pdf (hereinafter "MPD Special Order 15-08")). And once MPD obtains a warrant, it "has access to technology known as 'Cellebrite Kiosks,' which generally can extract data from a cell phone in about 30 minutes without damaging the phone or requiring the cell phone's continued retention for authentication purposes." *Id.* ¶ 29. Thus, if MPD determined that it lacked probable cause to search Plaintiffs' phones, it had an obligation to return

them upon release or soon thereafter. *Id.* ¶¶ 28–30. And if MPD concluded it did have probable cause, it had the capacity to obtain a warrant and search the phones expeditiously. *Id.* But, as the detective's email made clear, the officers did not do so. Indeed, over the following months, Plaintiffs "made numerous calls to MPD's Evidence Control Division and to MPD property clerks" at multiple precincts "seeking the release of their phones," *Id.* ¶ 31, but only one individual regained his cell phone—and only after filing a federal lawsuit, *Id.* ¶ 39.

In February 2021, Named Plaintiffs Tan, Cameron, and Robinson filed motions for the return of their phones in D.C. Superior Court under D.C. Superior Court Rule of Criminal Procedure 41(g), *id.* ¶ 32, filing the motions in the only two criminal cases at all connected to the August 13, 2020 demonstrations, *id.* ¶ 33. A week later, an official with the D.C. Superior Court's Criminal Division informed their counsel that the judge in those cases had determined that the motions didn't belong on those dockets and advised that the motions should be filed again under seal on the criminal docket and would be considered as standalone miscellaneous matters. *Id.* ¶¶ 34, 35.

On March 18, 2021, counsel resubmitted the motions in accordance with the official's instructions. *Id.* ¶ 36. But no hearing was ever held. Nonetheless, in response to inquiries from Plaintiffs' counsel, the government released Plaintiff Cameron's phone on May 26, 2021 (285 days after it was seized) and Plaintiff Tan's phone on June 21, 2021 (312 days after it was seized). *Id.* ¶¶ 36 –38. Plaintiff Robinson's phone remains in MPD custody. *Id.* ¶ 40.

Of the 40 phones MPD seized on August 13, 2020, it still possesses 34 of them—all but the three it returned at the outset, the one given to the individual who filed a separate federal suit, and the ones returned to Plaintiffs Cameron and Tan, 285 and 312 days respectively after their seizures. Since March 2021, Plaintiffs Angeles, Oster, and other class members "made several

attempts to retrieve their cell phones" but had no success. *Id.* ¶ 41. The prolonged deprivation has caused Named Plaintiffs as well as class members to replace their phones. *Id.* ¶ 43. Some incurred contract and data charges while the phones were in MPD's possession. *Id.* And some "lost access to various data, including photographs, passwords, message histories," and access to accounts they relied on to contact friends, family members, and business associates. *Id.* ¶¶ 43, 46, 47.

The District's prolonged retention of Plaintiffs' phones arose from its custom of "retaining cell phones seized from arrestees, where officers have no basis to believe the cell phones constitute physical evidence of a crime or contain contraband, for longer than is reasonably necessary for any legitimate law enforcement purpose." *Id.* ¶ 51. As documented in Plaintiffs' Complaint, in addition to the 37 examples of prolonged seizures in this case, there have been at least 208 other instances in which MPD has retained cell phones seized from arrestees for at least four months (and in many cases far longer). *Id.* ¶ 53. In each case, MPD retained the phone even though it had no basis for believing that the phone was stolen or contained contraband, and even though MPD requires officers who believe a phone may contain evidence to apply for a warrant *no later than* 48 hours after the recovery, MPD Special Order 15-08 § III.C.4.c, and has technology that allows officers to extract relevant data from cell phones within about 30 minutes, *see* Compl. ¶¶ 28, 29, 53.

For example, MPD seized an individual's phone in 2015, dismissed charges against the individual in March 2018, and despite the individual's request for the phone's return, kept the phone until October 2019, nineteen months after the case was dismissed and four years after the initial seizure. *Id.* ¶ 53(i). In February 2020, MPD seized a phone from a robbery suspect, and although the owner plead guilty within a month, and the phone lacked evidentiary value, MPD did not return it for an additional fifteen months. *Id.* ¶ 53(d). And in January 2017, MPD seized phones

from at least 200 people arrested during protests against the inauguration of Donald Trump and retained the phones for at least eight months "even though any material relevant to the [resulting] criminal charges . . . (most of which were ultimately dropped) could have been downloaded by the government expeditiously" as discussed above. *Id.* ¶ 53(a). Reflecting the persistence of this practice, MPD's Evidence Control Branch has a "large bin" holding phones that MPD seized but never returned. *Id.* ¶ 53(a)(i)-(ii).

The District's policymakers had ample basis to know of this custom. In addition to the custom's pervasiveness, *The Atlantic* ran an article in 2016 in which multiple legal practitioners complained that MPD routinely retains arrestees' cell phones for protracted periods in what one attorney described as "legal robbery like a shakedown." *Id.* ¶ 54. Additionally, in 2019, the Police Complaints Board issued a report "outlining MPD's failure to return property," and indicating that officers were not complying with MPD's written policies. *Id.* (citing Gov't of Dist. of Columbia, Off. Of Police Complaints, *PCB Policy Report # 19-4: Handling Property* (Sept. 30, 2019) (hereinafter "PCB Report")[1]). In the face of this widespread practice, the District "failed to take any meaningful action to prevent the unlawful retention of arrestees' cell phones." *Id.* ¶ 55.

## LEGAL STANDARD

A complaint need only provide "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, the Court must accept as true all facts plausibly pleaded in the complaint, drawing all reasonable inferences in plaintiffs' favor. *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017). "Plausibility does not mean certainty," only that the claim "rises 'above the speculative level.'" *Sandvig v. Sessions*, 315

---

[1] https://policecomplaints.dc.gov/sites/default/files/dc/sites/office%20of%20police%20complaints/publication/attachments/HandlingProperty.FINAL_.pdf

F. Supp. 3d 1, 11 (D.D.C. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To the extent inferences must be drawn to show that the defendant is liable, they must merely be reasonable, *Hurd*, 864 F.3d at 678, and need not be the only possible inferences. *Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 170 (D.D.C. 2012). The standard for plausibly pleading a claim is a "low bar." *Holt v. Walsh Grp.*, 316 F. Supp. 3d 274, 282 (D.D.C. 2018).

## I.   Plaintiffs Plausibly Alleged a Fourth Amendment Claim Against the District.

Stating a constitutional claim against the District requires showing, first, "a predicate constitutional violation," and second, "that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). With respect to the predicate Fourth Amendment claim, the District does not contend that it acted reasonably by retaining Plaintiffs' phones for months despite an MPD policy requiring officers to secure warrants for seized cell phones no later than 48 hours after recovery, and despite MPD's possession of technology that extracts relevant data from cell phones in about 30 minutes. Instead, the District argues only that the Fourth Amendment cannot be violated by seizures that are lawful at their inception, no matter how long their duration. As for the policy/custom requirement, the District contends that the hundreds of examples of prior instances of unreasonably prolonged seizures of cell phones documented in the Complaint do not establish a custom capable of giving rise to municipal liability. ECF 19-1 (Def.'s Mot. to Dismiss) at 8–13 (hereinafter "MTD"). The District is wrong on both points.

## A.  The Fourth Amendment Requires That Seizures of Property Be Reasonable Not Only at Their Inception But Also in Their Duration.

