# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDER CAMERON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Civil Action No. 21-2908 (APM) |

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT

### INTRODUCTION

Plaintiffs Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, and Jake Oster were arrested on August 13, 2020, for felony rioting, and incident to their arrests had their property, including cellphones, seized by the Metropolitan Police Department (MPD). Plaintiffs allege that the length of time that MPD retained their property violated their Fourth Amendment rights, that the lack of a prompt hearing to challenge the retention of their property violated their Fifth Amendment rights, and that the retention of their property constituted conversion. The District of Columbia's (the District) motion to dismiss the Complaint with prejudice should be granted.

In its motion, the District explained that a challenge to the retention of property, as opposed to a challenge to the initial seizure of property, is properly analyzed under the due process protections of the Fifth Amendment and is not a viable Fourth Amendment claim. In their opposition, plaintiffs rely on a misreading of Supreme Court caselaw in an attempt to save their claim. When those cases are read in proper context, they are consistent with an approach that analyzes plaintiffs' claims as alleged due process violations.

The District also explained in its motion that plaintiffs had failed to allege a violation of their Fifth Amendment rights because D.C. Superior Court Rule of Criminal Procedure 41(g) (Rule 41(g)) provided plaintiffs with the exact remedy that they seek—an opportunity to challenge the retention of their property before a neutral decision-maker. In response, plaintiffs argue that Rule 41(g) cannot be invoked by *any* party until *after* the government initiates a criminal proceeding. Plaintiffs' interpretation cannot be squared with the plain language of Rule 41(g), caselaw applying Rule 41(g), or common sense. If Rule 41(g) provides an adequate remedy to plaintiffs after a criminal proceeding is initiated, and plaintiffs acknowledge that it does, then it provides an adequate remedy before a criminal proceeding is initiated as well.

Finally, plaintiffs oppose dismissal of their conversion claim on the ground that the seizure of their property has now become unlawful, but plaintiffs' authority concerns situations when one private party demanded that another private party return property that was lawfully acquired and there was no basis for the property to be retained. That is not this case. Even assuming plaintiffs have made a demand for property related to a criminal investigation from the government, their claim still assumes a Fourth Amendment violation—as explained above, there has been none.

**ARGUMENT**

I.  **Plaintiffs Fail To Allege a Violation of Their Fourth Amendment Rights (Count 1).**

Plaintiffs fail to allege a plausible violation of their Fourth Amendment rights. The weight of circuit caselaw has held that the Fourth Amendment applies only to the initial seizure of property and not the retention of property lawfully seized. Additionally, plaintiffs have failed to plausibly allege a claim for municipal liability.

### A. The Weight of Authority Analyzes Unlawful Retention of Property Claims Under the Fifth Amendment, Not the Fourth Amendment.

Four circuit courts have found that claims challenging the retention of lawfully seized property do not implicate the Fourth Amendment. *Denault v. Ahern*, 857 F.3d 76, 83 (1st Cir. 2017); *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003); *Shaul v. Cherry-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2002); *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999).[1] Plaintiffs are wrong that these cases are outliers, *see* Pls.' Opp'n to Def.'s Mot. to Dismiss (Opp'n) at 7–14 [22], and this Court should follow their analysis and dismiss plaintiffs' Fourth Amendment claim.

Plaintiffs' argument in support of their Fourth Amendment claim is based on an overbroad reading of Supreme Court precedent. Opp'n at 7–9. In *United States v. Place*, the Supreme Court considered whether law enforcement could briefly seize luggage without probable cause for the purposes of further investigation. 462 U.S. 696, 706–09 (1983). Specifically, the Court "examine[d] whether the agents' conduct in this case was such as to place the seizure within the general rule requiring probable cause for a seizure or within *Terry*'s [*Terry v. Ohio*, 392 U.S. 1 (1968)] exception to that rule." *Id.* at 708. And it held that, if a deprivation of property becomes sufficiently significant, then an investigatory detention becomes a seizure that requires probable cause. *Id.* at 708–09. As the Seventh Circuit discussed in *Lee*, however, "*Place* is ultimately concerned only with the initial loss of [the] possessory interest and whether the existence of probable cause renders that loss reasonable" and "has no application after probable cause to seize has been established." *Lee*, at 464; *cf. Segura v. United States*, 468 U.S. 796, 812 (1984) (applying

