**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALEXANDER CAMERON,** *et al.*, <br><br>     **Plaintiffs,** <br><br>     **v.** <br><br> **DISTRICT OF COLUMBIA,** <br><br>     **Defendant.** | **No. 1:21-cv-02908-APM** |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

The D.C. Metropolitan Police Department (MPD) handles over 100,000 items of property a year, including property that is lost, abandoned, or held as evidence. For property that is held as evidence, MPD has an obligation to keep it until the prosecuting agency—either the U.S. Attorney's Office (USAO) or the D.C. Attorney General's Office (OAG)—authorizes the property's release. In practice, the authorization occurs when the prosecuting agency completes a PD Form 81-C for the property and provides it to MPD's Evidence Control Branch. Once MPD has the PD 81-C, it can release the property to its owner, upon request.

Plaintiffs in this action—Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, and Jake Oster—were arrested on August 13, 2020, for felony rioting. Pursuant to standard MPD policy, after Plaintiffs were arrested, their personal property, including each Plaintiffs' cellphone, was seized as evidence. Plaintiffs do not dispute that MPD had probable cause to arrest them. Nor do they dispute that the initial seizure of their phones as evidence was justified. Instead, Plaintiffs' only remaining constitutional claim concerns whether the District

violated their Fourth Amendment rights by holding their property after it no longer had any

evidentiary value despite their requests for the properties return.

Previously, this Court found that Plaintiffs had failed to allege a violation of the Fourth

Amendment.  On appeal, the D.C. Circuit held that they had.  Those decisions, however,

addressed only whether Plaintiffs alleged a constitutional violation; they did not address whether

Plaintiffs adequately alleged that a District custom or practice caused the violations.  To

sufficiently allege a custom or practice, Plaintiffs must identify a "persistent or regular pattern of

conduct" that is "pervasive."  They have plainly failed to do so here.  Outside of their own

experiences and that of Oyoma Asinor, who is the plaintiff in a related case before this Court,

Plaintiffs identify only a single individual (Michael Basillas) who purportedly was denied access

to his seized property after he requested it.  Although Plaintiffs claim, on information and belief,

that a handful of other individuals have had similar experiences, those allegations cannot be

credited because Plaintiffs acknowledge knowing who those individuals are, which generally

precludes them from relying on "information and belief."  Yet, even if the Court did credit the

other alleged examples identified by Plaintiffs, when considered in the context of the fact that

MPD has handled hundreds of thousands of pieces of property during the relevant period, ten or

so examples are insufficient to establish municipal custom.  For these reasons, discussed further

below, the Court should dismiss Plaintiffs' Fourth Amendment claim and, as it did last time,

decline to exercise supplemental jurisdiction over Plaintiffs' conversion claim.

## BACKGROUND

I.      **MPD Policies and Procedures Concerning Handling of Evidence**

MPD has detailed policies and procedures concerning the handling of property seized

from arrestees.  *See* General Order 601.1, Recording, Handling and Disposition of Property

Coming into the Custody of the Department (Apr. 30, 1992) (GO-SPT-601.1) (attached as Ex.

A).  MPD also has policies directly addressing situations when a cell phone is seized incident to

an arrest.  *See* Special Order 15-08, Cell Phone Recovery Process (Apr. 14, 2015) (SO-15-08)

(attached as Ex. B).  SO-15-08 cross-references GO-SPT-601.1.

GO-SPT-601.1 requires MPD officers to complete a PD Form 81 for property seized

from arrestees.  GO-SPT-601.1, Part I.A.2. "Detailed instructions for the preparation of [the] PD

Form 81 are contained in Report Writing Instructions Series 91 Number 1."  *Id*., Part I.C.5.