### 1. Unreasonably prolonged seizures violate the Fourth Amendment.

Almost forty years of Supreme Court jurisprudence holds that a lawfully initiated seizure can become unreasonable, and thereby violate the Fourth Amendment, due to its duration. In

*United States v. Place*, 462 U.S. 696 (1983), the Supreme Court held that officers who properly seized luggage based on reasonable suspicion that it contained contraband violated the Fourth Amendment by retaining it for too long. *Id.* at 709–10. As the Court later described its own holding, "In *Place,* the Court held that while the initial seizure of luggage for the purpose of subjecting it to a 'dog sniff' test was reasonable, the seizure became unreasonable because its length unduly intruded upon constitutionally protected interests." *United States v. Jacobsen*, 466 U.S. 109, 124 n.25 (1984). Likewise, in *Segura v. United States*, 468 U.S. 796 (1984), six justices agreed that "a seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration or for other reasons." *Id.* at 812 (opinion of Burger, C.J., joined by O'Connor, J.); *see also id.* at 823 (Stevens, J., dissenting, joined by Brennan, Marshall, and Blackmun, JJ.) ("Even a seizure reasonable at its inception can become unreasonable because of its duration.").

And in *Jacobsen*, the Court held that officers who lawfully seized a bag of white powder on probable cause needed further justification to destroy a portion of the powder as part of a field test to assess if it was an illegal drug. 466 U.S. 124–25. "[B]y destroying a quantity of the powder [the field test] converted what had been only a temporary deprivation of possessory interests into a permanent one"; therefore, the field test could survive constitutional scrutiny only if it was reasonable. *Id.* at 124–25. Thus, *Place, Segura, and Jacobsen* establish that the Fourth Amendment regulates not only an initial seizure of property but also its duration.

The Supreme Court has reaffirmed these principles in recent years. In *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015), the Court held that a lawfully initiated traffic stop that was extended seven or eight minutes beyond the time needed to complete its purpose violated the Fourth Amendment, because a seizure "become[s] unlawful if it is prolonged beyond the time

reasonably required to complete the [traffic-related] mission." And *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), held that the Fourth Amendment regulates seizures of persons past the initial arrest and during the entire period of "detention . . . pending trial." *Id.* at 919 n.8 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975)); *see also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *Jacobsen* for the proposition that a traffic stop that "is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution"). These rulings are incompatible with the District's assertion that the term "seizure" in the Fourth Amendment extends only to the initial act of taking custody.[2]

While the D.C. Circuit has not addressed this issue, every other geographic circuit, as well as the D.C. Court of Appeals, has recognized that seizures lawful at their inception can violate the Fourth Amendment if unreasonably prolonged.[3] Writing for the Tenth Circuit, then-Judge Gorsuch framed the issue this way:

---

[2] *Manuel* in particular refutes prior D.C. Circuit dicta stating that a seizure exclusively entails "a 'taking possession.'" *Tate v. District of Columbia*, 627 F.3d 904, 912 (D.C. Cir. 2010) (quoting *California v. Hodari D.*, 499 U.S. 621, 624 (1991)). The District wisely did not cite *Tate*, which held only that a sale of a vehicle is not a seizure, and did not address any of the cases discussed above or otherwise consider whether an unreasonably prolonged seizure offends the Fourth Amendment. *See Tate*, 627 F.3d at 912.

[3] *See United States v. Veillette*, 778 F.2d 899, 903 & n.3 (1st Cir. 1985) (evaluating whether lawfully initiated seizure violated the Fourth Amendment based on its duration); *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) ("[E]ven a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant."); *United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011) (assessing whether an initially lawful seizure violated the Fourth Amendment based on its duration); *Mom's Inc. v. Willman*, 109 F. App'x 629, 637 (4th Cir. 2004) ("Because theft by a police officer extends a seizure beyond its lawful duration, such theft violates the Fourth Amendment."); *United States v. Howard*, 991 F.2d 195, 202 (5th Cir. 1993) (analyzing whether a lawfully initiated seizure violated the Fourth Amendment based on its duration); *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993) ("[E]ven with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable."); *Moya v. United States*, 761 F.2d 322, 325 n.1 (7th Cir. 1984) (same); *United States v. Mays*, 993 F.3d 607, 616 (8th Cir. 2021) (same); *Brewster v. Beck*, 859 F.3d 1194, 1196, 1197 (9th Cir. 2017) (holding initially lawful seizure of vehicle violated the

> What, after all, is "reasonable" about police seizing an individual's property on the ground that it potentially contains relevant evidence and then simply neglecting for months or years to search that property to determine whether it really does hold relevant evidence needed for trial or is totally irrelevant to the investigation and should be returned to its rightful owner?

*United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013); *see also United States v. Mitchell*, 565 F.3d 1347, 1352 (11th Cir. 2009) (explaining the purpose of the rule in similar terms). The scenario described by Justice Gorsuch is precisely what is at issue in this case. While the District may have had a legitimate basis for its original seizure of the phones, its own policies demand that detectives who intend to search a cell phone apply for a search warrant within 48 hours of recovery. MPD Special Order 15-08 § III.C.4.c. Instead, the District retained Plaintiffs' phones for months and in most cases nearly a year and a half.

Following the Supreme Court, this Court has repeatedly recognized that a "seizure that is reasonable at the outset can become unreasonable because of duration," *Avila v. Dailey*, 246 F. Supp. 3d 347, 355 (D.D.C. 2017); *accord Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019) ("[T]he Fourth Amendment permits seizures only for as long as necessary. Once a justification loses force, the government must cease the seizure or come up with a new justification."); *Jones v. District of Columbia*, 2019 WL 5690341, at *2 (D.D.C. June 13, 2019) ("[A] seizure must not only be reasonable in the first instance but must also remain reasonable over time and in light of new facts and circumstances."). The Court has even specifically applied that rule to hold unconstitutional a lawfully initiated, but unreasonably prolonged, seizure of a cell

---

Fourth Amendment when it lasted 30 days); *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013) (Gorsuch, J.) (assessing whether search of computer was the fruit of an unlawfully prolonged seizure arising from an extended delay in securing a warrant); *United States v. Mitchell*, 565 F.3d 1347, 1350, 1353 (11th Cir. 2009) (holding 21-day delay between lawfully initiated seizure and acquisition of search warrant was unreasonable under the Fourth Amendment); *United States v. Bumphus*, 227 A.3d 559, 564 (D.C. 2020) ("[S]eizures that are reasonable at their inception may become unreasonable over time.").

phone. *United States v. Wilkins*, 538 F. Supp. 3d 49, 90-96 (D.D.C. 2021) (holding that a 15-month delay between the seizure of the defendant's phone and application for a search warrant required suppression of the evidence obtained from the phone).

### 2. The District's contrary arguments rest on outlier cases and untenable distinctions that cannot be squared with Supreme Court or this Court's precedent.

Despite binding Supreme Court precedent, the broad consensus among the federal circuits, and this Court's prior holdings, the District argues that the Fourth Amendment does not govern the prolonged retention of lawfully seized items. In making its argument, the District relies primarily on a handful of out-of-circuit cases that are not only incompatible with Supreme Court decisions, but also conflict with other opinions within their respective circuits.