---

[1] *See also Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012) (applying *Shaul*); *Tammaro v. City of New York*, Civil Action No. 13-6190, 2018 WL 1621535, at *10–12 (S.D.N.Y. March 30, 2018) (rejecting argument that *Krimstock v. Kelly*, 464 F.3d 246 (2d Cir. 2006), abrogated *Shaul*).

3

*Place* and finding it was reasonable for law enforcement to seize and secure a home for 19 hours while waiting for the issuance of a search warrant).

In *United States v. Jacobsen*, the Supreme Court, citing *Place*, noted that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its *manner of execution* unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" 446 U.S. 109, 124 (1984) (emphasis added). In a footnote, the Court summarized the holding in *Place*: "while the initial seizure of luggage for the purpose of subjecting it to a 'dog sniff' test was reasonable, the seizure became unreasonable because its length unduly intruded upon constitutionally protected interests." *Id.* at 124 n. 25.[2] The Court applied *Place* to consider whether an initially reasonable seizure's manner of execution "unreasonably infringe[d] possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures' … by destroying a quantity" of the property at issue and converting "a temporary deprivation of possessory interests into a permanent one." 466 U.S. at 124–25. The "manner of execution" of the seizure considered in *Jacobsen*—an investigatory test that destroyed some of the property at issue—is significantly different than plaintiffs' claim, which challenges the allegedly prolonged retention of their property. *Place*, *Segura*, and *Jacobsen* therefore do not support plaintiffs' claim that a challenge to the retention of property after it has been lawfully seized sounds in the Fourth Amendment.

The other Supreme Court cases plaintiffs cite are inapposite. Opp'n 8–9. In *Rodriguez v. United States*, the Court held that a traffic stop cannot be prolonged beyond the time reasonably

---

[2] This statement does not suggest that the Fourth Amendment regulates the duration of a lawful seizure of property supported by probable cause. The *Place* opinion applies the principles of *Terry* stops to consider at what point a seizure of property required probable cause. 462 U.S. at 708–09.

4

necessary to effectuate the traffic stop absent reasonable suspicion. 575 U.S. 348, 352 (2015). *Illinois v. Caballes* similarly held that a seizure of an individual that is justified in the "interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission" if the seizure is not justified by reasonable suspicion. 543 U.S. 405, 407 (2005). As in *Place*, both cases examined how long a law enforcement officer can detain someone for a limited purpose based on less than probable cause. In *Manuel v. Joliet*, the Court held that if a person brings a claim "for unlawful pretrial detention" unsupported by probable cause, then the constitutional provision implicated is the Fourth Amendment. 137 S. Ct. 911, 919 (2017). The basis of the Fourth Amendment claim recognized in *Manuel* was that the determination of probable cause authorizing the pretrial detention was based on false statements by a police officer and was never supported by probable cause. *Id.* at 918–19. But this decision does not establish a Fourth Amendment claim to challenge the retention of lawfully seized property. Additionally, as the First Circuit noted in *Denault v. Ahern* when it held the retention of lawfully seized property did not implicate the Fourth Amendment, "[a] different result may well obtain when the government seizes a person rather than property." 857 F.3d at 84 (citing *Manuel*, 137 S. Ct. at 919); *see also Fox*, 176 F.3d at 351 ("We need not address whether the term 'seizure' in the Fourth Amendment has a different temporal scope when a person rather than property is at issue … .").