Property seized is generally classified in one of 13 categories, including "Evidence."  *Id*., Part

I.A.6.  "When the decision is made not to paper a case, the member shall have the reviewing

attorney sign the PD Form 81-C releasing the property."  *Id*., Part I.I.9.  Similarly, "[i]f a

disposition is available in the case, or the property is no longer needed for prosecution, the

member shall submit a completed PD Form 81-C containing the signature of the appropriate

prosecuting attorney."  *Id*., Part I.I.8.b.  "After 60 days, if there is no defendant or suspect in a

case, and it is evident that the property will not be needed in court, the member who initially

handled the property shall prepare and submit a properly signed PD Form 81-C to their element's

property officer."  *Id*., Part I.I.11.

With regard to seized cell phones, Special Order 15-08 provides for three different

procedures depending on how the cell phone has been classified.  First, if the cell phone has been

classified as "Found" property, then "absent any circumstances or evidence indicating the cell

phone is linked to a criminal offense, [MPD members] shall handle the cell phones in accordance

with GO-SPT-601.1."  SO-15-08, Part III.A.  Second, "when members recover cell phones from

arrestees, and there is no reason to believe the phone has any evidentiary value or is stolen,

members shall handle the cell phones as 'Prisoner's Property' in accordance with GO-SPT-

601.1." *Id*., Part III.B.[1]  Third, "when members recover cell phones from arrestees who are

charged with any felony offenses, theft-related offenses, or any offenses in which there is reason

to believe the device has evidentiary value," several steps follow, including "Complete a PD

Form 81 and list the phone as 'Evidence' on the Property Book." *Id*., Part III.C.  Once those

steps are completed, "the assigned detective shall turn the cell phone over to the District property

clerk for handling according to the appropriate category (*e.g.*, 'Found Property,' 'Evidence')."

*Id*., Part III.C.6.

General Order 601.02 is also relevant to MPD's handling of property.  *See* General Order

601.02, Preservation of Potentially Discoverable Material (Feb. 3, 2004) (GO-SPT-601.02)

(attached as Ex. C).  GO-SPT-601.02 provides that:

> To ensure the integrity of any criminal investigation, all potentially
> discoverable material that comes into the possession of the
> Metropolitan Police Department (MPD) must be properly
> maintained and preserved, so that the prosecuting authority may
> disclose such material in a criminal judicial proceeding. D.C.
> Superior Court Criminal Rule 16 (SCR-Crim. Rule 16) states that
> the Government must disclose certain material to a defendant in a
> criminal judicial proceeding upon request.

Relatedly, Plaintiffs allege that PCB Policy Report #19-4: Handling Property (Sept. 30,

2019) (PCB Policy Report) (attached as Ex. D) placed the District on notice of whether there

were problems with MPD's handling of evidence.[2]  Compl. ¶ 54.  In that report, the Police

---

[1]    As to "Prisoner's Property," GO-SPT-601.1 provides that "[w]hen a prisoner is being
released from custody and all personal property is returned, the prisoner shall affix his/her
signature in the appropriate block on the Property Book."  GO-SPT-601.1, Part II.A.4.  "Personal
property that is not returned shall be retained at the element where the prisoner was booked.  The
station clerk shall advise the prisoner that he/she or a person designated by him/her must claim
the remaining property within 90 days.  After 90 days, the property shall be forwarded, with PD
Form 81, to the Property Control Branch for disposition."  *Id*., Part II.A.6.

[2]    The PCB Policy Report was issued by the Police Complaints Board pursuant to D.C.
Code § 5-1104(d).

Complaints Board (PCB) explained that "the flexible and extensive nature of general order

601.1, when it is followed properly, ensures that MPD members have comprehensive guidelines

to appropriately manage property." PCB Policy Report at 2. The PCB also observed that "these

policies adequately set forth effective procedures for handling all varieties of property as it may

come into the custody of MPD during the course of official police activities." *Id*. The PCB

concluded that "MPD policies currently in place for the handling of property generally conform

to best practices standards." *Id*. at 5. Although the PCB did note that it receives "approximately

50 complaints per year categorized as mishandling property," those complaints generally

involved either "mistakes made during the course of custody that caused the loss or damage of

property" or "property seized or stolen from community members." *Id*. at 3. The PCB did not

raise any concerns about MPD officers holding property of no-papered arrestees (or any other

individuals) longer than necessary or a lack of available procedures for seeking the return of

seized property.[3]