The District relies on the Second Circuit's unpublished decision in *Bennett v. Dutchess Cty.*, 832 F. App'x 58, 60 (2d Cir. 2020), and its decision *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004), but both of those cases failed to cite *Segura*, *Jacobsen*, or *Place*—and conflict with other Second Circuit decisions that *did* engage with binding Supreme Court rulings and reached contrary conclusions. *See*, *e.g., United States v. Smith*, 967 F.3d 198, 202, 205 (2d Cir. 2020) (holding that lawful seizure became unreasonable under the Fourth Amendment due to its 31-day duration and citing *Place*, 462 U.S. at 701); *Krimstock v. Kelly*, 464 F.3d 246, 250, 253 (2d Cir. 2006) (holding that Fourth Amendment requires judicial review of the government's decisions to retain lawfully seized vehicles); *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) ("[E]ven a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." (citing *Jacobsen*, 466 U.S. at 121)).[4]

---

[4] *Bennett* discussed a prior decision in the Second Circuit's "*Krimstock*" trilogy, *see* 832 F. App'x 60 (citing *Krimstock v. Kelly*, 306 F.3d 40, 50 (2d Cir. 2002)), but not the one on which Plaintiffs rely, which presumed the reasonableness of the seizure of the vehicles at issue and then assessed under the Fourth Amendment the legality of their prolonged retention, 464 F.3d at 250–51.

Likewise, *Denault v. Ahern*, 857 F.3d 76, 83–84 (1st Cir. 2017), on which the District also relies, did not cite *Place*, *Jacobsen*, or *Segura*. Nor did it cite a prior First Circuit decision where the court relied on *Segura* to analyze an initially lawful seizure for the reasonableness of its duration. *See United States v. Veillette*, 778 F.2d 899, 903 (1st Cir. 1985). Despite holding that the three-day seizure at issue in the case did not violate the Fourth Amendment, *Veillette* warned that it would "not generally condone such lengthy delays." *Id.* at 903 & n.3.

The only two cases the District cites that even engage with the applicable Supreme Court precedent read it too narrowly. Both the Sixth Circuit's decision in *Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir. 1999), and the Seventh Circuit's decision in *Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003) cite *Place* but construe it as addressing only when "a momentary investigative detention" based on reasonable suspicion "becomes a full-blown seizure" requiring probable cause; and both decisions wrongly conclude that *Place* "has no application after probable cause to seize has been established." *Lee*, 330 F.3d at 464; *accord Fox*, 176 F.3d at 351 n.6. The Supreme Court in *Jacobsen* and *Segura* made clear that *Place* stands for more: specifically, that even seizures initiated on probable cause become unlawful if unreasonably extended. *Jacobsen*, 466 U.S. at 122, 124–25 & n.25 (characterizing *Place* as holding that an initially lawful seizure "became unreasonable because [of] its length" and applying *Place* to assess police conduct that interfered with an individual's possessory interests in property that occurred after the police had seized the property on probable cause); *Segura*,  468 U.S. at 812 (opinion of Burger, C.J., joined by O'Connor, J.) ("a seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration or for other reasons" (citing *Place*); *see also id.* at 823 (Stevens, J., dissenting, joined by Brennan, Marshall, and Blackmun, JJ.) ("Even if exigent circumstances justified the entry into and impoundment of the premises pending a warrant . . . the

duration of the seizure would nevertheless have been unreasonable" (citing *Place*)). Thus, *Lee* and *Fox* depart not only from the Supreme Court's own reading of *Place* but also its subsequent statements of the law in *Jacobsen* and *Segura*.

Moreover, as with the other cases the District cites, *Fox* and *Lee* also conflict with other decisions in their respective circuits that are more faithful to Supreme Court precedent. *See, e.g.*, *Moya v. United States*, 761 F.2d 322, 325 n.1 (7th Cir. 1984) ("Even if the officers had probable cause to believe Moya's bag contained contraband, there would be a question whether the three hour detention of the bag before seeking a search warrant was reasonable."); *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993) ("[E]ven with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable.").

The government attempts to salvage its outlier decisions from the overwhelming contrary authority—which, as noted, includes decisions issued by the Supreme Court, this Court, and every court of appeals—in a footnote suggesting, first, that Fourth Amendment claims cognizable in the suppression context cannot give rise to civil liability (what the District calls a "freestanding claim") under 42 U.S.C. § 1983, and second that the Fourth Amendment is violated when officers prolong a seizure to obtain a warrant, but not when they prolong a seizure for other reasons. *See* MTD 9–10 n.5. Both contentions are wrong.

Refuting the civil/criminal distinction, the D.C. Circuit regularly relies on Fourth Amendment decisions in the criminal context to adjudicate civil claims, *see, e.g.*, *Corrigan v. District of Columbia*, 841 F.3d 1022, 1034 (D.C. Cir. 2016), and many courts, including this one, have held that prolonged retention of property gives rise to civil liability under the Fourth Amendment, *see, e.g.*, *Avila*, 246 F. Supp. 3d at 355; *Smith*, 387 F. Supp. 3d at 25; *Brewster v.*

*Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017); *Krimstock*, 464 F.3d at 253; *Mom's Inc. v. Willman*, 109 F. App'x 629, 637 (4th Cir. 2004).

The government also errs in attempting to distinguish cases about seizures that lead to delays in obtaining a search warrant from cases about other unreasonably long seizures. The Fourth Amendment is offended by an unreasonably prolonged seizure no matter its purpose. For example, in *Rodriguez*, the Supreme Court held that an initially lawful seizure (specifically a traffic stop) became unreasonable due to its length where the delay arose from an attempt to arrange a dog sniff of a vehicle, not an attempt to secure a warrant. 575 U.S. at 351, 355–57. This Court and others have likewise applied the Fourth Amendment to prolonged seizures that had nothing to do with a delay in seeking a search warrant. *See*, *e.g.*, *Smith*, 387 F. Supp. 3d at 25 (holding that plaintiff stated a Fourth Amendment claim where the District offered no justification at all for the prolonged retention of property); *Brewster*, 859 F.3d at 1197 (holding that a lawful seizure of a vehicle violated Fourth Amendment when the vehicle was retained pursuant to local rule requiring 30-day impoundment in certain circumstances); *see also Mom's Inc.*, 109 F. App'x at 637 (holding seizure violated the Fourth Amendment based on duration when police stole the seized items). As Justice Gorsuch explained while on the Tenth Circuit, the reason that the Fourth Amendment bars lengthy delays in securing warrants is to prevent the police from unreasonably prolonging the time people are separated from property the police seized from them. *See Christie*, 717 F.3d at 1162. The same concern for individual's possessory interests is implicated whether the government unreasonably retains property to secure a warrant, for some other purpose, or for no purpose at all. Thus, the District's proposed distinction fails.