Plaintiffs' overly broad reading of Supreme Court precedent is confirmed by examining relevant Court of Appeals' caselaw. The only case plaintiffs cite that found a viable Fourth Amendment claim similar to the one alleged here—a challenge to the prolonged retention of lawfully seized property without an additional allegation of theft—is *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). In *Brewster*, the Ninth Circuit interpreted *Place* to stand for the

proposition that the retention of property must be continually justified by probable cause or else it violates the Fourth Amendment. *Id*. However, in *Jessop v. City of Fresno*, which followed *Brewster*, the Ninth Circuit held that officers who had allegedly stolen money that had been lawfully seized had qualified immunity against a Fourth Amendment claim because it was not sufficiently clear whether theft of lawfully seized property would violate the Fourth Amendment. 936 F.3d 937, 941 (9th Cir. 2018). In a concurring opinion, Judge Milan recognized that "*Brewster*'s reasoning appears to conflict with the Supreme Court's jurisprudence on Fourth Amendment seizures … [and] also conflicts with that of several other circuits, which have concluded that the Fourth Amendment provides protection only against the initial taking of property, not its continued retention." *Id.* at 943 (Milan, J., concurring).

Plaintiffs also cite *Mom's, Inc. v. Willman*, an unpublished Fourth Circuit decision, that found that the allegation that a law enforcement officer had stolen lawfully seized property sounded in the Fourth Amendment. 109 Fed. App'x 629 (4th Cir. 2004). The Fourth Circuit held that the officer in question had qualified immunity for the alleged theft, partly because it recognized that "Supreme Court precedent tilts slightly against the existence of any constitutional right against theft during the course of a search." *Id.* at 637 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). More recently, the Eleventh Circuit held that the theft of "legally seized property raises an issue of procedural due process under the Fourteenth Amendment" rather than the Fourth Amendment. *Case v. Eslinger*, 555 F.3d 1317, 1339 (11th Cir. 2009). Other courts have found qualified immunity for law enforcement officers who allegedly stole lawfully seized property and identified a circuit split on whether such claims implicate the Fourth Amendment. *See Springer v. Albin*, 398 Fed. App'x 427, 435–36 (10th Cir. 2010); *Sanders v. Balt. City Police Dep't*, Civil Action No. 19-551, 2020 WL 1505697, at *4 (D. Md. Mar. 30, 2020) (comparing *Shaul*, *Fox*, and

6

*Lee* with *Beckett* and *Mom's* and concluding there "appears to be a split among the several circuits on the question of whether a law enforcement officer's failure to return lawfully seized property implicates the Fourth Amendment"). This analysis runs contrary to plaintiffs' contention that the authority it cites applies to *all* allegedly prolonged retentions, regardless of the context.

In addition, plaintiffs cite to a number of cases that consider the time elapsed between a seizure and a search warrant but those cases do not support plaintiffs' argument that the same analysis should apply to the retention of lawfully seized property; indeed, in *Brewster*, the Ninth Circuit cites to *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), for the proposition that the length of a warrantless seizure may violate the Fourth Amendment and subsequently states it has "no cases on point" to determine whether the Fourth Amendment required law enforcement to have further authorization for the 30-day impound at issue once the exigency that justified the initial warrant exception ended. 859 F.3d at 1197. While the Ninth Circuit concluded that the Fourth Amendment was ultimately implicated, its reasoning relied on its own interpretation of *Place*, not on the application of the precedent that the Fourth Amendment is implicated by a delay between a warrantless seizure and obtaining a search warrant. *Id*. Furthermore, the cases discussing claims challenging the alleged theft of property under the Fourth Amendment discussed above do not consider this line of cases. The issuance and execution of search warrants is part of core Fourth Amendment jurisprudence while "a government's decision regarding how and when to return once lawfully obtained property 'raises different issues, which the text, history, and judicial interpretations of the Fourth Amendment do not illuminate.'" *Lee*, 330 F.3d at 465 (quoting *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989)).[3]

---

[3] While two cases in this district have applied the Fourth Amendment analysis to a challenge to the retention of property, those cases did not consider the circuit precedent finding there is no