Finally, D.C. Superior Court Rule of Criminal Procedure 41(g) (Rule 41(g)) expressly

provides a mechanism for individuals, including no-papered arrestees, to seek the return of

property seized by MPD:

> A person aggrieved by an unlawful search and seizure of property
> or by the deprivation of property may move for the property's return.
> The court must receive evidence on any factual issue necessary to
> decide the motion. If it grants the motion, the court must return the
> property to the movant, but may impose reasonable conditions to
> protect access to the property and its use in later proceedings.

---

[3]    Plaintiffs also reference D.C. Code § 5–119.06(d). *See* Compl. ¶ 59. However,
Plaintiffs' quotation of that subsection omits key limiting language. *See id*. Section 119.06(d)
only applies to "property or money in the possession of the Property Clerk alleged to have been
feloniously obtained or to be the proceeds of crime … ." Here, Plaintiffs do not allege that MPD
classified any of their property as feloniously obtained or as the proceeds of a crime. Therefore,
on its face, Section 119.06(d) is inapplicable.

II.    **Plaintiffs' Allegations and Procedural History**

On November 4, 2021, Plaintiffs filed this putative class action against the District. Plaintiffs allege that they were marching on August 13, 2020, in the Adams Morgan neighborhood of Washington, D.C., for police reform and racial justice. Compl. ¶¶ 19–20. Plaintiffs further allege that, during the march, MPD officers arrested them, seized their cell phones and other property, and transported them to police stations. *Id*. ¶ 21. Plaintiffs offer no details concerning the actions that led to their arrests and do not challenge the validity of their arrests or the seizure of their property incident to arrest. *See generally* Compl. Plaintiffs were ultimately not charged with any crimes and were released. *Id*. ¶¶ 21–22. Although some personal property was returned to Plaintiffs upon their release, they allege that other property, including their cell phones, was not returned. *Id*. ¶ 23. Plaintiffs contend that over the next several weeks their attorney made unsuccessful attempts to secure the return of their cell phones and other property. *Id*. ¶¶ 25–27.

Plaintiffs brought this case in November 2021, alleging violations of their Fourth and Fifth Amendment rights as well as a claim for conversion under District common law. Compl. [1]. The District moved to dismiss in December 2021. Def. Mot. Dismiss [19]. The Court granted the motion, dismissing Plaintiffs' Fourth and Fifth Amendment claims for failure to state a claim and declining to exercise supplemental jurisdiction over the conversion claim. Mem. Op. [24]. Because the Court found no predicate constitutional violation, it did not reach the District's arguments concerning municipal liability under Section 1983. *See id.* Plaintiffs appealed the dismissal of the Fourth Amendment and conversion claims. Notice of Appeal [27]. The D.C. Circuit reversed the dismissal of the Fourth Amendment claim and vacated the dismissal of the conversion claim. Judgment [35-1].

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Courts need not accept a plaintiff's conclusory allegations and legal conclusions as true. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79.

"In deciding a motion under Rule 12(b)(6), a court may consider the complaint's factual allegations, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016), aff'd, 869 F.3d 976 (D.C. Cir. 2017). "A court may take judicial notice of facts contained in public records of other proceedings, and of historical, political, or statistical facts, and any other facts that are verifiable with certainty." *Id.* "Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." *Pharm. Research & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014); *see, e.g.*, *Cannon v. District of Columbia*, 717 F.3d 200, 205 n. 2 (D.C. Cir. 2013); *Carik v. Dep't Health & Human Svcs.*, Civil Action No. 12–272, 4 F. Supp. 3d 41, 48 n. 4, 2013 WL 6189313, *4 n.4 (D.D.C. Nov. 27, 2013); *Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 90–91 n. 4 (D.D.C. 2011).