Furthermore, even if the District were correct, and the Fourth Amendment only recognized claims for unreasonably protracted seizures when a dilatory warrant application caused

the delay, Plaintiffs' claim would remain cognizable. The sole justification MPD offered for its prolonged retention of Plaintiffs' phones was its need to determine whether to pursue a warrant to search them, *see* Compl. ¶ 27—precisely the type of delay that the District implies the Fourth Amendment precludes. *See* MTD 9–10 n.5.[5]

The District is wrong as well if its contention is that the prolonged retention of property violates the Fourth Amendment *only* if it leads to a subsequent search. The only case the District cites for that theory is the out-of-circuit decision in *United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012). In *Burgard*, a defendant sought to suppress the results of a search of his cell phone by arguing that the seizure of his phone, though initially lawful, was unreasonably prolonged when officers took six days to secure a warrant. *Id.* at 1031. Although the Seventh Circuit held the delay reasonable, it nevertheless recognized that a seizure, though lawful at the outset, could (in scenarios not presented in *Burgard*) violate the Fourth Amendment based on its duration, *id.* at 1032—a conclusion in conflict with *Lee*, which, as discussed above, rejected this possibility. The Seventh Circuit attempted to reconcile these cases by observing that *Burgard* involved a challenge to a search, while *Lee* did not, *id.*; however, this distinction does not withstand scrutiny. The *Burgard* defendant challenged the search *as the fruit of an unlawful seizure*. *See id.* at 1031. Thus,

---

[5] Indeed, the District's distinction effectively distinguishes all of the out-of-jurisdiction cases on which it relies, each of which not only rests on incorrect statements of law as discussed above, but also addresses seizures prolonged for reasons unrelated to a delayed warrant application. *See Bennett v. Duchess Cty.*, 2019 WL 2918051 (S.D.N.Y. Jul. 8, 2019) (explaining that Fourth Amendment challenge—ultimately addressed by the Second Circuit's *Bennett* decision on which the District relies—arose from police department's refusal to return firearms seized from wife of convicted felon until she proved that the husband could not access them); *Shaul*, 363 F.3d at 180–81, 187 (school failed to return property from teacher's office to the teacher after he was reassigned to new job); *Fox*, 176 F.3d at 345, 348 (police refused to return seized driver's license based on owner's unpaid traffic tickets); *Lee*, 330 F.3d at 459 (police refused to return seized car until owner paid "all applicable towing and storage fees or request[ed] a hearing"); *Denault*, 857 F.3d at 80 (seizure of car was prolonged by police demands that plaintiff talk with the police about a suspect as a condition of the car's return, and by plaintiff's inability to pay towing fees).

the court did not independently analyze the reasonableness of the search but recognized that the "case requires us to address one narrow question: did the six-day delay in securing a warrant render the *seizure* of Burgard's phone unreasonable for purposes of the Fourth Amendment?" *Id.* at 1031 (emphasis added). That delay infringed the same possessory interests that are at issue here: it prolonged the police department's retention of the defendant's property and therefore extended the time the defendant was separated from it. The Seventh Circuit acknowledged this point, explaining that the "critical question relates to any possessory interest in the seized object, not to privacy or liberty interests." *Id.* at 1033. Thus, *Burgard* offers no convincing basis for holding that the possessory interests at issue here are unprotected by the Fourth Amendment.

In sum, the District's attempts to explain away the mountain of precedent—including Supreme Court precedent—supporting Plaintiffs, all rest on untenable distinctions.

The District's two remaining arguments are equally uncompelling. It asserts that the prolonged retention of Plaintiffs' phones does not offend the Fourth Amendment because the retention did not "infringe on plaintiffs' privacy." MTD 9. But the Supreme Court has rejected "the view that the Fourth Amendment protects against unreasonable seizures of property only where privacy or liberty is also implicated." *Soldal v. Cook Cty.*, 506 U.S. 56, 65 (1992); *accord United States v. Jones*, 565 U.S. 400, 406 (2012). Supreme Court precedent also debunks the government's suggestion that the applicability of the Fifth Amendment precludes a claim under the Fourth Amendment. *See* MTD 9 & n.5. "Certain wrongs . . . can implicate more than one of the Constitution's commands. . . ." *Soldal*, 506 U.S. at 70. When "the seizure of property implicates two explicit textual sources of constitutional protection, the Fourth Amendment and the Fifth[,]

. . . [t]he proper question is not which Amendment controls but whether either Amendment is violated." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50 (1993).[6]

\*\*\*

The overwhelming weight of authority demonstrates that unlawfully prolonged retentions of property violate the Fourth Amendment. Plaintiffs rely on the Supreme Court's decisions in *Place*, *Segura*, *Jacobsen, Caballes*, *Rodriguez*, and *Manuel*, and the decisions from this Court, the D.C. Court of Appeals, and every federal appellate court to consider the issue. The District's citation to four out-of-circuit cases that are contradicted by other decisions within their circuits and by the Supreme Court does not alter the equation. Plaintiffs have adequately pled a constitutional violation under the Fourth Amendment.

**B.  The District Bears Responsibility for Its Prolonged Retention of Plaintiffs' Phones.**

The District is liable for the constitutional torts of its employees when a municipal "policy or custom" is the "moving force behind the constitutional violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (cleaned up). "There are a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under [42 U.S.C.] § 1983. . . ." *Id.* One way is through "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion) (cleaned up).

---

[6] In *Brown v. District of Columbia*, 115 F. Supp. 3d 56 (D.D.C. 2015), the Court held that the plaintiffs' claims were "properly raised under the Fifth Amendment, not the Fourth Amendment," but did so because the claims challenged "the adequacy of the District's forfeiture procedures—as opposed to the propriety of the underlying seizures."  *Id.* at 60, 63. The case did not involve the question presented here.

Here, Plaintiffs have plausibly alleged an MPD custom of retaining "cell phones seized from arrestees, where officers have no basis to believe the cell phones constitute physical evidence of a crime or contain contraband, for longer than is reasonably necessary for any legitimate law enforcement purpose." Compl. ¶ 51. Plaintiffs have pointed to at least 208 instances of unreasonably protracted seizures of cell phones (and in one case, an iPad) between 2018 and 2021.[7] *Id.* ¶ 53. This does not include the 37 unlawfully prolonged seizures giving rise to this lawsuit, or the countless others strongly suggested by the existence of a "large bin" in MPD's Evidence Control Branch used to store previously seized cell phones. *Id.* ¶ 53(a)(i), (ii).

The large number of past incidents of unreasonably retained phones, on its own, gave the District constructive knowledge of the custom. *See, e.g.*, *Robinson v. District of Columbia*, 130 F. Supp. 3d 180, 196–97 (D.D.C. 2015) (denying summary judgment on municipal liability claim based on 22 examples of a practice); *Powe v. City of Chicago*, 664 F.2d 639, 651 (7th Cir. 1981) (holding that plaintiff adequately alleged municipal custom arising from four arrests "based upon the same, allegedly invalid, warrant" which "was prepared, promulgated, and executed by various employees"); *see also Singh v. District of Columbia*, 881 F. Supp. 2d 76, 87 (D.D.C. 2012) (holding allegations of five similar incidents without accompanying policy changes stated claim for municipal liability).

Further evidence of the District's constructive knowledge is a 2016 article in *The Atlantic* in which multiple attorneys complained that MPD unlawfully retained property seized from arrestees, Compl. ¶ 54, and a 2019 Police Complaints Board (PCB) Report raising concerns about

---

[7] One seizure began in 2015, but charges against the owner were not dismissed until 2018, and the seizure lasted more than a year after that.

similar conduct, *id.* The District does not discuss the article from *The Atlantic*.[8] And, though the District emphasizes that the PCB Report contained statements of praise for certain formal MPD policies on property retention, those statements are immaterial because Plaintiffs allege that MPD has a "practice, as opposed to [a] formal policy, . . . [of] engag[ing] in the constitutional violation at issue." *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006). The PCB report is relevant to this point because it shows that officers did not consistently follow their written policies. PCB Report at 3.

Despite the pervasiveness of the practice, and the District's knowledge thereof, the officers who handled Plaintiffs' property rejected Plaintiffs' repeated demands for its return and held each Plaintiff's phone for months, and in most cases nearly a year and a half (and counting). *Id.* ¶¶ 23, 37–39. Thus, the District's custom was the moving force behind Plaintiffs' injuries.