Furthermore, in *United States v. Burgard*, the Seventh Circuit explained that the principle that law enforcement must obtain a warrant within a reasonable time to search the cell phone at issue did not conflict with their holding in *Lee.* 675 F.3d 1029, 1032 (7th Cir. 2012). Plaintiffs' attempt to distinguish *Burgard* is unavailing. For the proposition that the Fourth Amendment is offended by any prolonged seizure, regardless of context, plaintiffs cite to *Rodriguez*, *Smith*, *Brewster*, and *Mom's*. As discussed above, *Rodriguez* concerns how long a traffic stop can be prolonged absent reasonable cause. 575 U.S. at 352. *Smith v. District of Columbia* is a district case that applies *Place* to a challenge to the retention of lawfully seized property but does not address this circuit precedent. 387 F. Supp. 3d 8, 25 (D.D.C. 2019). And *Brewster* relies on its interpretation of *Place* rather than precedent about delay in obtaining a search warrant, 859 F.3d at 1196–97. Lastly, *Mom's* is an unreported case that found that the alleged theft of lawfully seized property violated the Fourth Amendment, 109 Fed. App'x at 637. In light of the compelling circuit caselaw finding the retention of property cannot be challenged under the Fourth Amendment and the recognized uncertainty of Fourth Amendment claims based on theft, plaintiffs have not established that the line of cases addressing the delay between the seizure of property and a subsequent application for a search warrant controls whether the retention of property itself can be challenged under the Fourth Amendment.[4]

Despite plaintiffs' claims to the contrary, the circuit caselaw strongly weighs in favor of

---

Fourth Amendment claim under similar circumstances. *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019); *Avila v. Dailey*, 246 F. Supp. 3d 347, 357 (D.D.C. 2017); *see also Jones v. District of Columbia*, Civil Action No. 16-2405, 2019 WL 5690341, at *2 (D.D.C. June 13, 2019) (citing *Segura* for the proposition that a seizure must remain reasonable over time in *dicta*).

[4]    Plaintiffs suggest that, because MPD allegedly was considering applying for a search warrant for this phone, the search warrant precedent should apply. Opp'n at 15. However, plaintiffs do not challenge a search or any evidence introduced; plaintiffs challenge only the retention of the property itself.

finding that a challenge to the retention of lawfully seized property does not sound in the Fourth Amendment. The Court should dismiss Count 1.

### B. Plaintiffs Fail To Plausibly Allege a Claim for Municipal Liability.

Even if plaintiffs have stated a claim for a constitutional violation under the Fourth Amendment, plaintiffs have not plausibly alleged that the District has a widespread and pervasive custom of unreasonably retaining cell phones of arrestees and, therefore, have not alleged a viable theory of municipal liability. *See Tabb v. District of Columbia*, 605 F. Supp. 2d 89, 96 (D.D.C. 2009) ("The policy or custom must be pervasive to support municipal liability.").

Plaintiffs contend that they have alleged at least 208 purported examples of prolonged retention of cell phones. Opp'n at 21. However, 200 of those examples are connected to one incident—the protests at the 2017 presidential inauguration. Compl. ¶ 53. Plaintiffs contend that the seizure of these phones demonstrate the District's alleged custom, but plaintiffs have failed to allege adequate facts about the purported retention of cellphones in connection with the 2017 presidential inauguration. Contrary to plaintiffs' allegations, the facts of the individual seizures related to the inauguration are material, particularly whether the individuals in question were charged with a crime. If the individuals in question were charged with a crime, the reasonableness of any retention would be impacted. *See* Sup. Ct. Crim. R. 16(a)(1)(E) (requiring the government to make tangible objects material to the government's case available to a criminal defendant). Furthermore, the inauguration protests were unprecedented circumstances and allegations about arrests in connection with those protests should not speak to the District's customary practice. *Cf. Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 42 (D.D.C. 2014) (report analyzing racial disparities in arrests was not relevant to establishing a custom of Fourth or Fifth Amendment violations). While plaintiffs contend that the alleged retention of the cell phones seized in

connection with the 2017 inauguration was unreasonably prolonged, the purported retention has limited utility in demonstrating a custom because of the unique circumstances accompanying the purported seizure of those phones.