**ARGUMENT**

I.    **Plaintiffs Fail To Allege That the District Has a Custom or Practice of Retaining Property After It No Longer Has Evidentiary Value Despite Requests for Its Return.**

"[U]nder 42 U.S.C. § 1983, municipalities can be held liable for constitutional violations committed by their employees only if a plaintiff shows that the municipality is the 'moving force' behind the constitutional violation, meaning that an 'official municipal policy of some nature caused a constitutional tort.'" *Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978)). The D.C. Circuit has identified four ways such an official municipal policy can be shown: (1) the municipality adopts a policy that violates the Constitution; (2) a "policy maker" within the government takes an unconstitutional action; (3) "the employees' unconstitutional actions are so consistent that they have become a custom of the municipality of which the supervising policymaker must have been aware"; or (4) "deliberate indifference" to the risk of constitutional violations. *Id.* (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003) (alteration omitted)). Under any theory, a municipal liability claim separately requires proof of causation—specifically, an "affirmative link" between the alleged municipal policy and the alleged constitutional violation, "such that [the former] was the moving force behind the [latter]." *Baker*, 326 F.3d at 1306.

Plaintiffs do not allege that the District has an express policy that causes the retention of property after it no longer has evidentiary value despite requests for its return. Nor do they allege that their injuries were caused by the actions of a final municipal policymaker or by a final policymaker's deliberate indifference. Plaintiffs rely only on the custom or practice theory of municipal liability. *See generally* Compl.

To establish municipal policy arising from a custom or practice, Plaintiffs must allege "that the municipality's employees engaged in a persistent or regular pattern of conduct that gave rise to the alleged constitutional violations." *Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 41 (D.D.C. 2014) (citation omitted). That conduct must include "concentrated, fully packed, precisely delineated scenarios," *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013), and it must be "pervasive," *Tabb v. District of Columbia*, 605 F. Supp. 2d 89, 96 (D.D.C. 2009). Further, the past events purportedly establishing a custom must be sufficiently similar to the alleged wrongdoing underlying a plaintiff's claim. *Egudu*, 72 F. Supp. 3d at 41 (holding that report "analyz[ing] data related to disorderly conduct arrests [but] tailored toward exposing racial disparities" could not show policy or custom of "violat[ing] an individual's free speech right or the right to be free from an unlawful seizure"); *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133–34 (D.D.C. 2011) (holding report could not evidence municipal custom when "plaintiff was not arrested for the offense examined in the report"). Here, Plaintiffs have failed to allege facts supporting their claim of a "widespread" and "pervasive" MPD custom of holding property after it no longer has evidentiary value despite requests for its return. Plaintiffs' purported examples fall into three categories.

First, Plaintiffs allege that MPD unreasonably retained the cell phones of "all or nearly all" of more than 200 individuals arrested during the 2017 presidential inauguration of President Donald J. Trump. Compl. ¶ 53(a). But the vagueness surrounding that allegation renders it useless for establishing a custom, in part, because it provides the Court with no basis to assess whether those unidentified and unnumbered individuals had sufficiently similar experiences to Plaintiffs. For example, Plaintiffs contend that "many" of those individuals requested the return of their property and that "most" of them were not charged with a crime. How "many" is

"many"?  How many is "most"?  Which of those individuals were charged with a crime?  If

requests were made for the return of their property, when were those requests made and to

whom?  Had the USAO already determined not to press charges when the requests were made?

Had the USAO already completed a PD Form 81-C at the time of the requests?  Plaintiffs

highlight the experiences of two individuals from that group, *see* Compl. ¶¶ 53(a)(i), 53(a)(ii),

but those examples undermine Plaintiffs' allegation of a custom, rather than support it.

Plaintiffs' claim in this case is that MPD could have returned their property but *refused* to do so.