The District's motion relies on a distortion of the standard for reviewing a custom claim on a motion to dismiss. The District contends that the examples underlying Plaintiffs' custom theory are insufficiently "detail[ed]," MTD 12, but to plausibly allege a municipal liability claim, "the recitation of facts need not be particularly detailed," *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 403 (4th Cir. 2014). The District also wrongly asserts that "the past events purportedly establishing a custom must be *identical* to the alleged wrongdoing underlying [P]laintiffs' claim." MTD 11 (emphasis added). This language is the District's own—not any court's—and the cases it cites do not support its purported rule. *Egudu v. District of Columbia*, 72 F. Supp. 3d 34 (D.D.C. 2014), held that a plaintiff could not establish a custom of arrests in violation of the First and Fourth Amendments based on a report documenting racial disparities in

---

[8] At this stage, Plaintiffs are entitled to the reasonable inference that an article in a major national magazine about an MPD practice would have been brought to the attention of the Chief of Police. Discovery may later confirm or rebut that inference.

arrests, as that was "an issue not raised in the complaint." *Id.* at 42. Likewise, *Hunter v. District of Columbia*, 824 F. Supp. 2d 125 (D.D.C. 2011), held that a plaintiff alleging that MPD had a custom "of making arrests for misdemeanors" without probable cause could not rely on a report that discussed "higher than average arrests" for only one type of misdemeanor offense because the report did not speak to the offense for which the plaintiff was arrested, or even misdemeanors generally. *Id.* at 133–34. These cases teach that litigants cannot establish a municipal custom based on conduct unrelated to their claims, but that is not what Plaintiffs seek to do here.

To the contrary, Plaintiffs have easily cleared Fed. R. Civ. P. 8(a)'s low bar by plausibly alleging many past incidents of conduct that are very similar to what they experienced. Plaintiffs' examples of the custom all involve cell phones seized by MPD and retained for four months or longer, *see* Compl. ¶ 53, just as in this case. Moreover, for each example, Plaintiffs pled sufficient facts to show why governmental interests did not support extending the seizures for as long as MPD extended them—and therefore why the duration was unreasonable. *See Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019) ("Once a justification loses force, the government must cease the seizure or come up with a new justification."). Specifically, each example contains allegations about the charges (if any) that resulted from the arrest, *see* Compl. ¶ 53, showing that, as here, none involved theft of a cell phone, *see id.*, which thereby makes plausible the inference that none of the cell phones was legitimately retained as stolen property. Plaintiffs also allege that each seizure extended far longer than needed to search the phones for evidence for the same reasons as exist here: MPD generally has the administrative capacity to apply for warrants to search a cell within 48 hours of a seizure, *see id.* ¶ 28, and has the technological capacity to "extract data from a cell phone in about 30 minutes without damaging the phone or requiring the cell phone's continued retention for authentication purposes," *id.* ¶ 29. Thus, Plaintiffs have shown that MPD

repeatedly seizes cell phones in similar contexts as the ones at issue here, and retains them for similar periods, despite similar factors making that retention unreasonable.

Although the District argues otherwise, the prolonged cell phone seizures arising from MPD's response to the 2017 inauguration protest are part and parcel of this custom. The material facts are the same: the seizures lasted for months, there was no basis for considering the phones stolen property, and MPD's technological and administrative capacities permitted the extraction of any relevant evidence in far less time than it took for MPD to return the phones. The fact that some inauguration protestors faced charges while none here did, *see* MTD 12, is immaterial given the key similarities between those seizures and these: the length of time and the absence of justification. Nor is the District correct that the 2017 inauguration protests was "too unique" to be relevant. MTD 12. MPD expects its officers to obtain warrants within 48 hours of a seizure, no exceptions. *See* MPD Special Order 15-08 § III.C.4.c. Even assuming that the sheer quantity of phones seized on a particular day could justify some delay in obtaining search warrants for all of them, Plaintiffs have plausibly alleged much more than brief delays that could be conceivably explained by unanticipated volume; instead, MPD retained the phones from the inauguration protests for "at least eight months (and in some cases much longer)." Compl. ¶ 53(a); *see United States v. Smith*, 967 F.3d 198, 203, 207 (2nd Cir. 2020) (observing that a month-long delay in procuring a warrant "well exceeds what is ordinarily reasonable"); *United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019) (31-day delay in securing warrant for seized cell phone unreasonable); *United States v. Burgard, supra* (6-day delay barely reasonable, given extenuating circumstances); *United States v. Veillette, supra* (3-day delay barely reasonable, given holiday weekend).

Indeed, the scale of the inauguration protests indicates that "various employees" were involved in the investigation, a fact that tends to support the existence of a custom. *Powe*, 664 F.2d

at 651 (single invalid arrest warrant established custom because many employees worked on it and it led to four arrests); *see also Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (holding municipality liable based on a single car chase involving six officers and the municipality's failure to discipline them).

As for the District's remaining arguments: D.C. contends that Plaintiffs improperly rely on hearsay, MTD at 12, but hearsay is fair game for a complaint. *See King v. Holder*, 950 F. Supp. 2d 164, 171 (D.D.C. 2013). And while D.C. asserts that Plaintiffs have not shown that a sufficient share of arrests led to prolonged property seizures, MTD 12, Plaintiffs have no such burden. *Carter v. District of Columbia*, 795 F.2d 116, 124 (D.C. Cir. 1986) (concluding that no "numerical standard controls the determination of whether incidents of wrongful behavior cumulatively show a pattern amounting to a custom or policy"); *see also Robinson*, 130 F. Supp. 3d at 196–97 (finding municipal liability based on 22 instances of misconduct without considering the denominator); *Alexander v. Government of the District of Columbia*, 2020 WL 3573462, at *1–*3, *7 (D.D.C. July 1, 2020) (applying similar analysis). In any case, demanding that Plaintiffs analyze the legality of every seizure arising from every MPD arrest in the past year, as the District suggests, MTD 12, is inappropriate at the pleading stage given that the circumstances surrounding those seizures are "facts . . . peculiarly within the possession and control of the defendant." *Kelleher v. Dream Catcher, L.L.C.*, 263 F. Supp. 3d 322, 325 (D.D.C. 2017) (internal citation omitted).

Plaintiffs have plausibly alleged that MPD has repeatedly retained phones for similar periods of time from people in similar circumstances, and that the same factors made all of these prolonged seizures unreasonable. These allegations far exceed what courts generally require at this stage of the proceedings. *See Owens*, 767 F.3d at 403 (holding that plaintiff stated municipal liability claim by alleging custom of *Brady* violations supported only by allegation of "the

existence of reported and unreported cases and numerous successful motions" regarding *Brady* abuses, which the plaintiff did not describe at all); *Haley v. City of Boston*, 657 F.3d 39, 53 (1st Cir. 2011) (denying motion to dismiss on similar grounds). Thus, Plaintiffs have plausibly alleged that a District custom was the moving force behind their injuries.

## II.    Plaintiffs Have Stated a Procedural Due Process Claim Under the Fifth Amendment.

"A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). Plaintiffs contend that the District fails to provide an adequate process for arrestees to regain seized cell phones when no charges were filed against them and when there is no pending case in which the phones could serve as evidence. Compl. ¶ 88. The District does not dispute that Plaintiffs had a protected property interest in their phones. *See* MTD 13–19. Nor does it contest that if Plaintiffs prevail on the merits, their theory provides a basis for municipal liability. *See id.*

Instead, the District contends that it satisfies its due process obligations through the procedures for recovering property under Superior Court Rule of Criminal Procedure 41(g), which provides that "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."