Plaintiffs argue that they have provided adequate detail about the eight additional examples they provide to establish a custom, but they have failed to do so. Plaintiffs cite an out-of-circuit case for the proposition that the recitation of facts to support a custom theory of liability does not need to be particularly detailed. Opp'n at 19. However, courts in this district have required plaintiffs to allege "concentrated, fully packed, precisely delineated scenarios" to support allegations of a custom. *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988)); *see Carter v. District of Columbia*, 795 F.2d 116, 125 (D.C. Cir. 1986); *Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 346 (D.D.C. 2018) ("When a plaintiff seeks to establish municipal liability in the absence of an explicit policy, he must allege 'concentrated, fully packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists'" (quoting *Page*, 999 F. Supp. 2d at 284)). Plaintiffs have failed to meet that bar here; most of plaintiffs' allegations involve information provided by unidentified attorneys about their unidentified clients. Compl. ¶ 53. Contrary to plaintiffs' allegation, the District is not contending that these examples are inadequate because they are hearsay; the District is challenging the purported examples because they are insufficiently detailed.

Plaintiffs also point to a 2019 Police Complaints Board (PCB) Report and allege that the report "rais[es] concerns about similar conduct." Opp'n at 18–19. Plaintiffs argue that the PCB report is relevant because it shows that officers do not consistently follow their written policies. Opp'n at 19. But the PCB report does not suggest a custom or pervasive practice of officers failing to comply with written policy, let alone of a custom of unreasonably retaining property as plaintiffs

allege here. The PCB's acknowledgment that "the procedures in place for handling property require a high level of police accountability, and extensive training for all members who handle property, as the procedures can only work when officers follow the policy and are held accountable when violations occur" does not put the District on notice of a pattern of constitutional violations related to the handling of property. PCB at 3. The PCB report advises that the Office of Police Complaints received approximately 50 complaints per year, generally related to mistakes that caused the loss or damage of property or theft by MPD officers. *Id*. Neither category of complaint puts the District on notice of the type of violation alleged here. *Cf. Egudu*, 72 F. Supp. 3d at 42. MPD made more than 19,000 arrests in 2020;[5] 50 complaints concerning significantly different issues than those alleged here do not put the District on notice of a custom that is "so engrained that it amounted to a 'standard operating procedure' of which municipal policymakers must have been aware." *Hurd v. District of Columbia*, 997 F.3d 332, 338 (D.C. Cir. 2021) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).[6]

Plaintiffs contend that, in addition to the PCB report and *The Atlantic* article, the number of alleged retention puts the District on notice of a custom. Opp'n at 18. But plaintiffs have only alleged 200 seizures arising out of one unusual incident in 2017 and eight subsequent instances between 2018 and 2021 out of the thousands of arrests that MPD makes each year. *Id.* Especially in light of the information provided in the PCB report, these incidents were insufficient to put the District on notice. Unlike in *Powe v. Chicago*, 664 F.2d 639 (7th Cir. 1981), and *Singh v. District*

---

[5] MPD 2020 Annual Report at 28. Available at: https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR2020_lowres_a.pdf.

[6] Plaintiffs also cite a 2016 article from *The Atlantic*. Compl. ¶ 54. Plaintiffs fail to explain why MPD would rely on one news article from approximately five years ago for information about the handling of property instead of the more recent PCB report.

11

*of Columbia*, 881 F. Supp. 2d 76 (D.D.C. 2012), two of the cases plaintiffs cite, the alleged incidents did not happen repeatedly to the same person but instead to a handful of individuals over the course of several years. Plaintiffs have not alleged a plausible claim for municipal liability and their Fourth Amendment claim should be dismissed.