*See id*. ¶ 4.  In other words, Plaintiffs' claim involves intentional action on the part of MPD, not

mere negligence.  However, Plaintiffs allege that Michael Basillas and Nicole Ambruster were

unable to retrieve their property, not because MPD refused to give it to them, but because their

phones had been lost.  *Id*. ¶¶ 53(a)(i), 53(a)(ii).  While the District in no way defends or justifies

that apparent loss of property, the loss of property is a different kettle of fish than what Plaintiffs

allege.  It cannot support Plaintiffs' custom claim.  *Cf. Egudu*, 72 F. Supp. 3d at 41.  Further,

those two examples suggest that, to the extent other individuals were unable to retrieve their

phones, the more likely explanation is that the phones were also misplaced, not that MPD was

refusing to return them.

Next, Plaintiffs rely again on the experience of Michael Basillas.  Compl. ¶ 53(b).  But,

again, the allegations concerning his interactions with MPD are too vague to establish a custom.

According to Plaintiffs, MPD refused to return the property at the time of his release.  *Id*.  While

Plaintiffs assert that his property had no evidentiary value, just because an arrestee is released

without charges shortly after his arrest does not mean that there is no possibility that charges may

be brought at a later time or that the investigation is not ongoing.  And Plaintiffs do not allege

that Basillas made any attempt to retrieve his property after his release.  *Id*.

Plaintiffs then attempt to rely on the alleged experiences of six other individuals who they do not identify. Compl. ¶¶ 53(d)–(i). As an initial matter, the Court should completely disregard those examples because they are effectively made on information and belief. While allegations based on information and belief are permitted "when the necessary information lies within defendants' control," *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021), by Plaintiffs' own admission, the circumstances surrounding these unidentified individuals are not exclusively within the District's control. *See* Compl. ¶¶ 53(d)–(i). Therefore, the Court should not credit them when assessing whether Plaintiffs have alleged a custom. *See, e.g.*, *United States ex rel. Conteh v. IKON Off. Sols., Inc.*, 103 F. Supp. 3d 59, 66 (D.D.C. 2015) (holding that "[the plaintiff] simply cannot credibly assert . . . that the paystubs are solely within the possession and control of [the defendant] as pretext for his necessity to plead his case based on 'information and belief,' while also attaching several of them to the very same amended complaint").

Even if the Court were to consider them, Plaintiffs' own allegations reveal those examples to be too dissimilar to plead a custom. For example, five of the six unidentified individuals were actually charged with a crime, unlike Plaintiffs. And Plaintiffs also fail to note whether MPD had received a Form PD 81-C when any requests for the return of property had been received. To the extent any delay is attributable to USAO not providing MPD with a Form PD 81-C, MPD cannot be blamed for it. Given these significant differences, the complete lack of details surrounding these "examples" renders them useless for assessing policy or custom. *Cf. Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 93-94 (D.D.C. 2011) (finding plaintiff did not state a claim for municipal liability when plaintiff offered only three examples and did not allege that "some, most, or all" individuals in similar circumstances experienced the alleged

constitutional violation).  MPD made more than 19,000 arrests in 2020 alone.[4]  Theses handful

of purported examples that Plaintiffs identify over a six-year period fall far short of plausibly

alleging that "the employees' unconstitutional actions are so consistent that they have become a

custom of which the supervising policymaker must be aware."  *Hurd*, 997 F.3d at 337 (quoting

*Monell*, 436 U.S. at 691 (1978)).

   Finally, Plaintiffs contend that a 2019 Police Complaints Board (PCB) Policy Report

(attached as Exhibit 1) evidences their alleged custom.  Compl. ¶ 54.  To the contrary, the PCB

Policy Report contradicts Plaintiffs' argument that there is a custom of retaining property when it

no longer has evidentiary value despite requests for its return.  In the report, the PCB explained

that "the flexible and extensive nature of general order 601.1, when it is followed properly,

ensures that MPD members have comprehensive guidelines to appropriately manage property."