Here, however, where no charges against the propertys owner were filed, and no criminal case in which the property could serve as evidence is pending, the Superior Court has no jurisdiction to hear a Rule 41(g) motion. The D.C. Court of Appeals has never recognized jurisdiction in such a context, and this Court, construing D.C. law, has rejected it. Moreover, even if there were some novel basis under which the Superior Court could have jurisdiction to hear Plaintiffs' Rule 41(g) motions, the process would remain too burdensome and the remedy too

speculative to satisfy due process. Because Rule 41(g) does not provide individuals in Plaintiffs' situation with a meaningful process to regain their property, the District has violated the Fifth Amendment.

**A. Superior Court Rule of Criminal Procedure 41(g) Does Not Provide a Meaningful Way For Individuals to Contest Prolonged Seizures of Their Cell Phones When No Charges Were Filed Against Them and When There Is No Criminal Case in Which The Phones Could Serve as Evidence.**

Rule 41(g) was not designed for situations like the ones at issue here, where charges were never filed against the property owner and the seized items are not being held as evidence in a pending criminal case against someone else. The purpose of the Rule—which effectively permits a civil dispute to be resolved on the criminal docket—is to promote "economy of judicial effort" by allowing the same judge who presides over the criminal case to adjudicate the related issue of whether the government must release property seized in relation to that case. *See District of Columbia v. Dunmore*, 749 A.2d 740, 743 (D.C. 2000). Here, though, there never were any related criminal proceedings: charges were never filed against Plaintiffs and the Superior Court concluded that the criminal cases against other people who had been arrested the same evening were not proper forums for Plaintiffs' Rule 41(g) motions. *See* Compl. ¶¶ 22, 33, 34. Because no judge was presiding over a criminal case involving the relevant facts, there was no basis for filing a Rule 41(g) motion in some pending criminal case. For these reasons, this Court held in *Avila v. Dailey*, 246 F. Supp. 3d 347 (D.D.C. 2017) that when a property owner is "not a defendant in a criminal proceeding, nor was there any criminal proceeding at all," Rule 41(g) is not an adequate remedy. *Id.* at 363.

The cases on which the District relies do not hold otherwise. Most of the decisions it cites involve plaintiffs who pled guilty, *see Baird v. Holton*, 806 F. Supp. 2d 53, 55 (D.D.C. 2011), *Leyland v. Edwards*, 797 F. Supp. 2d 7, 9 (D.D.C. 2011), *Jenkins v. District of Columbia*, 2017

WL 6211103, at *1 (D.D.C. Mar. 28, 2017) (discussing circumstances of plaintiff Takia Jenkins), *Wilson*, 424 A.2d at 131, or whose property was potentially relevant evidence in a pending criminal case against someone else, *Jenkins*, 2017 WL 6211103, at *2 (discussing circumstances of plaintiff Muslimah Taylor). These cases are all inapposite because in them, "the trial judge became familiar with the facts and circumstances of the case," such that assigning the matter to another judge "'as a separate civil case would be a needless waste of judicial time and energy.'"  *Wilson v. United States*, 424 A.2d 130, 132 (D.C. 1980) (quoting *United States v. Ortega*, 450 F. Supp. 211, 212 (S.D.N.Y. 1978)).

The District's remaining cases involve situations in which the government filed charges and then dismissed them. *See Jenkins*, 2017 WL 6211103, at *2 (discussing circumstances of plaintiff Lorenzo Johnson), *Cousart v. Metro Transit Police Chief*, 101 F. Supp. 3d 27, 28 (D.D.C. 2015) (stating that charges were "filed in the Superior Court of the District of Columbia" and then "dismissed without prosecution"), *Alleyne v. United States*, 455 A.2d 887, 888 (D.C. 1983) (stating that defendants were "no papered" but clarifying that this meant they were "charged" with a crime and the charges were dismissed at arraignment). In these cases, there were criminal proceedings to which the Rule 41(g) proceedings could be ancillary. But, here, as in *Avila*, there have not been "any criminal proceedings at all." 246 F. Supp. 3d at 363. The District's contention that jurisdiction exists in such circumstances  is incompatible with both the D.C. Court of Appeals' careful limits on the Superior Court's Rule 41(g) jurisdiction, *see Dunmore*, 749 A.2d at 743, and the Advisory Committee's vision for the equivalent federal rule, Fed. R. Crim. P. 41(g) (previously Fed. R. Crim. P. 41(e)) as providing a means for addressing disputes about property held for pending criminal matters, *see* Advisory Committee's Notes on 1989 Amendments to Fed. R. Crim. P. 41(e) (noting that determinations of whether to order return of property entails considering the

government's "need for the property in an investigation or prosecution" and whether the government's "legitimate interests can be satisfied even if the property is returned").

Even if the Superior Court could, theoretically, exercise jurisdiction over Rule 41(g) motions in circumstances like those at issue here, the remedy would remain constitutionally insufficient because its availability in practice is entirely uncertain. Defendants have cited no cases in which the D.C. Court of Appeals has held that individuals in Plaintiffs' circumstances can invoke the rule, and Plaintiffs know of none. Although two of the Plaintiffs who filed 41(g) motions eventually regained their phones, it was not because the Superior Court held that it had jurisdiction over the motion—indeed, there wasn't a hearing much less a ruling. Compl. ¶¶ 36, 37, 38. Thus, the availability of this remedy is at best speculative, and as this Court has held, a speculative remedy is no remedy at all. *Avila*, 246 F. Supp. 3d at 362 (holding that the potential availability of an action *in detinue* could not satisfy the Due Process clause because of "the absence of any examples of its successful use" in the relevant context); *Coley v. Bowser*, 2021 WL 1578295, at *10 (D.D.C. Apr. 22, 2021) (declining to dismiss due process claim based on availability of state tort remedies in part because "it remains unclear at the motion to dismiss stage whether a state law tort remedy would adequately redress Plaintiff's alleged injuries").

Cases construing the federal equivalent to Rule 41(g) further illustrate the uncertainty of the remedy. Federal courts have held that, in certain circumstances, they possess jurisdiction to consider motions under the federal equivalent to Rule 41(g) (Fed. R. Crim. P. 41(g), previously Fed. R. Crim. P. 41(e)) even when no charges have been filed and no case in which the property could serve as evidence is pending. *See, e.g.*, *In re Singh*, 892 F. Supp. 1, 3 (D.D.C. 1995); *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993). When courts apply this theory—which rests on a conception of jurisdiction that "has rarely been invoked . . . and its very existence has

been questioned," *In re Grand Jury Proc.*, 115 F.3d 1240, 1246 (5th Cir. 1997)—they treat the motions as "civil equitable proceedings," and "exercise caution and restraint before assuming jurisdiction." *Singh*, 892 F. Supp. 1 at 3 (D.D.C. 1995).

Even if the Superior Court could exercise jurisdiction under the D.C. rule to the same extent as a federal court under the equivalent federal rule, Rule 41(g) would remain inadequate for individuals in Plaintiffs' circumstances. The constraints on jurisdiction demonstrate that this remedy will likely be unavailable for many individuals, and even persuading a court to assume jurisdiction, an issue on which the movant has the burden, *see Ramsden*, 2 F.3d at 325 (citing with approval cases holding that the "movant must establish" jurisdiction in this context), will require significant legal and factual argument.