II.     **Plaintiffs Fail To Allege a Violation of Their Fifth Amendment Rights (Count 2).**

Plaintiffs' sole argument in support of their alleged due process violation is that the D.C. Superior Court lacks jurisdiction under Rule 41(g) to consider their challenges to MPD's retention of their property. The plain language of Rule 41(g) and caselaw applying it conclusively establish otherwise.[7]

    A.     **Plaintiffs Are Wrong That the Jurisdictional Scope of Rule 41(g) Is Limited.**

Plaintiffs argue that the D.C. Superior Court's jurisdiction under Rule 41(g) is limited to two situations: either "the property owner faces criminal charges or the property is being held as evidence in a criminal case." Opp'n at 28. In support of their interpretation of Rule 41(g), plaintiffs rely on the purpose of Rule 41(g) and *Avila v. Dailey*, 246 F. Supp. 3d 347 (D.D.C. 2017) while attempting to distinguish the many cases cited by the District applying Rule 41(g). *See* Opp'n at 24–26. Plaintiffs' cited authority cannot bear the weight placed on it.

First, plaintiffs ignore the plain language of Rule 41(g). As always, the Court should begin with the text when assessing the scope of Rule 41(g). *United States v. Thorne*, Criminal Action No. 18-389, 2021 WL 2682631, at *31 (D.D.C. June 30, 2021), as corrected (July 16, 2021) (explaining that interpretation of Federal Rules of Criminal Procedure must begin with the text);

---

[7] Plaintiffs argue that the District's motion to dismiss constitutes a concession that municipal liability exists if they establish a violation of the Fifth Amendment. Opp'n at 23. Plaintiffs do not explain their reasoning or cite any authority for their position. *Id*. Regardless, plaintiffs are plainly wrong. *See* Fed. R. Civ. P. 12(b)(1)-(7).

12

*Demus v. United States*, 710 A.2d 858, 859 (D.C. 1998) (following federal courts' approach to interpreting procedural rules); *accord Farmer-Celey v. State Farm Ins. Co.*, 163 A.3d 761, 765 (D.C. 2017) (reviewing "the claim on appeal in light of the text and judicial interpretation of the Superior Court Rules of Civil Procedure"). Rule 41(g) includes in its scope "a person aggrieved by an unlawful search and seizure of property." Plaintiffs allege that they were aggrieved by an unlawful seizure, therefore nothing in the plain language of Rule 41(g) supports plaintiffs' narrow jurisdictional reading.

Plaintiffs instead argue that the "purpose of the Rule" supports their interpretation, *see* Opp'n at 24, based on the court in *District of Columbia v. Dunmore* observing that Rule 41(g) has been applied "in circumstances where it makes for economy of judicial effort to have the matter disposed on in the criminal proceeding and where the ancillary nature of the hearing would not be supplanted by an essentially civil action in which the rights of competing claimants are resolved." 749 A.2d 740, 743 (D.C. 2000) (citations, quotation marks, and ellipsis omitted). But *Dunmore*, and the caselaw it followed, *i.e.*, Stevens v. United States, 462 F.2d 1137 (D.C. 1983), addressed very different facts than those presented here. In *Stevens*, the money at issue had already been returned to the alleged victim of the crime, and the court held that Rule 41(g) could not be used as the basis to resolve what amounted to a civil action between two private parties. 462 F.2d at 1139. And, in *Dunmore*, the court's finding that Rule 41(g) did not apply was not based on an interpretation of the scope of Rule 41(g); it was based on a finding that once civil forfeiture proceedings were initiated under D.C. Code § 33-552 that "those proceedings constitute[d] the exclusive means by which the ownership of the forfeitable property is to be determined." 749 A.2d at 742. Here, plaintiffs do not allege that their property is no longer in the possession of the District,

as was the case in *Stevens*, nor do they allege that any person or entity has a competing claim to their property, as was the case in *Dunmore*.

Second, while *Avila* has language on its surface that appears to support plaintiffs' interpretation, a closer look reveals that it does not go as far as plaintiffs suggest it does. Initially, it does not appear that the *Avila* court had the benefit of briefing on the scope of Rule 41(g). 246 F. Supp. 3d at 363 ("Defendant has cited only federal cases involving the Federal Rule, not the D.C. analog."). The Court also did not engage with the text of Rule 41(g), reconcile its language with the many prior cases applying Rule 41(g), or explain why Rule 41(g) should be applied differently than Federal Rule of Criminal Procedure 41(e), despite nearly identical language. *Id*. at 362.[8]