Ex. 1 at 2.  The PCB also observed that "these policies adequately set forth effective procedures

for handling all varieties of property as it may come into the custody of MPD during the course

of official police activities."  *Id*.  The PCB concluded that "MPD policies currently in place for

the handling of property generally conform to best practices standards."  *Id*. at 5.  Although the

PCB did note that it receives "approximately 50 complaints per year categorized as mishandling

property," those complaints generally involved either "mistakes made during the course of

custody that caused the loss or damage of property" or "property seized or stolen from

community members."  *Id*. at 3.  The PCB Policy Report identified no issues surrounding the

---

[4]    MPD 2020 Annual Report at 28.  Available at:
https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR2020_lowres_a.
pdf.  The Court may take judicial notice of MPD's annual report.  *Pharm. Research*, 43 F. Supp.
3d at 33.

*refusal* of MPD to return property after it had received a Form PD 81-C from the prosecutor.
PCB Policy Report at 3–4.

In sum, MPD handles over 100,000 pieces of property a year, which means that during
the time period of Plaintiffs' alleged custom that number would be in the hundreds of
thousands.[5]  Plaintiffs have alleged, at most, a dozen or so examples of MPD purportedly
refusing to return property despite the property no longer having evidentiary value.  Even if one
assumes—generously, giving Plaintiffs the benefit of reasonable inferences and rounding—that
Plaintiffs are able to identify 50 examples and MPD handled only 200,000 pieces of property
during the same period, that would mean that 0.025 percent of all seized property was impacted
by Plaintiffs' alleged "custom."  Such an extremely small number is not "pervasive" or otherwise
indicative of a "persistent or regular pattern."  *See Egudu*, 72 F. Supp. 3d at 41.  Therefore,
Count 1 should be dismissed.

## II.    The Court Should Not Exercise Supplemental Jurisdiction Over Plaintiffs' Claim for Conversion.

In Count 3, Plaintiffs bring a claim of conversion against the District.  If the Court
dismisses Plaintiffs' Fourth Amendment claim, it should decline to exercise supplemental
jurisdiction over Plaintiffs' claim for conversion.  When a district court dismisses all claims over
which it has original jurisdiction, it "may (and indeed ordinarily should)" decline to exercise
supplemental jurisdiction over the remaining state law claims.  *Royal Canin U.S.A., Inc. v.
Wullschleger*, 604 U.S. 22, 32 (2025); *see also* 28 U.S.C. § 1367(c)(3).  When determining
whether to exercise supplemental jurisdiction, courts balance judicial economy, convenience,
fairness, and comity; usually these factors "point towards declining to exercise jurisdiction over

---

[5]    https://mpdc.dc.gov/page/evidence-control-divsion.  The Court may take judicial notice
of information on MPD's website.  *Pharm. Research*, 43 F. Supp. 3d at 33.

the remaining state-law claims" once federal law claims are dismissed.  *Shekoyan v. Sibley Int'l*,

409 F.3d 414, 423 (D.C. Cir. 2005) (internal quotation omitted).  Here, the litigation is in a

preliminary stage and, if only Plaintiffs' conversion claim remains, these factors weigh in favor

of allowing local District of Columbia courts to rule on the merits of that claim.

## CONCLUSION

For the foregoing reasons, the Court should grant the District's motion to dismiss

Plaintiffs' Fourth Amendment claim and decline to exercise supplemental jurisdiction over

Plaintiffs' claim for conversion.

Date: October 20, 2025.                      Respectfully submitted,

                                             BRIAN L. SCHWALB
                                             Attorney General for the District of Columbia

                                             CHAD COPELAND
                                             Deputy Attorney General
                                             Civil Litigation Division

                                             */s/ Matthew R. Blecher*
                                             MATTHEW R. BLECHER [1012957]
                                             Chief, Civil Litigation Division, Equity Section

                                             */s/ Honey Morton*
                                             HONEY MORTION [1019878]
                                             Assistant Chief, Equity Section

                                             */s/ Richard P. Sobiecki*
                                             RICHARD P. SOBIECKI [500163]
                                             HELEN M. RAVE [90003876]
                                             Assistant Attorneys General
                                             Civil Litigation Division
                                             400 6th Street, NW
                                             Washington, D.C. 20001
                                             Phone: (202) 805-7512
                                             Email: richard.sobiecki@dc.gov

                                             *Counsel for Defendant*