In effect, telling individuals in Plaintiffs' circumstances that their only option is to initiate a "civil equitable proceeding" via Rule 41(g) is akin to telling them they should file a civil lawsuit. *See In re Search of S & S Custom Cycle Shop*, 372 F. Supp. 2d 1048, 1050 (S.D. Ohio 2003) (referring to a 41(e) motion in this context as a "civil complaint" and collecting cases holding the same). Indeed, it is worse, since plaintiffs must satisfy a demanding jurisdictional inquiry just to get in the door. Even where plaintiffs face no such barriers, many courts have deemed civil suits insufficient to satisfy due process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (stating that "lengthy and speculative" state tort remedies were insufficient to satisfy due process); *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017), as amended (July 18, 2017) (holding city could not require arrestees to file civil suits to regain seized property because the suits require "that person to give up not only time, but also money to initiate a lawsuit and usually retain an attorney" (cleaned up)); *Walters v. Wolf*, 660 F.3d 307, 315 (8th Cir. 2011) (holding that "relegat[ing]" an arrestee seeking the return of seized items "to a post-hoc state tort action to address the deprivation

27

is inherently insufficient"); *Gates v. City of Chicago*, 623 F.3d 389, 411 (7th Cir. 2010) (holding state civil suits were inadequate remedy for arrestees seeking  seized property because arrestees had burden of proof on the merits).[9]

In a case unlike this one, in which the property owner faces criminal charges or in which the property is being held as evidence in a criminal case, Rule 41(g) provides a straightforward process for individuals to seek to regain their property. *See In re Smith*, 888 F.2d 167, 168 (D.C. Cir. 1989). But for individuals in Plaintiffs' situation, it at best offers a burdensome and speculative process, and may be entirely foreclosed. Such a procedure does not provide Plaintiffs with the "meaningful opportunity to be heard" that they are due. *LaChance v. Erickson*, 522 U.S. 262, 266 (1998); *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).

---

[9] An exception to this rule comes from *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), and *Hudson v. Palmer*, 468 U.S. 517, 532–33 (1984), which permit states to rely on post-deprivation tort remedies where the deprivation arises from random and unauthorized conduct by state employees. The exception does not apply for two reasons. First, "the availability of state law postdeprivation remedies bears relevance *only* where the challenged acts of state officials can be characterized as random and unauthorized," *Coleman v. Watt*, 40 F.3d 255, 262 (8th Cir. 1994) (citing *Parratt*, 451 U.S. at 541; *Hudson*, 468 at 53). That is not the case here because the challenged deprivation arises from a practice so pervasive as to qualify as a municipal policy. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion) (stating that municipalities can face liability based on customs). Second, because the District can anticipate when its legitimate interests in individuals' cell phones expire, it can provide a hearing before extending the seizure beyond that point. As the Eighth Circuit reasoned in *Walters v. Wolf*, a prolonged seizure entails two deprivations: the initial confiscation and the refusal to return the property after the government's need for the items end. 660 F.3d 307, 314 (8th Cir. 2011). A hearing is required before the second deprivation begins. *See id.* at 315 (holding that state had obligation to provide arrestee with a hearing for the return of his seized firearm after the charges related to the seizure of the gun were resolved); *see also Zinermon v. Burch*, 494 U.S. 113, 129, 130 (1990) (describing *Parratt* and *Hudson* as "special" applications of the *Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test where "the value of predeprivation safeguards . . . is negligible in preventing the kind of deprivation at issue").

**B. The *Mathews v. Eldridge* Balancing Test Governs Plaintiffs' Due Process Claim and Under It, D.C. Failed To Provide Plaintiffs With Constitutionally Adequate Process.**

Formally analyzing Plaintiffs' Fifth Amendment claim under the applicable balancing test confirms what common sense implies: Plaintiffs have plausibly alleged that the District failed to satisfy the demands of the Due Process Clause.

Plaintiffs' Fifth Amendment claim is governed by the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Although the District contends that *Medina v. California*, 505 U.S. 437 (1992), controls, MTD 16, that decision applies only to challenges to "the validity of state procedural rules which . . . are part of the criminal process." 505 U.S. at 443. In *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), the Supreme Court recognized that it had primarily applied *Medina* to cases involving burdens of proof, and therefore invoked *Mathews* rather than *Medina* to assess a challenge to a state procedure governing "the continued deprivation of property after a conviction has been reversed or vacated, with no prospect of reprosecution." *Id.* at 1255. In reaching this holding, the Court expressly adopted the analysis from Chief Justice Roberts' dissent in *Kaley v. United States*, 571 U.S. 320 (2014), where he had concluded that *Mathews*, and not *Medina*, governs a criminal defendant's claims arising from "the collateral issue of the pretrial deprivation of property." *Id.* at 350 n.4; *see also Nelson*, 137 S. Ct. at 1255 (endorsing this analysis). Plaintiffs' claim is highly similar to the ones in *Kaley* and *Nelson*, and pursuant to those cases, falls squarely under *Mathews*.

Under *Mathews*, defining the process that is due requires analysis of three factors: (1) the private interest at issue; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the governmental interests at stake. 424 U.S. at 335. These factors decisively establish that

the District must provide a prompt opportunity for a hearing after it seizes a cell phone from someone arrested but never charged.

The District concedes, as it must, that the first factor—Plaintiffs' interest in their cell phones—favors Plaintiffs. MTD 18. Cell phones are central to modern life, "offer[ing] a range of tools for managing detailed information about all aspects of a person's life." *Riley v. California*, 573 U.S. 373, 396 (2014). Depriving owners of these tools works considerable hardship. For example, because of MPD's prolonged retention of his cell phone, Plaintiff Tan lost access to his primary email and WhatsApp accounts, which impeded his ability to receive bills and to communicate with business contacts, friends, and family members. Compl. ¶ 46. Likewise, Plaintiff Robinson lost access to "documents, passwords and work material stored on her phone." *Id.* ¶ 47.

The risk of erroneous deprivation also favors providing a hearing, which, unlike the one established by Rule 41(g), is actually available to individuals in Plaintiffs' circumstances. Although officers may seize property "incident to booking," the rationale for such seizures relates largely to safekeeping, *see Illinois v. Lafayette*, 462 U.S. 640, 646 (1983), and therefore generally expires with the owners' release. To lawfully retain property, the police must have some further legitimate justification. *See Smith*, 387 F. Supp. 3d at 25. Yet contrary to the District's assertions, MTD 18, MPD officers do not conduct individualized probable cause determinations before deciding to retain individuals' phones. To the contrary, MPD policy *requires* officers to "seize cell phones as evidence" and to apply for warrants for phones seized from "arrestees charged with any felony offenses, theft-related offenses, or any offenses where there is reason to believe the device

has evidentiary value." MPD Special Order 15-08 § III.C.1.a & III.C.4.c.[10] The policy contains no exceptions for instances where the officers know they cannot establish probable cause to believe that the cell phone was stolen or contains evidence. *See id.* Indeed, the Special Order treats arrests for felony or theft offenses as standalone bases for seizures that are distinct from "offenses in which there is reason to believe the device has evidentiary value." *Id.* at § III.C.1.a. The only mechanism the District identified as providing a check on this practice is Rule 41(g), a procedure that, as Plaintiffs have explained, does not provide a meaningful process in these circumstances. Thus, there is significant value to "additional or substitute procedural safeguards," in the form of a prompt hearing on the legality of the retention before a neutral decisionmaker. *Mathews*, 424 U.S. at 335. Without it, no-papered property owners have no way to contest what may often amount to an impermissible retention of their phones.