Plaintiffs do not dispute that many courts have applied Rule 41(g) but attempt to distinguish those cases on the ground that they involved motions that were brought either during a criminal proceeding or after the criminal proceeding had ended. Not only do those cases provide no indication that the scope of Rule 41(g) is so limited, *see* Def.'s Mem. in Support of Mot. to Dismiss (Mem.) at 14–15 [19-1], but limiting it in that way would raise obvious problems. Under plaintiffs' proposed approach, Rule 41(g) would have no applicability while the government investigated a crime but then would become applicable once a criminal proceeding was initiated. Plaintiffs would therefore require the government to automatically hold a hearing regarding every piece of property it seizes prior to criminal charges being filed, including for property seized from criminal suspects.

---

[8] D.C. courts treat federal courts' interpretation of analogous procedural rules as persuasive authority. *See Demus v. United States*, 710 A.2d 858, 859 (D.C. 1998). Plaintiffs acknowledge that federal courts would have jurisdiction to hear their claims under Federal Rule of Criminal Procedure 41(g). Opp'n at 26–27.

As explained below, such an approach would not only impose an incredible burden on the District but would pose a significant risk to the integrity of criminal investigations.

Finally, while plaintiffs argue that, even if jurisdiction did exist under Rule 41(g) to hear their claims, pursuing relief under Rule 41(g) would impose an undue burden on claimants, the same burden would be present for *every* Rule 41(g) motion and courts have not found Rule 41(g) inapplicable for that reason. *See Jenkins v. District of Columbia*, Civil Action No. 16-118, 2017 WL 6211103, at *4 (D.D.C. Mar. 28, 2017) ("While some *pro se* plaintiffs undoubtedly find it difficult to navigate the eddies of D.C. Superior Court, Plaintiffs have not established that the process is so lacking, as to preclude that avenue of relief.").

For the above reasons, and those in the District's motion, the Court should find that the D.C. Superior Court has jurisdiction under Rule 41(g) to consider claims for the return of property prior to the initiation of a criminal proceeding.

### B. Rule 41(g) Satisfies the Requirements of the Due Process Clause.

Plaintiffs do not dispute that Rule 41(g) satisfies due process when applicable. *See* Opp'n at 28 ("In a case unlike this one, in which the property owner faces criminal charges or in which the property is being held as evidence in a criminal case, Rule 41(g) provides a straightforward process for individuals to seek to regain their property."). Because Rule 41(g) does apply prior to the initiation of a criminal proceeding, the Court's analysis of plaintiffs' Fifth Amendment claim need go no farther. To the extent plaintiffs are arguing that Rule 41(g) does not satisfy due process, they are wrong under either *Medina v. California*, 505 U.S. 437 (1992) or *Mathews v. Eldridge*, 424 U.S. 319 (1976).

#### 1. Plaintiffs' Challenge to Rule 41(g) Should Be Analyzed Under *Medina*.

As explained in the District's motion, the Court should analyze any challenge to the procedures afforded by Rule 41(g) under *Medina* because it is a state procedural rule that is part

of the criminal process. *See* Mem. at 16; *Jenkins*, 2017 WL 6211103, at *3 ("The procedures challenged by Plaintiffs here—which govern the retention and return of physical evidence in criminal prosecutions—are plainly 'state procedural rules' that 'are part of the criminal process.'"). Plaintiffs, however, argue that *Nelson v. Colorado*, 137 S. Ct. 1249 (2017) and *Kaley v. United States*, 571 U.S. 320 (2014), require the application of *Mathews*, not *Medina*. Opp'n at 29. Once again, plaintiffs overread Supreme Court caselaw.

In *Nelson*, the Supreme Court considered procedures concerning the return of property after the criminal process had ended and there was "no prospect of reprosecution." 137 S. Ct. at 1255. *Nelson* cited in support Chief Justice Roberts's dissenting opinion in *Kaley*. *Id*. *Kaley* addressed the procedures available to a criminal defendant to challenge the seizure of property as potentially forfeitable because of its connection to the alleged crime. 571 U.S. at 324. Neither *Nelson* nor *Kaley* dealt with a claim for the return of property seized in connection with a felony arrest or during an active criminal investigation. Here, plaintiffs' attack on Rule 41(g) is expressly limited to those two situations and therefore *Medina* provides the proper standard of review.