Finally, the governmental interest in avoiding such procedures is weak. While the District unquestionably has a weighty need to preserve evidence that is relevant in criminal trials, MTD 17, providing process to Plaintiffs and others in their situation would not jeopardize that concern. Indeed, where Rule 41(g) is available—*i.e.*, where charges were filed or the property is needed in a pending case—courts regularly assess whether the government has a legitimate basis for retaining property as evidence, and permit the government to hold such items upon an adequate showing. *See In re Smith*, 888 F.2d 167, 168 (D.C. Cir. 1989) (discussing Fed. R. Crim. P. 41(e)); *see also* Advisory Committee's Notes on Fed. R. Crim. P. 41(e) (instructing courts to find

---

[10] The Special Order's use of the word "charged" appears to refer to the offense for which MPD members made the arrest, as opposed to any offenses listed in any charging documents filed against an arrestee by a prosecutor. The Special Order is titled "Cell Phone *Recovery* Process" (emphasis added) and offers guidance for members on what to do in the immediate aftermath of securing a cell phone. *See id.* at § III.C.4.c (requiring detectives to secure warrants for seized phones "no later than 48 hours after the recovery"). Formal charging decisions occur far later and therefore cannot be what the order is referring to.

"reasonable accommodations" that balance "both the law enforcement interests of the United States and the property rights of property owners"). The process sought here—a hearing in which individuals in Plaintiffs' circumstances can challenge the deprivation of their phones "before a neutral third party," Compl. ¶ 88—could do the same. The District has not identified any logistical or fiscal concerns counseling against the requested process. It instead contends that further analysis is impeded because Plaintiffs have "failed to identify what procedural protections they are seeking beyond a hearing before a neutral decision-maker." MTD 19. Plaintiffs, however, seek nothing more than that—a hearing before a neutral decision-maker who has authority to order their property returned to them.

Balancing the *Mathews* factors here shows that Plaintiffs have plausibly alleged that those safeguards are constitutionally required. For example, this Court has twice concluded that when MPD seizes cars and retains them for forfeiture, it must hold a prompt hearing to determine whether the car can be returned to the owner while the forfeiture hearing is pending. *Brown v. District of Columbia*, 115 F. Supp. 3d 56, 67 (D.D.C. 2015); *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 104 (D.D.C. 2012). The Second and Seventh Circuits have recognized the same requirement. *Smith v. City of Chicago*, 524 F.3d 834, 838 (7th Cir. 2008), *vacated and remanded as moot sub nom. Alvarez v. Smith*, 558 U.S. 87 (2009); *Krimstock v. Kelly*, 306 F.3d 40, 70 (2d Cir. 2002) (Sotomayor, J.). The governmental interests in those cases are similar to the ones here. Moreover, the risk of erroneous deprivation here is higher. While each of the decisions above found that the risk of erroneous deprivation was low given that the seizures were based on probable cause, *Brown*, 115 F. Supp. 3d at 67, *Simms*, 872 F. Supp. 2d at 93, 104; *Smith*, 524 F.3d at 835; *Krimstock*, 306 F.3d at 49, Plaintiffs' claim involves seizures that are not necessarily justified by probable cause in light of MPD's policy of retaining phones even when that requirement goes

unmet. *See* MPD Special Order 15-08 § III.C.1.a. Moreover, because those cases involved property retained for forfeiture, the plaintiffs were eventually entitled to a forfeiture hearing which would determine whether the government could keep the property. By contrast, when property is seized incident to arrest, as happened here, it is not necessarily subject to forfeiture and, consequently, there is no guarantee that claimants will receive any hearing at all.

***

The District deprived Plaintiffs of their cell phones and left them to rely on Rule 41(g)—a process they cannot invoke because charges were never filed against them and there was no pending case where the property could be relevant evidence. The District thus denied Plaintiffs a meaningful opportunity to be heard and thereby failed "the root requirement" of due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

### III.    Plaintiffs Have Plausibly Alleged a Conversion Claim.

The District contends that a conversion claim lies only where the initial seizure is unlawful, MTD 20–21, but the D.C. Court of Appeals has rejected this view in its authoritative construction of D.C. tort law, holding that in an action for conversion, "[e]ven where a defendant's initial possession of property is lawful, a demand for its return by the plaintiff may render the continued possession unlawful and show its adverse nature." *Savoy Const. Co. v. Atchison & Keller, Inc.*, 388 A.2d 1221, 1223 (D.C. 1978). This Court has likewise held that a plaintiff can state a conversion claim under D.C. law when "the police, after lawfully coming into possession of plaintiff's property, thereafter wrongfully refused to surrender it." *O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 280 (D.D.C. 1990). And the Restatement (Second) of Torts states a similar rule. *Id.* § 237 ("One in possession of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession, is subject to liability for its conversion."). The District relies on *Baltimore v. District of Columbia*,

10 A.3d 1141 (D.C. 2011), but that decision in no way retreats from these principles; it held only that individuals cannot state conversion claims for the deprivation of possessions they have previously abandoned, *id.* at 1156—an issue not at all relevant here.

In this case, the District, after lawfully acquiring Plaintiffs' phones, retained them for months despite Plaintiffs' repeated demands. *See* Compl. ¶¶ 25–27, 36–41. If the District had doubts about Plaintiffs' entitlement to their phones, it could have retained the property for "a reasonable time for inquiry," Restatement (Second) of Torts § 240 & cmt. D, for example, to determine if it could obtain a warrant and execute the warrant. But the District retained the phones far longer than the two days that the applicable MPD Special Order states are necessary to obtain a warrant, Compl. ¶ 28, and the brief period necessary to use the Cellebrite Kiosks to execute one, Compl. ¶ 29. By exceeding the "reasonable time" necessary for inquiry, the District "bec[a]me a converter." Restatement (Second) of Torts § 240, cmt. D; *see also O'Callaghan*, 741 F. Supp. at 280 (police became converters by holding cars after justification for retention expired).

## CONCLUSION

Defendants' Motion to Dismiss should be denied.

Dated: January 28, 2022

Respectfully submitted,

/s/ Michael Perloff
Michael Perloff (D.C. Bar No. 1601047)
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, N.W., Second Floor
Washington, D.C. 20005
(202) 601-4278
mperloff@acludc.org

Jacqueline Kutnik-Bauder*
Carlos Andino*
Washington Lawyers' Committee for

Civil Rights & Urban Affairs
700 14th Street, N.W., Suite 400
Washington, D.C. 20005
(202) 319-1000
jacqueline_kutnik-bauder@washlaw.org

Tara L. Reinhart (D.C. Bar No. 462106)
Julia K. York (D.C. Bar No. 478001)
Joseph M. Sandman (D.C. Bar No. 1030820)
Daniel R. Blauser (D.C. Bar No. 1620060)
Annamaria Kimball (D.C. Bar No. 1737945)
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7630
tara.reinhart@probonolaw.com

Jeffrey L. Light (D.C. Bar No. 485360)
Law Office of Jeffrey L. Light
1629 K Street, N.W., Suite 300
Washington, DC 20006
202-277-6213
jeffrey@lawofficeofjeffreylight.com

*Counsel for Plaintiffs***

_____

\* Practicing pursuant to D.C. Ct. App. R. 49(c)(9)(B) and in this matter *pro hac vice.* Counsel has been informed that they have been admitted to the D.C. bar but are still awaiting issuance of a bar number.

\*\* Counsel thank paralegal Elaine Stamp for her assistance cite-checking and proofreading this brief.