### 2. Plaintiffs' Application of *Mathews* Is Premised Entirely on the Incorrect Assumption That They Cannot Pursue Relief Under Rule 41(g).

While plaintiffs argue in their opposition that additional protections are necessary to prevent erroneous deprivations, Opp'n at 29–31, plaintiffs also acknowledge that "Rule 41(g) provides a straightforward process for individuals to seek to regain their property" once a criminal proceeding has been initiated. *Id*. at 28. But plaintiffs do not explain why, if the process afforded by Rule 41(g) is sufficient *after* charges have been filed for a third-party whose property has been seized, it would be insufficient *prior* to charges being filed. The additional protections that plaintiffs seek do not then actually go to preventing erroneous deprivations of property—for example, here, plaintiffs do not challenge the initial deprivation of their property. The protections

that plaintiffs seek go to the return of property that was legally seized. Plaintiffs' demand that the District provide every individual whose property has been seized in connection with a criminal investigation with what amounts to a Rule 41(g) hearing promptly would concern only timing—before criminal charges are filed, plaintiffs would be entitled to an automatic Rule 41(g)-like hearing and after criminal charges are filed, plaintiffs would pursue relief under Rule 41(g). There is no basis for such a disparate approach.

In addition, now that plaintiffs have clarified that their interpretation of Rule 41(g) is actually that it does not apply to *any* seizure of property until a criminal proceeding is initiated, regardless of whether the property was seized from a suspect, *see* Opp'n at 23–25, the proposed approach would impose a significant burden on the District. Under plaintiffs' approach, the District would have to automatically defend its seizure of any property, no matter the circumstances, including a pending criminal investigation, unless it had filed charges against "someone." After the District had charged someone with a crime, then the property owner, according to plaintiffs, would be obligated to pursue relief under Rule 41(g). Such a system would be inherently unworkable and would create a perverse incentive for the prosecution to file charges early and often so as to avoid having to automatically defend the seizure of property.

This Court should follow the overwhelming weight of authority and find that Rule 41(g) does not violate a property claimant's due process rights.

### III. Plaintiffs' Claim for Conversion Should be Dismissed (Count 3).

Plaintiffs argue that their conversion claim should not be dismissed because they made a demand for the return of their property, which rendered the District's continued possession of their property unlawful. Opp'n at 33–34 (citing *Savoy Const. Co. v. Atchinson & Keller, Inc.*, 388 A.2d 1221 (D.C. 1978); *O'Callaghan v. District of Columbia*, 741 F. Supp. 273 (D.D.C. 1990)). But *O'Callaghan* did not involve a lawful seizure and then a failure to return on demand. There, MPD

policy required officers to inform property owners that their stolen vehicles had been recovered. *O'Callaghan*, 741 F. Supp. at 278. The court found that MPD's failure to notify the property owners violated the owners' due process rights and that plaintiff's property had been converted by individual MPD officers under the doctrine of *respondeat superior*. *Id*. at 278–79. Plaintiffs here do not assert any claims against individual defendants but instead rely solely on a claim of municipal liability against the District. As explained above, plaintiffs have failed to allege that the retention of their property violated their constitutional rights or that it was caused by a policy, practice, or custom. Therefore, Count 3 should be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the District's motion to dismiss, the Court should grant the District's motion and dismiss plaintiffs' Complaint with prejudice.

Dated:  February 11, 2021.                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Richard P. Sobiecki*
RICHARD P. SOBIECKI [500163]
HELEN M. RAVE*
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001

---

\*       Admitted to practice only in the State of New York. Practicing in the District of Columbia under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to LCvR83.2(f).

(202) 805-7512
richard.sobiecki@dc.gov
helen.rave@dc.gov

*Counsel for Defendant*